**Kramer and Associates**
542 4th Ave., Ste. 207
Fairbanks, Alaska 99701
Telephone: (907) 888-4098
Fax: (907) 264-6602
mike@mikekramerlaw.com
**Neufeld Scheck & Brustin, LLP**
99 Hudson St., 8th Floor
New York, NY 10013
212-965-9081
212-956-9084
anna@nsbcivilrights.com
*Attorneys for Marvin Roberts and Eugene Vent*

**MacDonald, Hoague & Bayless**
1500 Hoge Building
705 Second Avenue
Seattle, WA 98104
Phone: (312) 663-5210 or (206) 622-1604
Fax: (206) 343-3961
Email: davidw@mhb.com
**Thomas R. Wickwire**
2775 Hanson Road, Suite 1
Fairbanks. Alaska 99709
Tel: 907-474-0068
Fax: 907-474-0068
Email: tom@twickwire.com
*Attorneys for Plaintiffs George Frese and Kevin Pease*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GEORGE FRESE, KEVIN PEASE, MARVIN ROBERTS, & EUGENE VENT, Plaintiffs, v. CITY OF FAIRBANKS, JAMES GEIER CLIFFORD AARON RING, CHRIS NOLAN, DAVE KENDRICK, DOE OFFICERS, & DOE SUPERVISORS, Defendants. | Case No. 4:17-CV-00034-HRH Case No. 4:17-CV-00035-HRH |

**Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................. 2

    Jason Wallace and his friends murdered John Hartman. ............................................. 2

    Defendants ignored evidence implicating the true perpetrators and instead fabricated and coerced evidence against the Fairbanks Four. ............................................................. 3

    The Fairbanks Four were indicted and convicted based on evidence fabricated by Defendants. 4

    The Fairbanks Four were exonerated by a five-week post-conviction hearing. ......................... 4

    Defendants conspired with the prosecutor and Wallace's counsel to force the Fairbanks Four to sign an unlawful release-dismissal agreement. ........................................................... 5

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    *Heck v. Humphrey* does not bar Plaintiffs' claims. ............................................. 8

        A.    Plaintiffs' claims have accrued. ..................................................................... 9

    II.    The release-dismissal agreement does not bar Plaintiffs' claims. ................................ 12

        A.    Defendants have not proved enforcement of the RDA is in the public interest. ............ 13

        B.    Defendants have not proved the RDA was voluntary. .................................................... 17

    III.    The absence of the State of Alaska as a party does not justify dismissal. ..................... 21

        A.    Defendants have not met their burden of showing that the State is required. ................ 21

    IV.    Plaintiffs have a valid spoliation claim. ....................................................................... 25

CONCLUSION ................................................................................................................... 27

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Allstate Ins. Co. v. Dooley*, 243 P.3d 197 (Alaska 2010) ...................................................... 25, 26

*Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013) ........................................................... 21, 22, 23, 24

*Anchorage v. Integrated Concepts & Research Corp.,* 1 F. Supp. 3d 1001 (D. Alaska 2014) ... 21, 22, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 7

*Avalos v. Baca*, 596 F.3d 583 (9th Cir. 2010) ....................................................................... 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 8

*Berger v. United States*, 295 U.S. 78 (1935) ........................................................................ 16

*Bradford v. Scherschligt*, 803 F.3d 382 (9th Cir. 2015) .............................................. 8, 10, 11

*Broaddus v. Campbell*, 911 S.W.2d 281 (Ky. Ct. App. 1995) ................................................. 12

*Brown v. Ely*, 14 P.3d 257 (Alaska 2000) ............................................................................. 26

*Cachil Dehe Band of Winton Indians of the Colusa Indian Comm. v. California*, 547 F.3d 962 (9th Cir. 2008) .................................................................................................................. 22

*Cain v. Darby Borough*, 7 F.3d 377 (3d Cir. 1993) ............................................................... 14

*Comer v. Stewart*, 215 F.3d 910 (9th Cir. 2000) ................................................................... 17

*Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993) ..................................................................... 14

*Cowles v. Brownell*, 538 N.E. 2d 325 (N.Y. 1989) ............................................................... 16

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991) ............................ 17

*Davis v. Oregon*, No. CV 07-635-AC, 2009 WL 2475442 (D. Or. Aug. 11, 2009) .................... 18

*Dawavendewa v. Salt River Project*, 276 F.3d 1150 (9th Cir. 2002) ......................................... 24

*Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264 (Alaska 2013) ....................................... 25

*Grise v. Allen*, 714 F. App'x 489 (6th Cir. 2017) .................................................................. 12

*Hall v. Ochs*, 817 F.2d 920 (1st Cir. 1987) ........................................................................... 18

*Heck v. Humphrey*, 512 U.S. 477 (1994) ....................................................................... passim

*Henri v. Smith*, No. 3:12–cv–00081–SLG, 2013 WL 4029291 (D. Alaska Aug. 7, 2013) .......... 12

*Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005) ..................................................... 9

*In re McCarthy*, 486 F. App'x 650 (9th Cir. 2012) ............................................................... 7

*Roberts, et al., v. City of Fairbanks, et al.,* No. 4:17-cv-00034-HRH

Case 4:17-cv-00034-HRH Document 46 Filed 07/02/18 Page 3 of 34

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) .............................................................. 10, 11, 12

*Jones v. Taber*, 648 F.2d 1201 (9th Cir. 1981) ................................................................... 18

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .................................................. 7, 8

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ................................................................. 14

*Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996) ................................. 14, 15

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) ................................................ 24

*Lynch v. City of Alhambra*, 880 F.2d 1122 (9th Cir. 1989) .......................................... passim

*MacDonald v. Musick*, 425 F.2d 373 (9th Cir. 1970) .......................................................... 15

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ............................................... 22

*McCubbrey v. Veninga*, 39 F.3d 1054 (9th Cir. 1994) ........................................................ 12

*Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014) ....................... 11

*Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992) ..................................... 19, 20

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ................................................. 9

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968) ......................... 21, 22

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) .................................................. 24

*Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014) .......................................... 10, 11, 12

*Salmeron v. United States*, 724 F.2d 1357 (9th Cir. 1983) .................................................. 19

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176 (9th Cir. 2012) .... 23

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ............................................................ 7

*Spak v. Phillips*, 857 F.3d 458 (2d Cir. 2017) ..................................................................... 11

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) ............................................................ 7

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...................................................................... 8

*Tipton v. Arco Alaska*, 922 P.2d 910 (Alaska 1996) ............................................................ 25

*Town of Newton v. Rumery*, 480 U.S. 386 (1987) ......................................................... passim

*United States v. Bowen*, 172 F.3d 682 (9th Cir. 1999) ........................................................ 22, 23

*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) .................................................. 16

*Wallace v. Kato*, 549 U.S. 384 (2007) ............................................................................. 8, 9, 10

*Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015) .............................................................. 21, 23

*Washington v. Daley*, 173 F.3d 1158 (9th Cir. 1999) .......................................................... 23

iii

## Statutes

42 U.S.C. § 1983.................................................................................................................. passim

## Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 7

Federal Rule of Civil Procedure 19 ..................................................................... passim

iv

## INTRODUCTION

This case concerns one of the most shameful chapters in modern Alaskan history—the railroading of the Fairbanks Four, three innocent Alaska Natives and one innocent Native American, for a murder they did not commit, causing them to spend a combined 72 years wrongly imprisoned. Plaintiffs' complaint details shocking misconduct—fabricating evidence, coercing false confessions, suppressing exculpatory evidence—to ensure the conviction and continued wrongful imprisonment of these innocent men. It documents the unprecedented five-week post-conviction hearing and the overwhelming evidence of Plaintiffs' actual innocence that led to the vacatur of Plaintiffs' convictions and the dismissal of all charges, by order of the Alaska Superior Court. And it explains how Defendants themselves recognized during post-conviction proceedings that they were facing meritorious civil rights lawsuits worth tens of millions of dollars, and how they hatched a scheme to use their ability to delay an ultimate exoneration—and the release of three of the men from wrongful imprisonment—to coerce Plaintiffs into waiving their right to bring civil rights claims.

