IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MARVIN ROBERTS, )
)
              Plaintiff, )
)
    vs. )
)
CITY OF FAIRBANKS, JAMES GEIER, )
CLIFFORD AARON RING, CHRIS NOLAN, )
DAVE KENDRICK, DOE OFFICERS 1-10, )
and DOE SUPERVISORS 1-10, )
)
              Defendants. )      No. 4:17-cv-0034-HRH
_____ )      [Consolidated with
EUGENE VENT, KEVIN PEASE, )       No. 4:17-cv-0035-HRH]
and GEORGE FRESE, )
)
              Plaintiffs, )
)                                O R D E R
    vs. )
)                                Motion to Dismiss
CITY OF FAIRBANKS, JAMES GEIER, )
CLIFFORD AARON RING, CHRIS NOLAN, )
DAVE KENDRICK, DOE OFFICERS 1-10, )
and DOE SUPERVISORS 1-10, )
)
              Defendants. )
_____ )

        Defendants move to dismiss plaintiffs' second amended and consolidated complaint.[1]

This motion is opposed.[2]  Oral argument was requested and has been heard.

_____

        [1]Docket No. 41.

        [2]Docket No. 46.

<u>Background</u>

Plaintiffs are Marvin Roberts, George Frese, Kevin Pease, and Eugene Vent. Defendants are the City of Fairbanks, James Geier, Clifford Aaron Ring, Chris Nolan, and Dave Kendrick.

Plaintiffs were convicted of the October 11, 1997 murder of John Hartman[3] and then sentenced to prison sentences ranging from 30 years to 77 years.[4] Plaintiffs allege that their convictions were the result of manufactured evidence and false statements.[5]

In September 2013, plaintiffs filed petitions for post-conviction relief ("PCR") in the Alaska Superior Court, "arguing that newfound testimonial and physical evidence could prove their factual innocence."[6] A five-week evidentiary hearing on plaintiffs' PCR petitions was held in the fall of 2015.[7] Plaintiffs allege that "[t]his evidentiary hearing established that [they] were actually innocent of Hartman's murder" and that they "squarely placed their factual innocence at issue during the PCR hearing."[8] Plaintiffs allege that the evidence presented at the hearing included testimony from William Holmes "that he and his friends

---

[3]Second Amended and Consolidated Complaint at 2, ¶ 1; 22, ¶ 92, Docket No. 40.

[4]<u>Id.</u> at 22, ¶ 92.

[5]<u>Id.</u> at 3, ¶ 7; 22, ¶ 92.

[6]<u>Id.</u> at 25, ¶ 106.

[7]<u>Id.</u> at 26, ¶ 109.

[8]<u>Id.</u> at 27, ¶¶ 110-11.

were Hartman's true killers," testimony from "at least eleven witnesses who corroborated his account[,]" and testimony that "the Alaska State Troopers had been able to corroborate key aspects of Holmes's confession and had been unable to locate any evidence placing [p]laintiffs at the scene of the Hartman homicide. . . ."[9]

Plaintiffs allege that "[a]t the conclusion of the PCR hearing in November 2015, the presiding judge told the parties multiple times that it would take him six to eight months to reach a decision."[10] They also allege that "[m]embers of the prosecution . . . stated publically that if the trial court concluded [that] the convictions should be vacated and ordered a new trial, the State would appeal that decision through to the Alaska Supreme Court."[11] Plaintiffs allege that "[t]his signaled an official willingness to delay further resolution of the case and release of all the [p]laintiffs, other than Roberts who had by this time served his sentence and had been released on probation."[12]

Plaintiffs allege that "[j]ust before Christmas, the prosecutors offered [them] a devil's bargain: the prosecution would consent to vacating the convictions and dismissing the charges but only if [they] would agree not to sue to vindicate their civil rights."[13] Plaintiffs

---

[9]Id. at 26-27, ¶¶ 109a, 109f.

[10]Id. at 28, ¶ 116.

[11]Id. at 29, ¶ 121.

[12]Id.

