IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARVIN ROBERTS,<br><br>               Plaintiff,<br><br>    vs.<br><br>CITY OF FAIRBANKS, JAMES GEIER, CLIFFORD AARON RING, CHRIS NOLAN, DAVE KENDRICK, DOE OFFICERS 1-10, and DOE SUPERVISORS 1-10,<br><br>               Defendants. | |
| EUGENE VENT, KEVIN PEASE, and GEORGE FRESE,<br><br>               Plaintiffs,<br><br>    vs.<br><br>CITY OF FAIRBANKS, JAMES GEIER, CLIFFORD AARON RING, CHRIS NOLAN, DAVE KENDRICK, DOE OFFICERS 1-10, and DOE SUPERVISORS 1-10,<br><br>               Defendants. | No. 4:17-cv-0034-HRH<br>[Consolidated with<br>No. 4:17-cv-0035-HRH]<br><br><br>O R D E R<br><br>Motion to Dismiss |

Now before the court, following remand from the Ninth Circuit Court of Appeals, is defendants' motion to dismiss[1] plaintiffs' second amended and consolidated complaint. This motion is opposed.[2] Oral argument was requested and has been heard.

---

[1]Docket No. 41.

[2]Docket No. 46.

Background

Plaintiffs are Marvin Roberts, George Frese, Kevin Pease, and Eugene Vent. Defendants are the City of Fairbanks, James Geier, Clifford Aaron Ring, Chris Nolan, and Dave Kendrick.

Plaintiffs were convicted of the October 11, 1997 murder of John Hartman[3] and then sentenced to prison sentences ranging from 30 years to 77 years.[4] Plaintiffs allege that their convictions were the result of manufactured evidence and false statements.[5]

In September 2013, plaintiffs filed petitions for post-conviction relief ("PCR") in the Alaska Superior Court, "arguing that newfound testimonial and physical evidence could prove their factual innocence."[6] A five-week evidentiary hearing on plaintiffs' PCR petitions was held in the fall of 2015.[7] Plaintiffs allege that "[t]his evidentiary hearing established that [they] were actually innocent of Hartman's murder" and that they "squarely placed their factual innocence at issue during the PCR hearing."[8] Plaintiffs allege that the evidence presented at the hearing included testimony from William Holmes "that he and his friends

---

[3]Second Amended and Consolidated Complaint at 2, ¶ 1; 22, ¶ 92, Docket No. 40.
[4]Id. at 22, ¶ 92.
[5]Id. at 3, ¶ 7; 22, ¶ 92.
[6]Id. at 25, ¶ 106.
[7]Id. at 26, ¶ 109.
[8]Id. at 27, ¶¶ 110-11.

were Hartman's true killers," testimony from "at least eleven witnesses who corroborated his account[,]" and testimony that "the Alaska State Troopers had been able to corroborate key aspects of Holmes's confession and had been unable to locate any evidence placing [p]laintiffs at the scene of the Hartman homicide. . . ."[9]

Plaintiffs allege that "[a]t the conclusion of the PCR hearing in November 2015, the presiding judge told the parties multiple times that it would take him six to eight months to reach a decision."[10] They also allege that "[m]embers of the prosecution . . . stated publically that if the trial court concluded [that] the convictions should be vacated and ordered a new trial, the State would appeal that decision through to the Alaska Supreme Court."[11] Plaintiffs allege that "[t]his signaled an official willingness to delay further resolution of the case and release of all the [p]laintiffs, other than Roberts who had by this time served his sentence and had been released on probation."[12]

Plaintiffs allege that "[j]ust before Christmas, the prosecutors offered [them] a devil's bargain: the prosecution would consent to vacating the convictions and dismissing the charges but only if [they] would agree not to sue to vindicate their civil rights."[13] Plaintiffs

---

[9] Id. at 26-27, ¶¶ 109a, 109f (emphasis omitted).

[10] Id. at 28, ¶ 116.

[11] Id. at 29, ¶ 121.

[12] Id.