Defendants' motion to dismiss does not dispute the factual support for all of these allegations. Nor can Defendants dispute that these allegations describe actionable constitutional violations. Defendants nonetheless seek to have this entire suit dismissed with prejudice and without discovery. There is no basis to do so. Indeed, Defendants' legal arguments consistently ignore controlling precedent making clear that Plaintiffs' claims are well-pleaded. In particular, under settled Ninth Circuit law, Plaintiffs' claims accrued as soon as the convictions were vacated and the indictments dismissed. And under controlling United States Supreme Court and Ninth Circuit precedent, the waiver extracted as a condition of freeing the innocent Plaintiffs is unenforceable as against the public interest and involuntary. Nor can Defendants carry their

1

burden of showing that this suit should be dismissed simply because the State of Alaska is not a party. The motion to dismiss should be denied.

## FACTS

### *Jason Wallace and his friends murdered John Hartman.*

In the early hours of October 11, 1997, Jason Wallace and four other men beat and kicked 15-year-old John Hartman to death. ¶¶ 23, 24.[1] Wallace and his friends had spent the night cruising the streets of downtown Fairbanks looking for Native Alaskans to beat up for fun. ¶ 23. When they could not find any vulnerable Native Alaskans, they settled on Hartman, a white teenager, whom they jumped on the street and murdered. ¶ 24. Within days of the murder, Wallace bragged about killing Hartman to two friends at high school, and, years later, he admitted his involvement to an investigator for the public defender. ¶ 26. Wallace was a stone-cold killer who went on to commit further murders and attempted murders, including beating a woman to death with a hammer before setting her corpse and apartment on fire, stabbing a man with a screwdriver, and conspiring to murder five others, including a young child. ¶ 29. Like Wallace, each of Hartman's other killers went on to commit other violent crimes, including the murder of a pregnant woman and three men. ¶ 30.

Plaintiffs were completely innocent of the crime and had no connection to the true perpetrators. ¶ 39. Scores of alibi witnesses saw the four men throughout the night of Hartman's murder, and at no point during that night were all four men in the same place at the same time. *Id.*

---

[1] All paragraph citations refer to the Second Amended and Consolidated Complaint. *See* Dkt. 40.

***Defendants ignored evidence implicating the true perpetrators and instead fabricated and coerced evidence against the Fairbanks Four.***

Despite a steady stream of tips implicating the true perpetrators, Defendants instead framed the Fairbanks Four for Hartman's murder. ¶¶ 31–39. Motivated by racial animus against Alaska Natives and Native Americans, Defendants fabricated and coerced evidence suggesting that the Fairbanks Four killed Hartman during a crime spree. ¶¶ 29–30, 39. Plaintiffs' detailed allegations of misconduct, all of which must be accepted as true at this stage, include:

- Despite having no reason to suspect Plaintiff Eugene Vent in the Hartman murder, Defendants interrogated the intoxicated 17-year-old Alaska Native for hours and coerced a false and fabricated confession—consisting of details that Defendants had fed to him. ¶¶ 41–52, 55, 56. No detail of Vent's purported confession was true, and Defendants coerced his statement using interrogation techniques they knew would yield false information. ¶ 56.

- Similarly, Defendants coerced a false and fabricated confession from Alaska Native George Frese while he was hospitalized for an injury, even interrogating him after he asked them to leave. Like Vent's purported confession, Frese's inculpatory statements consisted entirely of details about the crime Defendants had fed to him. ¶¶ 53, 54, 57. Frese's purported confession was completely false, and Defendants' interrogation techniques were known to elicit false information. ¶ 54.

- Defendants fabricated a false witness statement from Arlo Olson, who had seen the unrelated assault of Franklin Dayton on the night of Hartman's murder. ¶¶ 59–63. Olson was drunk, high, and standing more than 150 yards from the assault and could not identify the assailants. ¶¶ 58, 59, 67. But, under duress, he adopted Defendants' false narrative that the Fairbanks Four had done it. ¶¶ 65–71. Olson was the only eyewitness to purportedly see the Fairbanks Four together that night. ¶ 71. He later recanted his identification and described Defendants' misconduct under oath. ¶¶ 72, 109.

- Defendants fabricated a false statement implicating Vent in the murder by bribing a jailhouse snitch with promises of leniency and a cash payment. ¶ 73.

- Defendants fabricated physical evidence falsely suggesting that Frese's boot-print "matched" the injuries on Hartman's face despite a finding by the Alaska State Crime Laboratory that such a match could not be made scientifically. ¶¶ 90, 91.

- Defendants suppressed evidence of their own misconduct and other exculpatory evidence by failing to disclose it to the prosecutor, the Plaintiffs, or their defense attorneys. ¶¶ 31–39, 76–83.

11635.1 lf281401
*Roberts, et al., v. City of Fairbanks, et al.,* No. 4:17-cv-00034-HRH

- After Plaintiffs' convictions, Defendants continued to suppress exculpatory evidence that came to light, including statements from multiple witnesses implicating the true perpetrators. ¶¶ 96–104.

### *The Fairbanks Four were indicted and convicted based on evidence fabricated by Defendants.*

The prosecution indicted the Fairbanks Four based on Vent's and Frese's false confessions and Olson's fabricated statements. ¶¶ 69–70. Following three separate trials, Plaintiffs were each convicted based on Defendants' fabrications—the only evidence against them. ¶¶ 71, 84–92. Each Plaintiff was sentenced to more than 30 years in prison. *Id.*

The wrongful prosecution of the Fairbanks Four became a *cause célèbre* among the Alaska Native community, which widely believed in their innocence. ¶¶ 216–18. During their incarceration and post-conviction proceedings, Alaska Native organizations held rallies and fundraisers across the state to support Plaintiffs. ¶ 218. Their wrongful convictions came to embody widely felt distrust by Alaska Natives of the FPD. ¶ 221.

### *The Fairbanks Four were exonerated by a five-week post-conviction hearing.*

Years after the Fairbanks Four's convictions, William Holmes, one of the true perpetrators, gave a complete confession naming Wallace and the others who had murdered Hartman. ¶¶ 96, 99. Based in part on Holmes's confession, the Fairbanks Four filed new post-conviction relief (PCR) petitions in Alaska Superior Court, arguing that newfound evidence proved their factual innocence. ¶¶ 99–100, 106. The Alaska Superior Court ruled that the petitions stated a prima facie case of actual innocence. ¶ 108.