[13]Id. at 28-29, ¶ 117.

allege that State prosecutors were attempting "to avert probable judicial findings that [p]laintiffs were innocent and/or that the convictions were marred by official misconduct."[14] Plaintiffs further allege that State prosecutors were attempting to "forestall [p]laintiffs' civil action, through the waiver of claims, that likely would expose FPD [Fairbanks Police Department] officers and their colleagues in the Fairbank District Attorney Office to unfavorable litigation and public scrutiny into police and prosecutorial misconduct. . . ."[15]

Plaintiffs took the deal that was offered and entered into settlement agreements with the State of Alaska and the City of Fairbanks.[16] The settlement agreements provided that plaintiffs would stipulate to the withdrawal of their PCR petitions and that the parties would stipulate to a court order vacating the judgments of conviction.[17] The State agreed to file dismissals of the indictments and "not to seek a retrial" but reserved the right to seek a retrial if "substantial new evidence of guilt is discovered[.]"[18]

---

[14]Id. at 37, ¶ 167.

[15]Id. at 37, ¶ 168.

[16]Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43. The court has taken judicial notice of these exhibits and thus may consider them without converting the instant Rule 12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).

[17]Settlement Agreement and Mutual Release of All Claims at 1-2, § IA-B, Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43.

[18]Id. at 2-3, § 1B, § II.

The settlement agreements further provided that "[t]he parties have not reached agreement as to [plaintiffs'] actual guilt or innocence."[19]

In the settlement agreements, plaintiffs

> release[d] and forever discharge[d] . . . the City of Fairbanks and its departments, divisions, agencies, agents, representatives, directors, past and current employees, attorneys, contractors, retained or non-retained experts, witnesses, predecessors or successors in interest, and assigns . . . of and from any and all past, present, or future actions, causes of action, controversies, suits, claims, demands, liabilities, complaints or grievances of every kind and nature, whether mature or to mature in the future, and whether known or unknown, for or by reason of any matter, thing, claim, or allegation arising out of or in any way related to the arrest, investigation, prosecution, appeal, legal representation, or incarceration associated with, connected to, or related in any way to any legal matters or actions referenced above, or any other matters arising prior to the date of this Settlement Agreement and Mutual Release of All Claims.[20]

More specifically, plaintiffs released

> any and all claims . . . arising out of the investigation into the death of Jonathan Hartman and the subsequent prosecution and incarceration of [plaintiffs], . . . including but not limited to claims for malicious prosecution, wrongful imprisonment, prosecutorial misconduct, legal malpractice, [and] violation or deprivation of rights civil or constitutional[.[21]]

---

[19]Id. at 6, § V.

[20]Id. at 3-4, § III.

[21]Id. at 4, § III.

Plaintiffs also "release[d] any right [they] may now or hereafter have to reform, rescind, modify or set aside th[e] Settlement Agreement[s] and Mutual Release[s] of All Claims through mutual or unilateral mistake or otherwise."[22]

Plaintiffs

> declare[d] that the terms of th[e] Settlement Agreement[s] and Mutual Release[s] of All Claims have been carefully read and are fully understood and are voluntarily accepted [f]or the purpose of making a full and final compromise of any and all claims, disputed or otherwise, for and on account of the matters described above.[23]

The settlement agreements also provided that "[i]t is mutually understood by the [p]arties that the purpose of th[ese] Agreement[s] is that there be no further litigation by [plaintiffs] or others on [their] behalf related to this matter."[24] The settlement agreements also noted that the agreements had "been drafted by the [p]arties through the efforts of their respective legal counsel" and that "[t]he [p]arties warrant that the terms of th[e] Agreement[s] have been carefully reviewed and that each [p]arty understands [their] contents and has been advised as to the legal effect of th[e] Agreement[s] by legal counsel obtained by that [p]arty."[25] Each of plaintiffs' lawyers represented that they had "carefully and fully explained the terms,

---

[22]Id. at 5, § III.

[23]Id. at 6, § III.

[24]Id.