[13] Id. at 28-29, ¶ 117 (emphasis omitted).

allege that State prosecutors were attempting "to avert probable judicial findings that [p]laintiffs were innocent and/or that the convictions were marred by official misconduct."[14] Plaintiffs further allege that State prosecutors were attempting to "forestall [p]laintiffs' civil action, through the waiver of claims, that likely would expose FPD [Fairbanks Police Department] officers and their colleagues in the Fairbank District Attorney Office to unfavorable litigation and public scrutiny into police and prosecutorial misconduct. . . ."[15]

Plaintiffs took the deal that was offered and entered into settlement agreements with the State of Alaska and the City of Fairbanks.[16] The settlement agreements provided that plaintiffs would stipulate to the withdrawal of their PCR petitions and that the parties would stipulate to a court order vacating the judgments of conviction.[17] The State agreed to file dismissals of the indictments and "not to seek a retrial" but reserved the right to seek a retrial if "substantial new evidence of guilt is discovered[.]"[18]

---

[14]Id. at 37, ¶ 167.

[15]Id. at 37, ¶ 168.

[16]Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43. The court has taken judicial notice of these exhibits and thus may consider them without converting the instant Rule12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).

[17]Settlement Agreement and Mutual Release of All Claims at 2, § IA-B, Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43.

[18]Id. at 2-3, § 1B, § II.

-4-

The settlement agreements further provided that "[t]he parties have not reached agreement as to [plaintiffs'] actual guilt or innocence."[19]

In the settlement agreements, plaintiffs

> release[d] and forever discharge[d] . . . the City of Fairbanks and its departments, divisions, agencies, agents, representatives, directors, past and current employees, attorneys, contractors, retained or non-retained experts, witnesses, predecessors or successors in interest, and assigns . . . of and from any and all past, present, or future actions, causes of action, controversies, suits, claims, demands, liabilities, complaints or grievances of every kind and nature, whether mature or to mature in the future, and whether known or unknown, for or by reason of any matter, thing, claim, or allegation arising out of or in any way related to the arrest, investigation, prosecution, appeal, legal representation, or incarceration associated with, connected to, or related in any way to any legal matters or actions referenced above, or any other matters arising prior to the date of this Settlement Agreement and Mutual Release of All Claims.[20]

More specifically, plaintiffs released

> any and all claims . . . arising out of the investigation into the death of Jonathan Hartman and the subsequent prosecution and incarceration of [plaintiffs], . . . including but not limited to claims for malicious prosecution, wrongful imprisonment, prosecutorial misconduct, legal malpractice, [and] violation or deprivation of rights civil or constitutional[.[21]

---

[19] Id. at 6, § V.

[20] Id. at 3-4, § III.

[21] Id. at 4, § III.

-5-

Plaintiffs also "release[d] any right [they] may now or hereafter have to reform, rescind, modify or set aside th[e] Settlement Agreement[s] and Mutual Release[s] of All Claims through mutual or unilateral mistake or otherwise."[22]

Plaintiffs

> declare[d] that the terms of th[e] Settlement Agreement[s] and Mutual Release[s] of All Claims have been carefully read and are fully understood and are voluntarily accepted [f]or the purpose of making a full and final compromise of any and all claims, disputed or otherwise, for and on account of the matters described above.[23]

The settlement agreements also provided that "[i]t is mutually understood by the [p]arties that the purpose of th[ese] Agreement[s] is that there be no further litigation by [plaintiffs] or others on [their] behalf related to this matter."[24] The settlement agreements also noted that the agreements had "been drafted by the [p]arties through the efforts of their respective legal counsel" and that "[t]he [p]arties warrant that the terms of th[e] Agreement[s] have been carefully reviewed and that each [p]arty understands [their] contents and has been advised as to the legal effect of th[e] Agreement[s] by legal counsel obtained by that [p]arty."[25] Each of plaintiffs' lawyers represented that they had "carefully and fully explained the terms,

---

[22]Id. at 5, § III.

[23]Id. at 6, § III.

[24]Id.

[25]Id. at 6, § IV.

-6-

provisions and effects of" the agreements and that their clients represented that they understood the terms of the agreements and the significance of the terms.[26]

The terms of the stipulation that was contemplated in the settlement agreements were presented to the Superior Court on December 11, 2015. Plaintiffs "stipulate[d] and agree[d] that the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt[,]" and the parties "stipulate[d] and agree[d] that th[e Superior c]ourt need not make findings of innocence under AS 12.72.020."[27] In paragraph 5 of the stipulation, "[t]he parties stipulate[d] and agree[d] that [the Superior c]ourt may immediately enter Orders vacating the Judgments of Conviction, Restitution Orders, and Rule 39 judgments for attorney fees in each" underlying criminal case "and award[] each Petitioner the relief of a new trial for each of the charges for which Petitioners were convicted."[28] The stipulation provided that "[u]pon entry of the Orders in paragraph 5, Petitioners withdraw their claims of prosecutorial misconduct asserted" in their PCR petitions.[29] The stipulation also provided that "[u]pon entry of the Orders in Paragraph 5, . . .