After two years of discovery, the Superior Court granted the Fairbanks Four a rare evidentiary hearing—an opportunity to prove their factual innocence through live evidence in court. ¶¶ 109, 111. Scores of witnesses testified at the five-week hearing, including:

4

- **Holmes**, who testified that he, Wallace, and their friends were Hartman's true killers, and at least **eleven** witnesses who corroborated his account;

- **Four witnesses** (including Holmes) who gave consistent testimony that Wallace had confessed to killing Hartman;

- **Olson**, who recanted his trial testimony and testified that Ring and other officers coerced and fabricated his statement;

- **Alibi witnesses**, who established that the Fairbanks Four were never together on the night of the murder and could not have assaulted Frank Dayton or murdered John Hartman;

- **Dayton**, who testified that his assailants had not been in Roberts's car;

- **An Alaska State Trooper**, who testified that an investigation had corroborated key aspects of Holmes's confession and had not found any evidence of Plaintiffs' guilt; and

- **Forensic experts**, who testified that there was no scientifically reliable way to match Frese's boot print with Hartman's injuries, contrary to the evidence presented at Plaintiffs' criminal trials.

*Id.*

### *Defendants conspired with the prosecutor and Wallace's counsel to force the Fairbanks Four to sign an unlawful release-dismissal agreement.*

Defendants and the prosecuting attorneys went into the PCR hearing with good reason to believe they would lose both the PCR hearing and any retrial. ¶¶ 112–13. Without Olson's discredited testimony or the debunked footwear impression evidence, the prosecution had no independent evidence of guilt. *Id.* The only remaining evidence was the false and unreliable confessions, which would not be admissible against Pease or Roberts and which would not withstand the scrutiny of a false confession expert. *Id.*

Jason Gazewood, counsel for true perpetrator Jason Wallace and a former Fairbanks prosecutor, memorialized these concerns in a letter to the prosecutors. ¶ 115. Writing that the prosecution was likely to lose the PCR hearing and that a retrial was "virtually unwinnable," Gazewood warned that the Fairbanks Four were likely to win tens of millions of dollars in a civil

5

rights lawsuit. *Id.* His solution: force the Fairbanks Four to compromise their civil rights claims in exchange for their freedom. *Id.*

At the conclusion of the PCR hearing in November 2015, the presiding judge told the parties that it would take six to eight months to reach a decision. ¶ 116. The prosecution stated publicly that it would appeal any PCR decision in Plaintiffs' favor all the way to the Alaska Supreme Court, signaling an official willingness to delay further resolution of the case and the release of the three incarcerated Plaintiffs. ¶ 121. (Roberts was out on supervised parole. *Id.*) This delay gave Defendants and the prosecutors the opportunity to put Gazewood's plan into action. ¶ 116. Just before Christmas, the prosecutors offered the Fairbanks Four a devil's bargain: the prosecution would consent to freeing Vent, Frese, and Pease, but only if *all four* Plaintiffs agreed to waive their valuable civil rights claims. ¶ 117. The prosecutors' goal was to protect Defendants and others from tort liability and to forestall public scrutiny of Defendants' misconduct. ¶¶ 168–69.

Roberts was already out of custody and confident that he would soon be exonerated by the PCR and thus had no need to sign the release-dismissal agreement. ¶ 135. As part of the plan suggested by Gazewood, the prosecutors used the other Plaintiffs' freedom as leverage to induce Roberts to sign the release-dismissal agreement. ¶ 136. He had the stark option of forcing his innocent friends to rot in prison or signing away meritorious tort claims against Defendants. ¶ 139.

Though innocent, Vent, Frese, and Pease had spent 18 years in custody and faced years of additional prison time while the prosecution appealed a favorable PCR ruling. ¶¶ 145, 150, 157. Their choice was unthinkable: waive their right to sue the people who caused their wrongful convictions or remain needlessly in prison while the prosecutors futilely pursued every legal

mechanism to delay their release. ¶¶ 152, 159–60. Further, if any one Plaintiff insisted on his innocence and right to compensation for 18 years of wrongful imprisonment, the hold-out would have to bear the intolerable burden of depriving the others of their liberty. ¶ 162. The release thus deprived all Plaintiffs of an individual choice. *Id.* Under that pressure, they signed the release-dismissal agreement. ¶¶ 153, 163.

On December 17, 2015, the Alaska Superior Court vacated each Plaintiff's conviction, their indictments were dismissed, and they were finally exonerated. ¶ 7, 132; *see also* Exs. 1–4 to Plaintiffs' Request for Judicial Notice (attaching state court orders vacating each conviction).[2] Plaintiffs now sue Defendants under 42 U.S.C. § 1983 to remedy the unconstitutional misconduct that caused their wrongful convictions.

## **LEGAL STANDARD**

Dismissal under Rule 12(b)(6) is appropriate *only* if the complaint fails to allege sufficient facts to support a theory of legal liability. *See Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). When considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013) (internal quotation marks omitted). Taken as true, those facts must "state a claim to relief that is plausible on its face." *Id.* at 809 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable…. Rule 8(a) 'does not impose a probability

---

[2] Plaintiffs do not object to the documents proffered under Defendants' Request for Judicial Notice, Dkt. 43, to the extent that they are proffered for "judicial notice of the existence of another court's opinions, but not the truth of the facts recited therein." *In re McCarthy*, 486 F. App'x 650, 650 (9th Cir. 2012) (unpublished) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)). Plaintiffs likewise seek judicial notice of the dismissal orders themselves, entered by the Alaska Fourth Judicial District on December 17, 2015, but omitted by Defendants in their request. *See* Dkt. 43; Plaintiffs' Request for Judicial Notice.

requirement at the pleading stage[.]'" *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

　　　　"A court may take judicial notice of matters of public record without converting a

motion to dismiss into a motion for summary judgment…. But a court may not take judicial

notice of a fact that is subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668,

689 (9th Cir. 2001) (internal quotation marks and citations omitted).

## **ARGUMENT**

### I.　　*Heck v. Humphrey* **does not bar Plaintiffs' claims.**

　　　　Defendants' assertion that *Heck v. Humphrey*, 512 U.S. 477 (1994), somehow bars

Plaintiffs' § 1983 claims fails at the first step. As both the Ninth Circuit and the Supreme Court

have made clear, "*Heck* applies only when there is an extant conviction." *Bradford v.*

*Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015); *see also Wallace v. Kato*, 549 U.S. 384, 393

(2007) ("[T]he *Heck* rule for deferred accrual is called into play only when there exists 'a

conviction or sentence that has *not* been…invalidated,' that is to say, an 'outstanding criminal

judgment.'") (quoting *Heck*, 512 U.S. at 486–87); *Heck*, 512 U.S. at 487 ("[I]f the district court

determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of

any outstanding criminal judgment against the plaintiff, the action should be allowed to

proceed.") (emphasis in original).