[25]Id. at 6, § IV.

provisions and effects of" the agreements and that their clients represented that they understood the terms of the agreements and the significance of the terms.[26]

The terms of the stipulation that was contemplated in the settlement agreements were presented to the Superior Court on December 11, 2015. Plaintiffs "stipulate[d] and agree[d] that the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt[,]" and the parties "stipulate[d] and agree[d] that th[e Superior c]ourt need not make findings of innocence under AS 12.72.020."[27] In paragraph 5 of the stipulation, "[t]he parties stipulate[d] and agree[d] that [the Superior c]ourt may immediately enter Orders vacating the Judgments of Conviction, Restitution Orders, and Rule 39 judgments for attorney fees in each" underlying criminal case "and award[] each Petitioner the relief of a new trial for each of the charges for which Petitioners were convicted."[28] The stipulation provided that "[u]pon entry of the Orders in paragraph 5, Petitioners withdraw their claims of prosecutorial misconduct asserted" in their PCR petitions.[29] The stipulation also provided that "[u]pon entry of the Orders in Paragraph 5, . . .

---

[26]Id. at 9.

[27]Exhibit 5 at 2, ¶¶ 2, 4, Defendants' Request for Judicial Notice, Docket No. 43. The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule 12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[28]Stipulation at 2, ¶ 5, Exhibit 5, Defendants' Request for Judicial Notice, Docket No. 43.

[29]Id. at 2, ¶ 6.

the State will not seek retrial in any of the underlying criminal cases and will file dismissals

pursuant to Criminal Rule 43(a) of the indictments. . . ."[30]  Finally, "the parties stipulate[d]

and agree[d] that upon the filing of the . . . dismissals, [the Superior c]ourt shall order the

immediate and unconditional release of Petitioners from custody and supervision. . . ."[31]

On December 17, 2015, the Superior Court held a hearing to address the stipulation.

At the hearing, the Superior Court judge read the stipulation into the record and declared that

"[t]he orders vacating the judgment of conviction and commitment and probation and

restitution will enter" and that he would "sign them off the record."[32]

The State dismissed the charges against plaintiffs on December 17, 2015.[33]  The

orders vacating plaintiffs' convictions and sentences were also signed on December 17, 2015

2015.[34]  And, Vent, Pease, and Frese were released from prison on December 17, 2015.

---

[30]Id. at 3, ¶ 7.

[31]Id. at 3, ¶ 8.

[32]Transcript of Settlement on the Record at 4:7-6:10, 12:25-13:4, Exhibit 10, Defendants' Request for Judicial Notice, Docket No. 43.  The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule12(b)(6) motion into a motion for summary judgment.  Intri-Plex Technologies, 499 F.3d at 1052.

[33]Exhibits 1-4, Plaintiffs' Request for Judicial Notice, Docket No. 47. The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[34]Exhibits 11-14, Declaration of Peter A. Scully, which is appended to Response to Court's Order re: Requests for Judicial Notice, Docket No. 58.  The court takes judicial notice of these exhibits and thus may consider them without converting the instant
(continued...)

On May 14, 2018, plaintiffs filed their second amended and consolidated complaint in this matter. In this complaint, they assert twelve causes of action. In the first cause of action, plaintiffs assert § 1983 deprivation of liberty claims. In the second cause of action, plaintiffs assert § 1983 claims for malicious prosecution. In the third cause of action, plaintiffs assert § 1983 Brady claims. In the fourth cause of action, plaintiffs assert § 1983 supervisor liability claims. In the fifth cause of action, plaintiffs assert § 1983 civil rights conspiracy claims. In the sixth cause of action, plaintiffs assert § 1985(3) conspiracy claims. In the seventh cause of action, plaintiffs assert Monell claims under § 1983 against the City of Fairbanks. In the eighth cause of action, plaintiffs assert § 1983 First Amendment right of access claims. In the ninth cause of action, Vent and Frese assert Fifth Amendment violation claims.[35] In the tenth cause of action, plaintiffs assert spoliation of evidence claims. In the eleventh cause of action, plaintiffs assert negligence claims. In the twelfth cause of action, plaintiffs assert intentional infliction of emotional distress claims.