---

[26]Id. at 9.

[27]Exhibit 5 at 2, ¶¶ 2, 4, Defendants' Request for Judicial Notice, Docket No. 43. The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[28]Stipulation at 2, ¶ 5, Exhibit 5, Defendants' Request for Judicial Notice, Docket No. 43.

[29]Id. at 2, ¶ 6.

-7-

the State will not seek retrial in any of the underlying criminal cases and will file dismissals pursuant to Criminal Rule 43(a) of the indictments. . . ."[30] Finally, "the parties stipulate[d] and agree[d] that upon the filing of the . . . dismissals, [the Superior c]ourt shall order the immediate and unconditional release of Petitioners from custody and supervision. . . ."[31]

On December 17, 2015, the Superior Court held a hearing to address the stipulation. At the hearing, the Superior Court judge read the stipulation into the record and declared that "[t]he orders vacating the judgment of conviction and commitment and probation and restitution will enter" and that he would "sign them off the record."[32]

The State dismissed the charges against plaintiffs on December 17, 2015.[33] The orders vacating plaintiffs' convictions and sentences were also signed on December 17, 2015 2015.[34] And, Vent, Pease, and Frese were released from prison on December 17, 2015.

---

[30]Id. at 3, ¶ 7.

[31]Id. at 3, ¶ 8.

[32]Transcript of Settlement on the Record at 4:7-6:10, 12:25-13:4, Exhibit 10, Defendants' Request for Judicial Notice, Docket No. 43. The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[33]Exhibits 1-4, Plaintiffs' Request for Judicial Notice, Docket No. 47. The court has taken judicial notice of this exhibit and thus may consider it without converting the instant Rule12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[34]Exhibits 11-14, Declaration of Peter A. Scully, which is appended to Response to Court's Order re: Requests for Judicial Notice, Docket No. 58. The court takes judicial notice of these exhibits and thus may consider them without converting the instant
(continued...)

On May 14, 2018, plaintiffs filed their second amended and consolidated complaint in this matter. In this complaint, they assert twelve causes of action. In the first cause of action, plaintiffs assert § 1983 deprivation of liberty claims. In the second cause of action, plaintiffs assert § 1983 claims for malicious prosecution. In the third cause of action, plaintiffs assert § 1983 Brady claims. In the fourth cause of action, plaintiffs assert § 1983 supervisor liability claims. In the fifth cause of action, plaintiffs assert § 1983 civil rights conspiracy claims. In the sixth cause of action, plaintiffs assert § 1985(3) conspiracy claims. In the seventh cause of action, plaintiffs assert Monell claims under § 1983 against the City of Fairbanks. In the eighth cause of action, plaintiffs assert § 1983 First Amendment right of access claims. In the ninth cause of action, Vent and Frese assert Fifth Amendment violation claims.[35] In the tenth cause of action, plaintiffs assert intentional spoliation of evidence claims. In the eleventh cause of action, plaintiffs assert negligence claims. In the twelfth cause of action, plaintiffs assert intentional infliction of emotional distress claims.

Defendants filed the instant motion to dismiss on June 4, 2018. Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants move to dismiss plaintiffs' claims, arguing that plaintiffs' claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and by

---

[34](...continued)
Rule 12(b)(6) motion into a motion for summary judgment. Intri-Plex Technologies, 499 F.3d at 1052.

[35]Although these claims are not expressly pled as § 1983 claims, the Ninth Circuit "has held that a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).

the settlement agreements. Defendants also argue that plaintiffs' state law claims are barred by the statute of limitations or otherwise implausible. In the alternative, pursuant to Rule 12(b)(7), defendants move to dismiss plaintiffs' claims for failure to join the State of Alaska as an indispensable party. The Ninth Circuit has disposed of defendants' first argument, holding that "Heck does not bar plaintiffs from seeking relief under § 1983."[36] Roberts v. City of Fairbanks, 947 F.3d 1191, 1193 (9th Cir. 2020). The Ninth Circuit has also disposed of defendants' indispensable party argument, holding that "the State is not an indispensable party under Rule 19. . . ." Id. at 1204–05. The court now takes up the issues of whether plaintiffs' claims are barred by the settlement agreements and whether plaintiffs' state law claims are barred by the statute of limitations or otherwise implausible.

Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted

---

[36]This holding would apply equally to plaintiffs' § 1985 claims. McQuillion v. Schwarzenegger, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004).