　　　　Here there is no dispute that there are no "extant convictions" or "outstanding criminal

judgments"—the convictions were vacated by court order, the indictments dismissed, and

Plaintiffs ordered immediately released from custody on December 17, 2015. *See* Exs. 1–4 to

Plaintiffs' Request for Judicial Notice. That disposes of Defendants' argument that *Heck* presents

any obstacle to Plaintiffs' claims. Indeed, Defendants do not cite a *single* case applying *Heck* to

bar a § 1983 claim where, as here, all underlying convictions have been vacated—because it does not.[3]

This result makes sense given *Heck*'s rationale: "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of *outstanding* criminal judgments." *Heck*, 512 U.S. at 486 (emphasis added). The primary goal of the *Heck* Court was to funnel prisoners' challenges to their convictions into habeas petitions, not § 1983 lawsuits. *See Wallace*, 549 U.S. at 392 ("'Congress…has determined that habeas corpus [not § 1983] is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement") (quoting *Heck*, 512 U.S. at 482); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139 (9th Cir. 2005) ("*Heck*'s favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus."). Because Plaintiffs are not in custody, and have no outstanding criminal judgments against them, *Heck* is no bar to their claims.

### A.    Plaintiffs' claims have accrued.

Defendants' arguments regarding "favorable termination" fare no better because they cite the wrong body of law. While *Heck* did "analog[ize]" to the law of malicious prosecution, 512 U.S. at 484, it did not simply "incorporate" the favorable termination rule from malicious prosecution jurisprudence, as Defendants claim. *See* Dkt. 42 at 7. Rather, in *Wallace*, the Supreme Court clarified that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in

---

[3] The *only* case Defendants cite addressing at all like circumstances—the application of *Heck* to a § 1983 wrongful conviction claim after the initial conviction was vacated—held the claim could proceed. *See Poventud v. City of New York*, 750 F.3d 121, 127 (2d Cir. 2014) (en banc).

11635.1 lf28140?
*Roberts, et al., v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 14 of 34

original).[4] And since then, the Ninth Circuit has repeatedly addressed the precise question at issue here—when a § 1983 wrongful conviction claim accrues—including in *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014), *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), and *Bradford*, 803 F.3d 382. These cases devastate Defendants' argument, but, conspicuously, Defendants ignore this controlling law in favor of, for example, a case from the Georgia Court of Appeals interpreting Georgia state law. *See, e.g.*, Dkt. 42 at 8 n.32.

The Ninth Circuit has instructed that a § 1983 claim challenging a tainted criminal proceeding will accrue when that *particular proceeding* has "fully and finally resolved"; *i.e.*, the conviction has been vacated or the charges dismissed. *See Bradford*, 803 F.3d at 386–89. The precise type of resolution required depends on the misconduct alleged in the § 1983 claim.

For example, in *Jackson*, the plaintiff was convicted based on an illegally obtained incriminating statement; after the conviction was vacated and the statement suppressed he was convicted at a second trial without use of the statement. The Ninth Circuit held that his § 1983 Fifth Amendment claim accrued when his first conviction was reversed because at that point the *proceeding* allegedly tainted by misconduct had resolved in his favor. Even though the prosecution continued, the second conviction did not depend on the illegally obtained evidence, and his § 1983 claim would therefore not undermine it. 749 F.3d at 761. In *Bradford*, by contrast, the entire prosecution was alleged to be based on fabricated evidence; because even after Bradford's conviction was vacated he "remained subject to the very same charges based on the same evidence, which forms the basis of his [§ 1983] claim," the Ninth Circuit held that his § 1983 fabrication claim did not accrue until he was acquitted at a retrial, and charges based on this evidence "could no longer be brought against him." 803 F.3d at 388–89.

---

[4] What Defendants describe as the "favorable termination rule" the Supreme Court terms "the *Heck* rule for deferred accrual." *Wallace*, 549 U.S. at 393.

Here, as in *Bradford*, there is no dispute that Plaintiffs' prosecutions "fully and finally resolved"—their convictions have been vacated and the indictments dismissed. That was all that was necessary for their claims to accrue. 803 F.3d at 387–89. As courts have repeatedly recognized, *Heck* is satisfied when charges are dismissed by *nolle prosequi*, or dismissal without prejudice. *See, e.g.*, *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 390 (4th Cir. 2014) (holding *nolle prosequi* constitutes favorable termination under federal common law); *Spak v. Phillips*, 857 F.3d 458, 463–66 (2d Cir. 2017) (same). Here, the order dismissing Plaintiffs' indictments is all that is needed to satisfy *Heck*.[5]

Nor does the fact that Plaintiffs' vacatur and dismissal resulted from an agreed disposition bar this lawsuit. Indeed, in *Rosales-Martinez*, the plaintiff's initial conviction on four counts was vacated as a part of a comprehensive plea deal including a guilty plea to one count. The Ninth Circuit found that the settlement did not *categorically* bar the plaintiff's § 1983 suit based on a *Brady* claim, and remanded for consideration of specific facts: whether the suppressed *Brady* statement would undermine his intact, valid conviction or whether it implicated only one of the vacated counts. 753 F.3d at 897–99. Here, the Court need not conduct such an analysis: nothing remains of Plaintiffs' criminal convictions, and their claims accrued when the indictments were dismissed.

Contrary to Defendants' argument, *Heck* also doesn't require a prior court resolution demonstrating innocence of the underlying crime. *See, e.g., Jackson*, 749 F.3d at 760–62 (§ 1983 wrongful conviction suit may proceed despite subsequent conviction for same murder); *Rosales-Martinez*, 753 F.3d at 897–99 (§ 1983 wrongful conviction suit not necessarily barred despite

---

[5] Although not necessary to the *Heck* analysis, the resolution of Plaintiffs' prosecutions was even more *final* than the typical case of *nolle prosequi*: by the terms of the agreement, new charges cannot be brought against Plaintiffs unless there is substantial new evidence of guilt. *See* Dkt. 43-3 at 2–3.

11635.1 lf28140?
*Roberts, et al. v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 16 of 34

subsequent guilty plea to one of the counts of the initial indictment). Although the circumstances of Plaintiffs' exonerations would surely qualify—coming after a judicial finding of a prima facie case of innocence and an unprecedented, five-week postconviction hearing including copious evidence of innocence—the Court need not reach this question.