---

[34](...continued)
Rule 12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[35]Although these claims are not expressly pled as § 1983 claims, the Ninth Circuit "has held that a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001); see also, Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ("a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983").

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiffs' claims for failure to state plausible claims. In the alternative, pursuant to Rule 12(b)(7), defendants move to dismiss plaintiffs' claims for failure to join the State of Alaska as an indispensable party.

<u>Discussion</u>

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 999 (9th Cir. 2013) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." <u>Id.</u> "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" <u>In re Rigel Pharmaceuticals, Inc. Securities Litig.</u>, 697 F.3d 869, 875 (9th Cir. 2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the

plaintiff." <u>Adams v. U.S. Forest Srvc.</u>, 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." <u>In re Tracht Gut, LLC</u>, 836 F.3d 1146, 1150 (9th Cir. 2016).

As an initial matter, plaintiffs "do not oppose" the dismissal of their negligence and negligent infliction of emotional distress claims.[36] Defendants' motion to dismiss these two claims is granted. Plaintiffs' negligence and negligent infliction of emotional distress claims are dismissed with prejudice.

Plaintiffs do oppose the dismissal of their other ten claims. Defendants first argue that these claims are subject to dismissal because they are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

The question before the Court in <u>Heck</u> was "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." <u>Id.</u> at 478. Heck had been convicted of voluntary manslaughter in state court and was serving a fifteen-year sentence. <u>Id.</u> He filed a § 1983 action in federal court, alleging that the state prosecutor and police investigator had conducted an unlawful investigation, destroyed evidence, and used illegal and unlawful evidence at his trial. <u>Id.</u> at 479. Heck sought damages; he did not seek to be released from custody. <u>Id.</u>

---

[36]Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 25, n.11, Docket No. 46.

The Seventh Circuit had held that if a prisoner is challenging the legality of his conviction, "the suit is classified as an application for habeas corpus and the plaintiff must exhaust his state remedies." Id. at 480 (citation omitted). But, the Court found that "[t]he issue with respect to monetary damages challenging conviction is not . . . exhaustion; but rather . . . whether the claim is cognizable under § 1983 at all." Id. at 483.

The Court then compared Heck's § 1983 claims to "[t]he common-law cause of action for malicious prosecution" and observed that for such a claim "[o]ne element that must be alleged and proved . . . is termination of the prior criminal proceeding in favor of the accused." Id. at 484. The Court found that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgment applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement[.]" Id. at 486. Thus, the Court held

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. The Court explained that

when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Id.</u>

Finally, the Court found it unnecessary to consider a statute of limitations issue that the Seventh Circuit had addressed.  <u>Id.</u> at 489.  The Seventh Circuit had "concluded that a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted."  <u>Id.</u>  The Court explained that there was no statute of limitations problem "[u]nder [its] analysis" because "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

Thus, "[u]nder <u>Heck v. Humphrey</u>, a state prisoner cannot recover damages in a § 1983 suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'"  <u>Guerrero v. Gates</u>, 442 F.3d 697, 703 (9th Cir. 2006) (quoting <u>Heck</u>, 512 U.S. at 487).  This rule from <u>Heck</u> is sometimes referred to as the "favorable termination rule. . . ."  <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136, 1139 (9th Cir. 2005).  It is also sometimes referred to as the "<u>Heck</u> preclusion doctrine. . . ."  <u>Beets v.</u>

County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012). And, it is sometimes simply referred to as the "Heck bar." Lockett v. Ericson, 656 F.3d 892, 896 (9th Cir. 2011).

There is also a concomitant principle derived from Heck that is referred to as the deferred accrual rule. "[T]he Heck rule for deferred accrual 'delays what otherwise would be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn.'" Rosales-Martinez v. Palmer, 753 F.3d 890, 896 (9th Cir. 2014) (quoting Wallace v. Kato, 549 U.S. 384, 393 (2007)).