-10-

unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

As an initial matter, plaintiffs "do not oppose" the dismissal of their negligence and intentional infliction of emotional distress claims.[37] Defendants' motion to dismiss these two claims is granted. Plaintiffs' negligence and intentional infliction of emotional distress claims are dismissed with prejudice.

As to plaintiffs' other ten claims, defendants argue that these claims should be dismissed because they are barred by the settlement agreements. In the settlement

---

[37]Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 25, n.11, Docket No. 46.

-11-

agreements, plaintiffs released any claims they might have against defendants.[38] Specifically, plaintiffs released

> any and all claims . . . arising out of the investigation into the death of Jonathan Hartman and the subsequent prosecution and incarceration of [plaintiffs], . . . including but not limited to claims for malicious prosecution, wrongful imprisonment, prosecutorial misconduct, legal malpractice, [and] violation or deprivation of rights civil or constitutional[.[39]]

Plaintiffs also "release[d] any right [they] may now or hereafter have to reform, rescind, modify or set aside th[e] Settlement Agreement[s] and Mutual Release[s] of All Claims through mutual or unilateral mistake or otherwise."[40]

Plaintiffs allege, however, that the settlement agreements are not enforceable. To determine whether a settlement agreement is enforceable, the court applies the two-pronged Rumery test. Lynch v. City of Alhambra, 880 F.2d 1122, 1126 (9th Cir. 1989). The first prong requires the court to consider "whether the agreement was entered into voluntarily[.]" Roberts, 947 F.3d at 1205. The second prong requires the court to consider "whether enforcement is in the public interest." Id.

---

[38]Settlement Agreement and Mutual Release of All Claims at 3-4, § III, Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43.

[39]Id. at 4, § III.

[40]Id. at 5, § III.

-12-

As to the first prong of the Rumery test, plaintiffs allege that the agreements were not entered into voluntarily because they were coerced into signing them.[41] Roberts alleges that he felt that he "had no choice but to sign" the settlement agreement because "[t]he State held the other three [p]laintiffs' freedom hostage in order to pressure [him] into signing" the settlement agreement.[42] Vent alleges that he signed the settlement agreement because he "could not bear the idea of missing another family gathering while incarcerated" and that "[h]e desperately wanted to get out of prison to spend Christmas with his aging grandmother."[43] Vent also alleges that the bargaining position of the parties to the settlement agreement was "exceedingly unbalanced" because "[a]lthough the prosecutors knew that they would not prevail in the PCR or on retrial[,] they threatened to prolong the dismissal of his indictment as a ploy to force him to sign the" settlement agreement.[44] He alleges that his "alternative was stark: waive his right to sue the people who caused his wrongful conviction or remain needlessly in prison while the prosecutors fruitlessly pursued every legal mechanism to delay his release."[45] Frese and Pease also allege that the bargaining position of the parties to the settlement agreement was "exceedingly unbalanced" because "although

---

[41]Second Amended and Consolidated Complaint at 31-37, ¶¶ 135-166, Docket No. 40.

[42]Id. at 32, ¶¶ 137, 140.

[43]Id. at 33, ¶ 148.

[44]Id. at 34, ¶ 152.

[45]Id. at 34, ¶ 152.

-13-

the prosecutors knew that they would not prevail in the PCR or on retrial[,] prosecutors threatened to prolong the dismissal of the indictment as a ploy to force them to sign the" settlement agreements.[46] Frese and Pease allege that they were "placed . . . under yet further duress" because state prosecutors "forc[ed] an all-or-nothing deal on" them in that "[i]f any one [p]laintiff insisted on his innocence and right to compensation for 18 years of wrongful incarceration, that hold-out would have to shoulder the unbearable burden of being responsible for the ongoing deprivation of liberty for the other two [p]laintiffs who might be prepared to sign the release."[47] Frese and Pease allege that the "all-or-nothing deal" prevented each plaintiff from making "an individual choice" as to whether to sign the settlement agreement.[48] Plaintiffs also allege that they were not "sophisticated" parties at the time they signed the settlement agreements "because [they] had spent nearly [their] entire adult li[ves] incarcerated, which deprived [them] of educational opportunities, work experience, and general life experience."[49]

Defendants argue that it is implausible that plaintiffs were coerced into signing the settlement agreements. A "decision to waive the right to pursue legal remedies is involuntary if it results from duress, including conditions of confinement." Comer v. Stewart, 215 F.3d

---

[46]Id. at 36, ¶ 161.