In short, under directly on-point Supreme Court and Ninth Circuit precedent, it is clear there is no bar to Plaintiffs' § 1983 wrongful conviction suits. Defendants' arguments to the contrary sidestep this controlling law and rely instead on inapposite authority, including cases interpreting state law, *see, e.g., McCubbrey v. Veninga*, 39 F.3d 1054, 1055 (9th Cir. 1994), and cases in which the convictions are still in effect, *see, e.g., Henri v. Smith*, No. 3:12–cv–00081–SLG, 2013 WL 4029291 (D. Alaska Aug. 7, 2013).[6]

## II.    The release-dismissal agreement does not bar Plaintiffs' claims.

In arguing that this suit is categorically barred by the release-dismissal agreement forced on Plaintiffs, Defendants again ignore controlling law that decimates their position. Both the Supreme Court, in *Town of Newton v. Rumery*, 480 U.S. 386 (1987), and the Ninth Circuit, in *Lynch v. City of Alhambra*, 880 F.2d 1122 (9th Cir. 1989), have specifically outlined the federal common law that governs release-dismissal agreements (RDAs) like the one at issue in this case. Under this binding law, Defendants cannot possibly prove the release is enforceable, as is their

---

[6] Defendants cite an unpublished Sixth Circuit case and a case from the Kentucky Court of Appeals to argue that statements Plaintiffs made as part of the coerced release-dismissal agreements should estop this lawsuit. Dkt. 42 at 14–16. Putting aside the questionable value of this precedent, neither case even suggests such a result. Both *Grise v. Allen*, 714 F. App'x 489, 495 (6th Cir. 2017), and *Broaddus v. Campbell*, 911 S.W.2d 281 (Ky. Ct. App. 1995), concern the effect of a prior admission of probable cause on the favorable termination prong of *state law malicious prosecution actions*, not the applicability of *Heck*. For the reasons argued above, this argument is inapposite. *Heck* does not require proof that the original prosecution was not supported by probable cause. *See, e.g., Jackson*, 749 F.3d at 760–62; *Rosales-Martinez*, 753 F.3d at 897–99. Moreover, as described more fully below, Plaintiffs' purported admissions were the result of coercion, against the public interest, and therefore invalid.

12

burden. But Defendants do not even try, citing instead only general state contract law inapplicable to the *Rumery* analysis.

In *Rumery*, the Supreme Court held that RDAs purporting to waive § 1983 claims *must* be evaluated under federal law—not state law. 480 U.S. at 392. No *per se* rule governs the enforceability of RDAs; rather, *Rumery* requires a "case-by-case analysis." *Lynch*, 880 F.2d at 1127. This Court cannot enforce an RDA unless it was "entered into voluntarily" and "its enforcement is in the public interest"— "[b]oth elements are required." *Lynch*, 880 F.2d at 1126.

Here, Defendants can make neither showing. Enforcement of the agreement would not serve the public interest but instead bury allegations of the most serious official misconduct. Nor can Defendants prove voluntariness: the RDA was extracted as the price for freeing three innocent men after a collective 72 years' wrongful imprisonment. Moreover, this argument cannot possibly justify dismissal at this stage because "*Rumery* requires the district court to *hear evidence* and evaluate whether the public interest is served by enforcement of the release-dismissal agreement." *Lynch*, 880 F.2d at 1127–29 (reversing a summary judgment order and remanding to the district court to hear evidence regarding public policy) (emphasis added).

### A.     Defendants have not proved enforcement of the RDA is in the public interest.

"It is the burden of the defendants to plead and prove that the [RDA] serves the public interest." *Lynch*, 880 F.2d at 1128. Defendants have not even attempted to meet that burden; they have not identified the proper legal standard, let alone proffered any justification for how enforcement here could serve the public interest. (It does not.) That is reason enough to deny their motion. In any event, Plaintiffs have pleaded more than enough facts to plausibly show that the RDA in this case failed to serve the public interest.

13

Defendants do not contest that Plaintiffs have pleaded a plausible case of breathtaking misconduct—a racially motivated effort by police to fabricate and coerce evidence to convict four innocent men. "[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004).

The gravity of Plaintiffs' well-pleaded allegations is alone sufficient to bar enforcement of the RDA: under *Rumery*, this Court must remedy the "risk that public officials will use the threat of criminal prosecution to suppress civil rights claims." *Lynch*, 880 F.2d at 1127 (citing empirical evidence suggesting that occurs); *see also*, *e.g.*, *Rumery*, 480 U.S. at 400 (O'Connor, J., concurring) ("The coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole."); *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 530 (3d Cir. 1996) (holding defendants could not prove an RDA was in the public interest unless the released § 1983 claims were "properly regarded…as marginal or frivolous"); *Coughlen v. Coots*, 5 F.3d 970, 975 (6th Cir. 1993) (holding that in a case with "substantial evidence of police misconduct," the public's interest "in vindicating constitutional rights and deterring police misconduct" would outweigh other interests).

While prosecutorial misconduct is not *required* to find an RDA unenforceable as against public policy, evidence of police or prosecutorial misconduct in procuring the RDA *also* prevents a finding that enforcement would be in the public interest. *See Lynch*, 880 F.2d at 1128–29; *Cain v. Darby Borough*, 7 F.3d 377, 383 (3d Cir. 1993) (en banc) (holding RDA was unenforceable as a matter of law because the prosecutors had not first concluded that the

plaintiff's civil rights case was marginal or frivolous); *Livingstone*, 91 F.3d at 533 (public interest would be violated if prosecutor was "motivated by a desire to protect public officials from liability"). Pre-*Rumery* case law from the Ninth Circuit reached the same conclusion. *See, e.g.*, *MacDonald v. Musick*, 425 F.2d 373, 375 (9th Cir. 1970) ("It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge.").

Here, Plaintiffs have made detailed allegations of just such misconduct: that prosecutors abused their power to prolong prosecutions they knew to be unsupported with the specific intention of protecting Defendants and other public officials from meritorious civil rights claims. Specifically, Plaintiffs have alleged:

- The evidence at the post-conviction hearing demonstrated Plaintiffs' actual innocence of the murders for which they had been wrongly convicted and spent a combined 72 years wrongly imprisoned, and for which three were still wrongly incarcerated. ¶¶ 92, 106–12, 120.

- The prosecutors understood, as memorialized in a contemporaneous letter, that they would lose the PCR case, any retrial was "virtually unwinnable" (because the fabricated evidence could no longer be used), and the Fairbanks Four were likely to win tens of millions of dollars in a subsequent civil rights lawsuit. ¶ 115.

- The prosecutors also understood they had the power to delay the ultimate resolution of the prosecution and thereby keep three of the four men imprisoned for additional months or years, and that they could use this leverage to force the Fairbanks Four to give up their meritorious civil rights claims in exchange for their freedom. ¶¶ 115–17, 120–21.

- The prosecutors' purpose in entering into the RDA was to suppress valid complaints of official abuse. ¶¶ 117–19, 131, 167–69. Because the Fairbanks Four were innocent, there was no independent, legitimate reason for the prosecutors to have pursued the release-dismissal agreement. ¶ 118.

15

These allegations, too, prevent a finding at this stage that enforcing the RDA would serve the public interest. As the New York Court of Appeals observed in a decision limiting prosecutors' use of RDAs consistent with *Rumery*:

> Assuming plaintiff to have been guilty of the criminal charges leveled against him (as the prosecutor maintains), the People's interest in seeing a wrongdoer punished has not been vindicated. Assuming him to have been innocent (as he maintains), or the case against him to have been unprovable, the prosecutor was under an ethical obligation to drop the charges without exacting any price for doing so…. There is no public interest to be advanced by enforcing the agreement here. Rather, the agreement may be viewed as undermining the legitimate interests of the criminal justice system solely to protect against the possibility of civil liability.

*Cowles v. Brownell*, 538 N.E. 2d 325, 327 (N.Y. 1989). Moreover, because the Fairbanks Four's wrongful convictions have become a public symbol of distrust between Alaska Natives and the FPD, the public interest demands a resolution of Plaintiffs' civil rights claims. ¶¶ 216–18, 221.