The Heck bar "applies with respect not only to . . . § 1983 claim[s] but also to . . . [§] 1985(3) . . . claims." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004) (citation omitted). The Heck bar applies also to "'state law claims arising from the same . . . misconduct' alleged in § 1983 claims.'" Berger v. Brandon, Case No. 2:08-cv-01688-GEB-EFB, 2008 WL 5101338, at *1 (E.D. Cal. Dec. 3, 2008) (quoting Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412-13 (Calif. Ct. App. 2002)). Here, plaintiffs' spoliation claim is based on the same conduct alleged in some of plaintiffs' § 1983 claims.

In applying the Heck bar, the Supreme Court directs this court to first "consider whether a judgment in favor of the plaintiff[s] would necessarily imply the invalidity of [their] conviction[s] or sentence[s.]" Heck, 512 U.S. at 487. There is no question that a judgment in plaintiffs' favor on their § 1983, § 1985 and spoliation claims would necessarily imply the invalidity of their convictions and sentences. Were plaintiffs to succeed on these

-14-

claims, they would, in effect, prove their innocence, which would mean that their convictions and sentences were invalid.

Plaintiffs however argue that Heck has no application here because "Heck applies only when there is an extant conviction. . . ." Bradford v. Scherschligt, 803 F.3d 382, 386 (9th Cir. 2015); see also, Wallace, 549 U.S. at 393 (quoting Heck, 512 U.S. at 487) ("the Heck rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment'"). Because their convictions have been vacated, plaintiffs argue that there are no extant convictions and thus Heck does not bar their § 1983, § 1985, and spoliation claims.

Plaintiffs are misreading Bradford. The issue in Bradford was "when a Devereaux claim accrues and starts the running of the limitation period." Bradford, 803 F.3d at 386. "A Devereaux claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence." Id.

Bradford had been convicted of burglary and rape in 1996. Id. at 383. "In 2008, after Bradford served his full ten-year sentence," his conviction was vacated by the Washington Court of Appeals, largely because "newly available DNA testing . . . excluded him as a contributor of genetic material found at the crime." Id. After his first conviction was vacated, Bradford was retried and acquitted in 2010. Id. Bradford filed his § 1983 Devereaux claim in 2013. Id. at 383-84. The district court determined "that the running of

the three year statute of limitations" on this claim "began on the vacatur of Bradford's conviction and not the date of his acquittal[.]" Id. at 384.

On appeal, Bradford argued that his Devereaux claim would have been barred by Heck if he had "filed it immediately upon vacatur of his conviction." Id. at 386. The Ninth Circuit disagreed. Id. The Ninth Circuit explained that

> Heck established the now well-known rule that when an otherwise complete and present § 1983 cause of action would impugn an extant conviction, accrual is deferred until the conviction or sentence has been invalidated. As the Supreme Court made clear in its decision in Wallace, however, Heck applies only when there is an extant conviction and is not implicated merely by the pendency of charges.

Id. In other words, Heck would not have barred Bradford's § 1983 claim had he filed it immediately after his conviction was vacated because at that point, his conviction had been vacated by the Washington Court of Appeals on grounds that suggested that the conviction was invalid. Bradford's § 1983 claim, had he filed it in 2008 after his conviction was vacated, would not have been barred by Heck because he likely could have shown that his conviction had been "declared invalid by a state tribunal authorized to make such determination[.]" Heck, 512 U.S. at 487.

Wallace also does not help plaintiffs. In Wallace, the issue before the Court was whether Wallace's § 1983 claim for damages "for an arrest that violated the Fourth Amendment" was timely. Wallace, 549 U.S. at 386. Wallace had been arrested, convicted, and sentenced for first-degree murder. Id. Wallace contended that he had been arrested

without probable cause, and after two rounds of appeals, the state "prosecutors dropped the charges" against him. Id. at 387. Approximately one year later, Wallace brought a § 1983 false arrest suit against the City of Chicago and several Chicago police officers. Id. Wallace argued that his § 1983 false arrest claim accrued on the date on which he was released from custody. Id. at 391. The Court rejected this argument and instead held that the statute of limitations began to run "when he appeared before the examining magistrate and was bound over for trial" because that was when he began to suffer damages as a result of the false arrest. Id. at 391. Because Wallace had filed his § 1983 suit more than two years after he appeared before the examining magistrate, the Court concluded that his § 1983 suit was time barred. Id. at 391-92.