[47]Id. at 36, ¶ 162.

[48]Id.

[49]Id. at 32, ¶ 143; 35, ¶ 156; 37, ¶ 166.

-14-

910, 917 (9th Cir. 2000). "'A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement.'" Id. (quoting United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998)). "Whether a waiver was 'coerced' is a factual issue. . . ." Avalos v. Baca, 596 F.3d 583, 591 (9th Cir. 2010).

Defendants argue that plaintiffs' allegations that they could not bear missing any more family events and that they felt they would be responsible for the continued incarceration of the other plaintiffs are not sufficient to suggest that each plaintiff did not make a free and deliberate choice to sign the settlement agreement. Defendants also argue that plaintiffs' allegations that the bargaining position of the parties was "exceedingly unbalanced" is implausible given that they have alleged that they knew that it was only a matter of time until they would be exonerated.[50] Defendants seem to be implying that this gave plaintiffs a stronger bargaining position than they are alleging. Defendants also point out that plaintiffs were represented by counsel who participated in the drafting of the settlement agreements and who certified that they had explained the settlement agreements to their clients.[51] In addition, defendants point out that plaintiffs certified that "the terms of this Settlement Agreement and Mutual Release of All Claims have been carefully read and are fully understood and are voluntarily accepted [f]or the purpose of making a full and final

---

[50]Id. at 32-33, ¶ 144; 34, ¶ 150; 35, ¶ 159.

[51]Settlement Agreement and Mutual Release of All Claims at 6, § IV and 9, Exhibits 1-4, Defendants' Request for Judicial Notice, Docket No. 43.

compromise of any and all claims, disputed or otherwise, for and on account of the matters described above."[52] And, defendants point out that the settlements were overseen by the state court. In light of these facts, defendants argue that plaintiffs' allegations that they were coerced into signing the settlement agreements are not plausible.

"Although legal representation is an important factor in assessing the voluntariness of a release of federal rights, it is not dispositive." Salmeron v. United States, 724 F.2d 1357, 1362 (9th Cir. 1983). That plaintiffs were represented by counsel does not necessarily mean that they entered into the settlement agreements voluntarily. Plaintiffs have alleged that they felt coerced into signing the settlement agreements because they were offered an all-or-nothing deal, because state prosecutors were threatening to delay the outcome of the PCR proceedings for as long as possible, and because the parties' bargaining position was not equal. These allegations are "sufficient . . . [to] allow[] the court to draw the reasonable inference'" that plaintiffs did not enter into the settlement agreements voluntarily. Harris v. County of Orange, 902 F.3d 1061, 1069 (9th Cir. 2018) (quoting Iqbal, 556 U.S. at 678). In other words, it is plausible that plaintiffs did not enter into the settlement agreements voluntarily.

As to the second prong of the Rumery test, the Supreme Court has explained that "[t]he availability of [release-dismissal] agreements may threaten important public interests. They may tempt prosecutors to bring frivolous charges, or to dismiss meritorious charges,

---

[52]Id. at 6, § III.

-16-

to protect the interests of other officials." Town of Newton v. Rumery, 480 U.S. 386, 395 (1987). Plaintiffs' second amended and consolidated complaint "raises the issue of whether the agreement[s are] in the public interest." Lynch, 880 F.2d at 1128. Plaintiffs have alleged that the state prosecutors were motivated to enter into the settlement agreements "to avert probable judicial findings that [p]laintiffs were innocent and/or that the convictions were marred by official misconduct[,]" to forestall "unfavorable litigation and public scrutiny into police and prosecutorial misconduct that was the basis of [p]laintiffs' wrongful convictions and incarcerations[,]" and "to forestall any inquiry into Adrienne Bachman's suppression of exculpatory evidence. . . ."[53] These allegations are sufficient to make it plausible that it would not be in the public interest to enforce the settlement agreements.

In their reply brief, defendants insist that the court can find, on a Rule 12(b)(6) motion, that the settlement agreements are enforceable and cite to Rumery, 480 U.S. 386, in support. Defendants argue that "the Supreme Court in Rumery held that the plaintiff's claims should have been resolved on defendant's motion to dismiss based on the release-dismissal agreement plaintiff entered with the prosecution."[54] But a careful reading of Rumery reveals that the district court in that case had taken evidence on the enforceability of the release-dismissal agreement and made findings of fact, neither of which has happened in this case.

---

[53]Second Amended Complaint and Consolidated Complaint at 37-38, ¶¶ 167-69, Docket No. 40. Plaintiffs allege that Bachman withheld an exculpatory memo during the PCR investigation. Id. at 24, ¶ 101.