Plaintiffs are not aware of any prior decisions with facts remotely similar to this case—concerning an RDA entered 18 years *after* conviction, conditioning release on the all-or-nothing participation of several co-defendants, and following an unprecedented five-week PCR hearing including substantial evidence of innocence and police misconduct. Perhaps that is because the use of an RDA to extract a waiver of meritorious misconduct claims as a condition for freeing innocent men is blatantly improper. *See, e.g., Berger v. United States*, 295 U.S. 78, 88 (1935) (holding a prosecutor must have "twofold aim…that guilt shall not escape or innocence suffer"); *United States v. Chapman*, 524 F.3d 1073, 1088 (9th Cir. 2008) (noting prosecutor's "interest in a particular case is not necessarily to win, but to do justice") (internal citation omitted).

By contrast, the circumstances under which courts have found RDAs enforceable are at the opposite end of the spectrum, involving dubious civil rights claims and compelling interests

11635.1 lf28140
*Roberts, et al., v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 21 of 34

counseling in favor of enforcement. *See, e.g., Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396–97 (9th Cir. 1991) (noting in *Rumery* enforcement of the RDA was permissible because the plaintiff's waiver of a "questionably valid civil action" "did not have a significant impact upon the public at large," while enforcement of the RDA served an admittedly legitimate criminal justice objective: "avoidance of embarrassment to and public scrutiny of the…complainant in a sexual assault case") (citing *Rumery*, 480 U.S. at 394–95); *Lynch*, 880 F.2d at 1127 n.8 (observing that RDAs serve the public interest when "they achieve a rough substantial justice" and "allow[] everyone to declare the case a draw and go home, thereby avoiding the risk and expense of going to trial."). There is no question that this case does not meet those standards. Plaintiffs have a valid—and gravely concerning—civil rights complaint implicating the most serious police misconduct and community relations between police and the Alaska Native community. And, at the time of the RDA, there was no possibility of "rough substantial justice" or a "draw"— Plaintiffs had already spent a collective 72 years in prison for crimes that they did not commit because of Defendants' misconduct.

   **B.    Defendants have not proved the RDA was voluntary.**

   Because Defendants cannot prove that the RDA is in the public interest, it is unnecessary for the Court to reach the issue of whether the Fairbanks Four entered the agreement voluntarily. *See Lynch*, 880 F.2d at 1128–29 (holding district court erred in dismissing plaintiff's suit based on an RDA even though it was undisputed he entered it voluntarily). But, as the Complaint establishes, they did not. Voluntariness is assessed "under the totality of the circumstances," and "courts have recognized that a decision to waive the right to pursue legal remedies is involuntary if it results from duress, including conditions of confinement." *Comer v. Stewart*, 215 F.3d 910, 917 (9th Cir. 2000).

11635.1.lf28140
*Roberts, et al., v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 22 of 34

The voluntariness of a waiver is a question of fact on which Defendants have the burden of proof. *See Avalos v. Baca*, 596 F.3d 583, 590–91 (9th Cir. 2010). Furthermore, even where evidence has been developed, "summary judgment is precluded when conflicting inferences might be drawn about a party's state of mind as reflected by objective indications." *Jones v. Taber*, 648 F.2d 1201, 1204 (9th Cir. 1981) (holding that plaintiff's incarceration made voluntariness a triable issue of fact—even though plaintiff testified he had signed the release "voluntarily" in exchange for $500); *see also Davis v. Oregon*, No. CV 07-635-AC, 2009 WL 2475442, at *4 (D. Or. Aug. 11, 2009) (unpublished) (denying summary judgment on question whether RDA was voluntarily entered, even though plaintiff was represented by counsel at the time, where plaintiff "believed he had been wrongfully incarcerated for over nine months," had lost a job offer, and feared he would lose custody of his daughter if not released right away).

In RDA cases, courts have looked at factors such as the plaintiff's sophistication and whether he was in custody in evaluating voluntariness. *See Rumery*, 480 U.S. at 394 (finding decision to enter RDA voluntary where party was "a sophisticated businessman," who was "not in jail," and the civil suit he waived was of questionable merit); *Lynch*, 880 F.2d at 1127 (holding that an RDA was voluntary where plaintiff was "a veteran peace officer" and not in custody); *Avalos*, 596 F.3d at 590 (holding that "objective indications of coercive pressures" such as incarceration could constitute coercion); *Jones*, 648 F.2d at 1205 (describing incarceration in a special segregation facility as potentially "inherently coercive"); *Hall v. Ochs*, 817 F.2d 920, 923–24 (1st Cir. 1987) (finding *involuntary* plaintiff's decision to sign RDA after a wrongful arrest and confinement in jail for over an hour); *Davis*, 2009 WL 2475442, at *4 (finding a genuine dispute of material fact regarding voluntariness where plaintiff signed RDA while still incarcerated after nine months wrongful imprisonment).

Here, Plaintiffs have plausibly pleaded that the decision to sign the RDA was not voluntary. The four innocent Plaintiffs were between the ages of 17 and 20 when they were arrested and spent their most productive years in prison, being deprived of further education or life experience. ¶¶ 143–66. Three of the four remained in custody at the time of the RDA where prosecutors held them hostage, requiring that all four had to sign before any of them could be released. ¶¶ 136–66. The Fairbanks Four knew it would be 6 to 8 months before the judge could rule on the PCR and the prosecutors were likely to appeal, which could take years, during which time they were to remain imprisoned. ¶¶ 116, 120.

Defendants make much of the fact that Plaintiffs were represented by counsel at the time of the RDAs, but the Ninth Circuit has made clear that that factor alone is not dispositive. *See Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir. 1983). In *Salmeron*, although the plaintiff had a valid state court order awarding him custody of his minor children, the U.S. Marshals had for 20 months kept the children in a secret location with Salmeron's ex-wife, who was in a witness protection program. Salmeron was then offered immediate custody if he would release the government from liability, and "[a]dvised by his attorney that he might not otherwise regain custody of the children without extensive litigation and long delay." *Id.* at 1360. The Ninth Circuit held "[o]n the basis of these circumstances…whether Salmeron voluntarily signed the release is a triable issue of fact." *Id.* at 1361.[7]

Defendants cite only Alaska state cases discussing coercion. Dkt 42 at 17–19. Although the RDA states that it is "governed by and construed under the laws of the State of Alaska," Dkt. 43-1 at 7, Ninth Circuit law is clear that parties may not enter into a choice-of-law provision for the waiver of federal rights. *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9th Cir.

_____

[7] In the same vein, the limited supervision by the court is of little relevance. It is uncontested that Judge Lyle did not meaningfully participate in the negotiation of the agreement. ¶¶ 170, 171.

19

1992) ("In the settlement agreement, the parties agreed that 'the terms and provisions of this Agreement shall be construed according to California law.' However…federal law always governs the releases of federal causes of action."). But even under the Alaska law Defendants cite, a decision is not voluntary if made under circumstances that would "induce assent on the part of a brave person or a person of ordinary firmness." Dkt. 42 at 16–17.