The Court rejected Wallace's "contention that Heck . . . compels the conclusion that his suit could not accrue until the State dropped its charges against him." Id. at 392. The Court set out the language from Heck that

> "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."

Id. (quoting Heck, 512 U.S. at 486-87). The Court then stated that "the Heck rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.'" Id. at 393 (quoting Heck, 512 U.S. at 487). The Court explained that the Heck rule for deferred accrual "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." Id. But, the Court explained that in Wallace's case, on the date on which the statute of limitations on his false arrest § 1983 claim began to run, "there was in existence no criminal conviction that the cause of action would impugn" because Wallace had not yet been convicted of anything. Id.

Wallace has little, if any, application here because it applies to § 1983 claims for false arrest. Specifically, the Court held "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 397. Plaintiffs have not asserted § 1983 false arrest claims. Moreover, Wallace stands for the proposition that Heck does not bar § 1983 claims if there is not yet a conviction in existence. That is not the case here. Plaintiffs were convicted and sentenced long before they brought their § 1983 claims.

The question here is not so much when did plaintiffs' § 1983 claims accrue, which is what was at issue in both Bradford and Wallace. The question here is whether plaintiffs' convictions have been invalidated for purposes of Heck. If they have been, plaintiffs' §

1983, § 1985, and spoliation claims are not barred by <u>Heck</u>. If they have not been, plaintiffs' § 1983, § 1985, and spoliation claims are barred by <u>Heck</u>.

<u>Heck</u> expressly provides that a conviction or sentence has been invalidated if it has "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" <u>Heck</u>, 512 U.S. at 487. There is no question that plaintiffs' convictions and sentences were not reversed on direct appeal, expunged by executive order, or called into question by the issuance of a writ of habeas corpus. Plaintiffs' only avenue for satisfying <u>Heck</u> is to show that their convictions have been invalidated by a state tribunal.

Plaintiffs' convictions were vacated pursuant to a settlement agreement. But in that process, their convictions were not declared <u>invalid</u> by the Superior Court. In fact, the parties' stipulation expressly provided "that the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt."[37] All the Superior Court did was vacate plaintiffs' convictions pursuant to the settlement agreements and the stipulation. The Superior Court did not declare their convictions invalid.

Nonetheless, plaintiffs argue that the vacatur of their convictions and sentences by the Superior Court pursuant to the settlement agreements is sufficient for <u>Heck</u> purposes because the charges against them have been "fully and finally resolved and could no longer be

---

[37]Exhibit 5 at 2, ¶ 2, Defendants' Request for Judicial Notice, Docket No. 43.

brought against" them.  <u>Bradford</u>, 803 F.3d at 389.  But, that is not the requirement laid out

in <u>Heck</u> nor was the <u>Bradford</u> court considering whether Bradford's conviction had been

<u>invalidated</u> for purposes of <u>Heck</u>.  Rather, the court in <u>Bradford</u> was considering when

Bradford's § 1983 claim accrued under the "traditional rules of accrual. . . ."  <u>Id.</u> at 386.

Plaintiffs next argue that an order dismissing their indictments is all that is needed to

satisfy <u>Heck</u> because courts have found <u>Heck</u> satisfied when charges are dismissed by <u>nolle</u>

<u>prosequi</u> or by a dismissal without prejudice.  Plaintiffs cite to two cases in support of this

argument.

First, plaintiffs cite to <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379

(4th Cir. 2014).  There, the issue before the court was whether Owens' § 1983 claims were

barred by the statute of limitations.  <u>Id.</u> at 388.  Owens had been convicted of burglary and

felony murder in 1988, but in 2007, "a state court granted Owens's 'petition to reopen his

Post Conviction Proceeding' and ordered that 'by agreement of Counsel and this Honorable

Court, . . . Petitioner shall be granted a new trial'" based on new DNA evidence.  <u>Id.</u> at 387.