[54]Reply in Support of Defendants' Motion to Dismiss at 25, Docket No. 48.

-17-

Id. at 390; 398. The Ninth Circuit has instructed that "'Rumery requires the district court to hear the evidence and evaluate whether the public interest is served by enforcement of the release-dismissal agreement.'" Roberts, 947 F.3d at 1205 (quoting Lynch, 880 F.2d at 1128) (emphasis added). The court will follow this instruction and thus declines to decide, in the context of the instant Rule 12(b)(6) motion, whether the settlement agreements are enforceable. At this point, what the court can conclude is that plaintiffs have plausibly alleged that the settlement agreements are not enforceable, which means that it is plausible that the settlement agreements do not bar their claims.

Because it is plausible that the settlement agreements are unenforceable, the court must consider defendants' argument that plaintiffs' intentional spoliation claims are untimely and otherwise not plausible. An intentional spoliation claim "requires a showing of intentional interference with another party's civil cause of action[,] a viable underlying cause of action[,]" and that the "evidence [was] destroyed or concealed until it is naturally destroyed." Allstate Ins. Co. v. Dooley, 243 P.3d 197, 200-02 (Alaska 2010). Plaintiffs' spoliation claims are based on allegations that defendants "manufactur[ed] false testimony and with[held] exculpatory evidence" during the original investigation; "[hid] the subsequent admissions in 2008 and 2011; fail[ed] to preserve interviews; destroy[ed] the Sisto-Druck affidavit; and . . . refus[ed] to comply with the public information requests in 2013."[55]

---

[55]Second Amended and Consolidated Complaint at 59, ¶ 279, Docket No. 40.

-18-

The statute of limitations for a spoliation claim is, at most, three years. Gefre v. Davis Wright Tremaine, LLP, 306 P.3d 1264, 1273 (Alaska 2013). Plaintiffs commenced this action on December 7, 2017. Thus, defendants argue that plaintiffs' intentional spoliation claims are largely barred by the statute of limitations. However, it is plausible that plaintiffs' intentional spoliation claims did not accrue until plaintiffs had viable underlying causes of action, which they did not have until December 17, 2015, the date on which the charges against them were dismissed by the State.

But even if plaintiffs' intentional spoliation claims are not barred by the statute of limitations, they must still be dismissed. Plaintiffs have adequately alleged that some evidence was destroyed. Specifically, plaintiffs have alleged that the Sisto-Druck affidavit,[56] four audiotapes from the investigation of the Dayton assault,[57] and a recording of a portion of Vent's confession[58] were destroyed. But plaintiffs have only made the conclusory allegation that this evidence was destroyed for the purpose of interfering with their prospective civil action.[59] Conclusory allegations "'and a formulaic recitation of the

---

[56] Id. at 19, ¶ 79. Plaintiffs allege that Sisto-Druck averred that "she had been with Frese on the night of Hartman's murder." Id.

[57] Id. at 20, ¶ 81. Plaintiffs allege that the Dayton assault took place on the same night as the Hartman murder and that police tried to get a witness to that assault "to implicate all four [p]laintiffs in Dayton's assault and thus . . . place them together committing a crime spree on the night of Hartman's murder." Id. at 14, ¶¶ 59, 64.

[58] Id. at 11, ¶ 50.

[59] Id. at 59, ¶ 278.

-19-

elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d at 875 (quoting Twombly, 550 U.S. at 555). Plaintiffs' second amended and consolidated complaint does not plead any nexus between the evidence that has been destroyed and any prospective civil action. Thus, plaintiffs have failed to state plausible intentional spoliation claims and these claims are dismissed. Plaintiffs are given leave to amend their intentional spoliation claims as it is possible that plaintiffs might be able to plead plausible intentional spoliation claims.

## Conclusion

Defendants' motion to dismiss[60] is granted in part and denied in part. The motion is granted as to plaintiffs' negligence, intentional infliction of emotional distress, and intentional spoliation claims. Plaintiffs' negligence and intentional infliction of emotional distress claims are dismissed with prejudice. Plaintiffs' intentional spoliation claims are dismissed with leave to amend. The motion is otherwise denied. Should plaintiffs elect to file a third amended complaint, they must do so by October 15, 2020.

DATED at Anchorage, Alaska, this 1st day of October, 2020.

/s/ H. Russel Holland
United States District Judge

---

[60]Docket No. 41.