Here, Plaintiffs allege they are all innocent, had spent a collective 72 years wrongly incarcerated based on Defendants' misconduct, and that despite having presented overwhelming evidence establishing their actual innocence, they faced the prospect of *years* of additional incarceration while the prosecution delayed the resolution of their cases through extended appeals. Vent, Pease, and Frese had already missed many meaningful family events, including the funerals and ceremonial potlatches for Vent's closest male relative and Pease's mother, and Frese had been separated for 18 years from his child, who had been a toddler when Frese was arrested. ¶¶ 146–49, 158.

Defendants cite no authority suggesting that "a person of ordinary firmness" would be able to resist the offer to be released from decades of wrongful imprisonment in exchange for a waiver of future civil claims. Common sense and life experience counsel otherwise. Here, the choice was even more coercive. Although one might decide for himself to gut it out in prison during the inevitable appeals process, the RDA effectively shifted responsibility to such a hold-out for depriving the others of their freedom. ¶ 117.

Although Roberts himself was on parole and not incarcerated, the State conditioned the deal on the agreement from all four men; he could not reject it without consigning his three co-defendants to continued incarceration. ¶¶ 117, 136, 138–39. In fact, because Roberts was on supervised parole, not imprisoned, at the time, he received little immediate, tangible benefit from

the RDA; he only signed the agreement in order to prevent three innocent men from rotting in jail. ¶¶ 135, 139. Moreover, given the notoriety of this case among the Alaska Native community, any decision by Roberts endangering the freedom of the other members of the Fairbanks Four would have risked ostracism from his close-knit community. ¶¶ 216–22. Likewise, any self-interested refusal to waive civil claims by Frese, Pease, or Vent, and thereby keep the others in prison, would risk being similarly shunned.

## III. The absence of the State of Alaska as a party does not justify dismissal.

Defendants' argument that this suit must be dismissed for the failure to join the State of Alaska as an indispensable party again misstates or ignores governing law and provides no grounds for dismissal.

As an initial matter, Defendants argue that the State of Alaska is necessary only with respect to Plaintiffs' request for a declaratory judgment regarding the RDA. But they then engage in a sleight of hand, claiming that makes the State an indispensable party "to this lawsuit" and that the entire "lawsuit must be dismissed." Dkt. 42 at 19, 21. The law, however, is clear that joint tortfeasors and co-conspirators are *not* generally necessary parties. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015); *Anchorage v. Integrated Concepts & Research Corp.,* 1 F. Supp. 3d 1001, 1014–15 (D. Alaska 2014). Thus, even if Defendants were correct with respect to the declaratory judgment count—they are not—the remedy would be to dismiss that count, *not* to dismiss Plaintiffs' entire § 1983 suit. *See, e.g., Alto v. Black*, 738 F.3d 1111, 1126–28 (9th Cir. 2013) (considering whether Rule 19 required certain claims to be dismissed).

### A. Defendants have not met their burden of showing that the State is required.

Dismissal is a drastic remedy, and Rule 19 requires a case-by-case, multi-step analysis before the Court may consider it. *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390

U.S. 102, 118–19 (1968). Defendants have the burden of persuasion and must show both that a

party is required and not subject to joinder before the Court can consider dismissal. *See Makah*

*Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Under Rule 19, a party is not "required" unless:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Defendants cannot prove the State satisfies any of these tests, which

dooms their argument. *Alto*, 738 F.3d at 1125–26.[8]

Although Defendants argue the State has an interest in this action, they have not met a

threshold requirement for proving it: "Joinder is contingent…upon an initial requirement that the

absent party *claim* a legally protected interest relating to the subject matter of the action." *United*

---

[8] Defendants make no argument under Rule 19(a)(1)(A) that "complete relief" cannot be accorded in the absence of the State, nor can they. In addition to seeking damages from the Fairbanks Defendants, Plaintiffs seek an order declaring the RDA unenforceable only to the extent it could bar this suit, to which the State is not a party. The State is therefore not required. *See, e.g.*, *Integrated Concepts & Res. Corp.*, 1 F. Supp. 3d at 1014 (holding that under Rule 19(a)(1)(A) "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.") (internal quotation marks omitted). Nor do Defendants argue that such a declaration would risk leaving Defendants liable for inconsistent obligations—Defendants have *no* obligations under the contract that the State could sue to enforce, and the possibility that they will have to pay damages in this lawsuit does not risk "inconsistent obligations." *See, e.g.*, *Cachil Dehe Band of Winton Indians of the Colusa Indian Comm. v. California*, 547 F.3d 962, 967 (9th Cir. 2008) ("[I]nconsistent obligations are not the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.") (internal quotation marks and alterations omitted).

22

*States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (internal citations and quotations omitted, emphasis in original); *Ward*, 791 F.3d at 1050–51 (questioning whether declaration from absent party's counsel is sufficient evidence of a claimed interest). Here, the State of Alaska has made no such claim, which alone is a sufficient ground to reject Defendants' argument.

Nor do Defendants identify any legally protected interest of the State that would be impeded by this suit. Defendants claim, again without specificity, that the RDA "provides the State with substantial legal protections" that will be lost if the declaratory judgment is granted. Dkt. 42 at 21. This is fallacy. Plaintiffs seek only a declaration that the RDA will not bar this § 1983 suit—brought solely against the City of Fairbanks and its officers. Such a declaration would not implicate the State's rights here (because neither the State nor its prosecutors were sued) or in any future action. With the convictions vacated, the innocent men freed, and the State not facing any civil liability, it is difficult to conceive of a legitimate state interest in participating in this case.

Further, as a party to the RDAs, the City of Fairbanks is fully capable of advocating for its enforcement. "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (holding tribe was not necessary party where its interests were protected by the federal defendants); *see also Alto*, 738 F.3d at 1127–29 (similar); *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012) (holding district court abused its discretion by dismissing case where defendants adequately represented absent party's interests). Here, the Fairbanks Defendants have a much greater interest in upholding the RDA—they are the ones being sued for

11635.1.lf28140?
*Roberts, et al. v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 28 of 34

causing Plaintiffs' wrongful convictions. Defendants can be expected to vigorously press their own claims, thereby protecting any potentially legitimate State interest.

Nor can Defendants sidestep Rule 19 by claiming that all contract signatories are indispensable in every action concerning a contract. They are incorrect: The Ninth Circuit does *not* mandate the joinder of signatories whose contract rights are not at issue. *See, e.g.*, *Salt River Project*, 672 F.3d at 1181 (rejecting argument "that the tribe automatically is a necessary party to any action challenging a lease to which the tribe is a signatory"); *Integrated Concepts*, 1 F. Supp. 3d at 1015–16 (D. Alaska 2014) (rejecting argument that all parties to a contract are categorically necessary parties).[9]

Finally, even if the Court could find the State is a necessary party and joinder is infeasible, the Court still must determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Alto*, 738 F.3d at 1125. Defendants argue that this step does not apply to sovereign immunity, but the very case they cite explicitly held that Rule 19 requires a "case specific" analysis, including equitable balancing, even for sovereigns. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–72 (2008).[10] Applying such an analysis here, the strong federal interest in reviewing purported waivers of federal civil rights militates against dismissal. *See Lynch*, 880 F.2d at

---

[9] The cases Defendants cite are readily distinguishable. *See, e.g., Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975) (holding that the tribe was necessary party under all three Rule 19 tests in a suit seeking to deprive it of tens of millions of dollars of lease income); *Dawavendewa v. Salt River Project*, 276 F.3d 1150, 1155–59 (9th Cir. 2002) (holding that Navajo Nation is "thrice over a necessary party" in a suit seeking to invalidate a Navajo hiring preference necessary to "secure employment opportunities and income for the reservation."). In those cases, the signatory was necessary not because it signed the contract but because the lawsuit implicated its rights.