"On October 15, 2008, the State's Attorney entered a <u>nolle</u> <u>prosequi</u>, dropping the charges

against" Owens, and he was released from prison on that date.  <u>Id.</u>  On October 12, 2011,

Owens brought § 1983 claims against the State's Attorney's Office and others.  <u>Id.</u> at 388.

On appeal, the defendants argued that Owens' § 1983 claims accrued on the date on which

the state court vacated his conviction (June 4, 2007).  <u>Id.</u>  Owens argued that his § 1983

claims accrued on October 15, 2008, "the date on which prosecutors filed a <u>nolle</u> <u>prosequi</u>,

finally resolving the proceedings against him," because it was on that date that the charges against him were finally resolved.  Id.  The court held that Owens' § 1983 claim accrued on the date on which the prosecutors filed a nolle prosequi.  Id. at 390.  The court rejected the contention that Heck required a different result, observing that "the Heck bar to suit was removed as soon as the state court invalidated Owens's conviction and granted him a new trial."  Id. at 391.  Thus, the court found that it was not the filing of the nolle prosequi that removed the Heck bar, but rather the state court's invalidation of Owens' conviction.  Here, no state court has invalidated plaintiffs' convictions.  Rather, the state court vacated plaintiffs' convictions pursuant to the settlement agreements, and plaintiffs expressly stipulated that their judgments of convictions were valid.

Second, plaintiffs cite to Spak v. Phillips, 857 F.3d 458 (2nd Cir. 2017).  There, Spak was arrested on June 15, 2010 on charges of tampering with or fabricating evidence.  Id. at 460.  "On September 10, 2010, the prosecuting attorney unilaterally dismissed the charges against Spak by entering a nolle prosequi."  Id. at 461.  On October 29, 2013, Spak filed a § 1983 malicious prosecution claim.  Id.  The issue before the court was on what date did Spak's § 1983 claim accrue.  Id.  Spak "argue[d] that his claim did not accrue on the date that the charges against him were nolled, but thirteen months later when Connecticut law mandated that the records of his nolled prosecution be erased."  Id.  The court observed that "as a general matter a nolle prosequi constitutes a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues."  Id. at 463.  But, the court did not hold that

a nolle prosequi is sufficient to satisfy the Heck requirement that a conviction or sentence be invalidated prior to a plaintiff bringing a § 1983 damages claim that would impugn the validity of that conviction or sentence.  The court explained that

> Heck and its progeny generally deal with Section 1983 suits that are filed by plaintiffs asserting that a prior criminal conviction is invalid, and seeking to recover damages for the state's abuse of legal process.  Those decisions thus require that the plaintiff demonstrate that the outstanding conviction has been conclusively invalidated in a manner that demonstrates his innocence before he can pursue his civil claim.  They do not address the type of termination at issue here, in which a plaintiff was never convicted of a criminal offense, but the charges against him were dismissed in a manner that did not preclude future prosecution under a different charging instrument.

Id. at 465.  Spak makes clear that, for purposes of the Heck bar, plaintiffs must show that their convictions were invalidated.  Spak does not provide any support for a contention that a conviction that has been vacated pursuant to a settlement agreement would be sufficient to meet this requirement.

Finally, plaintiffs argue that the fact that the vacatur of their convictions was the result of the settlement agreements does not mean that their convictions were not invalidated for purposes of Heck.  Plaintiffs cite to Rosales-Martinez, 753 F.3d 890, in support of this argument.