[10] *Pimentel* is also distinguishable because there the absent parties were directly adverse to parties to the class action where there were competing claims for limited assets to be distributed, 553 U.S. at 863–64, unlike the aligned interests between the State of Alaska and Fairbanks Defendants here.

24

*Roberts, et al. v. City of Fairbanks, et al.*, No. 4:17-cv-00034-HRH
11635.1.lf28140
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 29 of 34

1127–29. Indeed, if Defendants were correct, federal courts could *never* review the enforceability of agreements with state prosecutors—a conclusion belied by the body of federal law reviewing RDAs discussed above.

## IV. Plaintiffs have a valid spoliation claim.[11]

The Plaintiffs' spoliation claim is not barred by the statute of limitations. In Alaska, the statute of limitations is a disfavored defense, and "neither the law nor the facts should be strained in aid of it." *Tipton v. Arco Alaska*, 922 P.2d 910, 912–13 (Alaska 1996) (internal quotation marks and alterations omitted). A three-year statute of limitations applies to spoliation claims. *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1273 (Alaska 2013) (citing AS 09.10.053). Spoliation claims require evidence of three elements: (1) a showing of intentional interference with another party's civil cause of action; (2) a viable underlying cause of action; and (3) that evidence be destroyed or concealed until it is naturally destroyed. *Allstate Ins. Co. v. Dooley*, 243 P.3d 197, 200–03 (Alaska 2010). Spoliation claims require interference with another party's *civil* claim, and a viable underlying *civil* claim. The Plaintiffs' spoliation claim did not accrue until their civil claims became viable. Because all the Plaintiffs' civil claims only became viable when a favorable judgment was entered in their favor in the criminal matter, the statute of limitations for the spoliation claim did not begin running until the entry of a favorable judgment on December 17, 2015. The Plaintiffs filed complaints alleging spoliation within three years of that date, making their spoliation claims timely.

Alaska courts have never addressed a situation in which evidence was destroyed outside of the three-year statutory period but before the plaintiff's civil claims became viable, but in the similar context of malicious prosecution—another claim that requires a favorable judgment in a

---

[11] The Plaintiffs do not oppose the Defendants' motion to dismiss the negligence and negligent infliction of emotional distress claims.

25

11635.1 ltf28140

criminal proceeding—Alaska courts recognize that the statute of limitations only accrues upon entry of that favorable judgment. *See Brown v. Ely*, 14 P.3d 257, 262 (Alaska 2000) ("Since favorable termination of a proceeding alleged to have been maliciously brought is an element for any malicious prosecution claim, Brown's malicious prosecution claim did not accrue until that date."). The same principle should apply to spoliation claims.

The Complaint states a viable claim for spoliation. The Defendants argue that the Plaintiffs have not alleged sufficient facts to state a cognizable claim for spoliation. Their argument focuses primarily on the requirement that a party *destroys* evidence in order to commit spoliation. Although the Defendants correctly state that a party only commits spoliation through the destruction of evidence, *see Dooley*, 243 P.3d at 203, they ignore allegations of evidence destruction that satisfy this element of the claim.

The Defendants state that "*with few exceptions*, Plaintiffs' spoliation claim relies on allegations that evidence was hidden, withheld, manufactured, not created, or simply "'spoliated.'" Def. Mot. at 24. The reference to a "few exceptions" surely gives away the game, and Plaintiffs' well-pleaded allegations, properly accepted as true, prevent dismissal. The Complaint uses the terms "destroyed" or "spoliated" (which obviously alleges destruction given the legal definition of spoliation in Alaska), with respect to the following pieces of evidence: the portion of the recorded "confession" of Plaintiff Eugene Vent in which he purportedly identified where the victim's body was discovered, ¶ 50, four audiotapes from the investigation of the Dayton assault, ¶ 81, and the Sisto-Druck affidavit, ¶¶ 79, 279. In so doing, the Plaintiffs state a cognizable claim for spoliation under Alaska law. Furthermore, the Complaint plausibly alleges the withholding or concealment of other pieces of evidence, *see* ¶¶ 7, 76, 103, 249, 279, 284,

which draws a reasonable inference that some of that evidence was, in fact, destroyed. At this stage in the proceedings, that is sufficient to support a claim for spoliation.

## <u>CONCLUSION</u>

The Fairbanks Four spent a collective 72 years imprisoned for crimes they did not commit because of evidence coerced and fabricated by Defendants. Rather than challenging Plaintiffs' well-pleaded misconduct allegations, Defendants moved to dismiss based on ill-considered legal arguments and inapplicable case law. The precedent Defendants ignored—controlling Supreme Court and Ninth Circuit cases concerning *Heck*, release-dismissal agreements, and Rule 19—completely controverts their contentions. The motion to dismiss should therefore be denied, and Plaintiffs should be given the opportunity to develop their case in discovery.

Respectfully submitted,

July 2, 2018


/s/ Anna Benvenutti Hoffmann
Nick Brustin
Anna Benvenutti Hoffmann
Richard Sawyer
Neufeld Scheck & Brustin, LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
(212) 965-9081

Mike Kramer
Reilly Cosgrove
Kramer and Associates
542 4th Avenue, Suite 207
Fairbanks, AK 99701
907-888-4098
907-374-3829 (fax)
mike@mikekramerlaw.com
***Attorneys for Plaintiffs***
***Marvin Roberts and Eugene Vent***

11635.1 lf28140

/s/David Whedbee_____
Tiffany Cartwright
Jeffery Taren
David Whedbee
Sam Kramer
MacDonald, Hoague & Bayless
1500 Hoge Building
705 Second Avenue
Seattle, WA 98104
Phone: (312) 663-5210
Fax: (206) 343-3961
Email: davidw@mhb.com

Thomas R. Wickwire
2775 Hanson Road, Suite 1
Fairbanks. Alaska 99709
Tel: 907-474-0068
Fax: 907-474-0068
ABA# 7111049Email:
tom@twickwire.com
*Attorneys for Plaintiffs*
*George Frese and Kevin Pease*

28

*Roberts, et al., v. City of Fairbanks, et al.* No. 4:17-cv-00034-HRH
Case 4:17-cv-00034-HRH   Document 46   Filed 07/02/18   Page 33 of 34

**CERTIFICATE OF SERVICE**

I hereby certify that I delivered the foregoing *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss* to all counsel of record by ECF on July 2, 2018.

Respectfully submitted,

/s/ Anna Benvenutti Hoffmann

Anna Benvenutti Hoffmann
*An attorney for Plaintiffs Marvin Roberts
and Eugene Vent*