There, Rosales-Martinez was convicted in 2004 of three drug charges and sentenced to a term of imprisonment of ten to twenty-five years.  Id. at 892.  At some point thereafter, Rosales-Martinez filed a habeas petition in state court, alleging that the criminal history of

the confidential informant who testified against him had not been disclosed to him. Id. "On December 2, 2008, the state District Court granted Rosales-Martinez's petition and ordered him released from prison." Id. Almost two years later, Rosales-Martinez filed a § 1983 suit in federal district court, alleging Brady violations based on his allegations that the defendants had failed to disclose the confidential informant's "criminal history during pre-trial proceedings, and even after his conviction." Id. The federal district court dismissed Rosales-Martinez's complaint on the grounds that it was barred by the statute of limitations, finding that Rosales-Martinez knew about the Brady violations prior to the December 2, 2008 order releasing him from prison. Id. at 893. The Ninth Circuit held that the district court erred because Rosales-Martinez's § 1983 claim "did not accrue until the Nevada court vacated those convictions on December 2, 2008[.]" Id. at 896.

That was not the end of the matter however because Rosales-Martinez's appeal was complicated by documents that had come to light during the pendency of his appeal. While his case was on appeal to the Ninth Circuit, it was discovered that Rosales-Martinez had entered into a stipulated agreement on December 2, 2008, that provided he would plead guilty "to the least serious of the charges of which he had been convicted" and that the sentence for this charge would be "a certain portion of the time he served in custody." Id. at 893. Rosales-Martinez also signed a guilty plea memorandum. Id. at 894. In "the minutes of a court proceeding based on the stipulation . . . the Washoe County District Court

'vacate[d] the convictions' in Rosales-Martinez's criminal case 'based on the cumulative errors . . . as alleged in his [habeas] petition.'" Id.

The Ninth Circuit explained that

> [t]he fact that Rosales-Martinez was re-convicted following the vacation of his initial conviction, means that he still has an outstanding conviction. This outstanding conviction raises the question whether Rosales-Martinez's § 1983 action is barred by Heck's holding that "a claim for damages [based] on a conviction or sentence that has not been so invalidated is not cognizable."

Id. at 897 (quoting Heck, 512 U.S. at 487). The Ninth Circuit, however, did not answer this question, instead remanding the matter to the district court to consider it in the first instance. Id. at 899. In doing so, the Ninth Circuit observed that

> the district judge may wish to consider the extent to which Rosales–Martinez can seek compensatory damages based on the convictions that were vacated as invalid, and the time he served on the count that remained valid, for which he was given credit for 501 days of time served. The district judge may also wish to consider whether any of the facts Rosales–Martinez allocuted to in his December 2, 2008 plea are inconsistent with his allegations in this § 1983 action.

Id. But, the Ninth Circuit did not hold that a conviction that has been vacated pursuant to a settlement agreement is sufficient to meet the Heck invalidation requirement.

In sum, plaintiffs have not shown that their convictions or sentences have been invalidated. Their convictions and sentences have been vacated. But that is not the same thing for purposes of Heck. Heck requires a showing that the conviction or sentence that the § 1983 claims would impugn has been "declared invalid by a state tribunal authorized to

make such determination[.]" Heck, 512 U.S. at 487. No state tribunal has declared plaintiffs' convictions and sentences invalid. Plaintiffs' § 1983, § 1985, and spoliation claims are barred by Heck.

Because plaintiffs' § 1983, § 1985, and spoliation claims are barred by Heck, the court need not consider defendants' argument that plaintiffs' claims are barred by the settlement agreements.[38] The court also need not consider defendants' alternative Rule 12(b)(7) argument that the State of Alaska is an indispensable party.

Conclusion

Defendants' motion to dismiss is granted. Plaintiffs' claims against defendants are dismissed. Plaintiffs' negligence and negligent infliction of emotional distress claims are dismissed with prejudice. Plaintiffs' § 1983, § 1985, and spoliation claims are dismissed without prejudice. Plaintiffs are not given leave to amend these claims as amendment would be futile at this time.

DATED at Anchorage, Alaska, this 22nd day of October, 2018.

/s/ H. Russel Holland
United States District Judge

---

[38]The court would note that plaintiffs only argue that the claims release provisions in the settlement agreements are unenforceable. They do not contend that other provisions in the settlement agreements are unenforceable nor do they contend that any of the terms of the stipulation were invalid.