# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MARVIN ROBERTS,

                Plaintiff,

        v.

CITY OF FAIRBANKS, *et al.*,

                Defendants.

**Case No. 4:17-cv-00034-SLG**

CONSOLIDATED

EUGENE VENT, *et al.*,

                Plaintiffs,

        v.

CITY OF FAIRBANKS, *et al.*,

                Defendants.

Case No. 4:17-cv-00035-SLG

## ORDER RE MOTION TO BIFURCATE AND STAY

Before the Court at Docket 80 is Defendants' *Motion to Bifurcate Issue of Enforceability of Settlement Agreements, Permit Limited Discovery, Stay Remainder of the Proceeding, and Set Enforceability Issue for Rumery Hearing.*[1]

---

[1] Defendants are the City of Fairbanks, James Geier, Clifford Aaron Ring, Chris Nolan, Dave Kendrick, Doe Officers 1–10, and Doe Supervisors 1–10.

Plaintiffs responded at Docket 85, to which Defendants replied at Docket 87.[2] Oral argument was held on April 14, 2021.[3]

## BACKGROUND AND PROCEDURAL HISTORY

The factual allegations in this case have been set forth in detail by the Ninth Circuit.[4] Plaintiffs are four men who were convicted of the October 11, 1997 murder of fifteen-year-old John Hartman.[5] In September 2013, Plaintiffs filed post-conviction relief petitions in Alaska Superior Court, in part on the basis of a confession by William Holmes naming himself and four other men as the actual perpetrators.[6] From October through November 2015, after two years of discovery, the state court held a five-week evidentiary hearing at which William Holmes testified that he and several other men had killed John Hartman.[7] Eleven other witnesses corroborated Holmes's account, and a witness from the original trial testified that her testimony had been coerced by Fairbanks Police Department ["FPD"] officers.[8] The judge informed the parties at the close of the evidentiary

---

[2] Plaintiffs are Marvin Roberts, Eugene Vent, George Frese, and Kevin Pease.

[3] Docket 102.

[4] *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1193–96 (9th Cir. 2020), *cert. denied* 141 S. Ct. 1515 (Mar. 8, 2021).

[5] *Id.* at 1193–94.

[6] *Id.* at 1194.

[7] *Id.*

[8] *Id.*

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 2 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 2 of 25

hearing that he would not render a decision for six to eight months.[9]  Plaintiffs allege that "[m]embers of the prosecution also stated publicly" that if the convictions were vacated, "the State would appeal that decision through to the Alaska Supreme Court."[10]

With the judge's decision pending, "the prosecutors offered Plaintiffs a deal: the prosecution would consent to vacating the convictions and dismissing the charges, but only if all four plaintiffs agreed to release the State of Alaska and the City of Fairbanks (and their employees) from any liability related to the convictions."[11]  Plaintiffs agreed and entered into the release-dismissal agreement at a settlement conference on December 17, 2015, after a judicially supervised mediation.[12]  All parties were represented by counsel.[13]  Based on the agreement, and without reaching its own decision, the court vacated Plaintiffs' convictions and the prosecutors dismissed the indictments on December 17, 2015.[14]

The release-dismissal agreement notwithstanding, Plaintiffs filed suit in federal court in December 2017, alleging claims under 42 U.S.C. § 1983 and

---

[9] *Id.* at 1195.

[10] Docket 40 at 29, ¶ 121 (Second Am. Compl.).

[11] *Roberts*, 947 F.3d at 1195 (footnote omitted).

[12] *Id.*

[13] *Id.*

[14] *Id.*

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 3 of 25

§ 1985.[15]  On June 4, 2018, Defendants moved to dismiss Plaintiffs' claims on various grounds, including that Plaintiffs had failed to establish a favorable termination of the underlying prosecution as required by *Heck v. Humphrey*, and that Plaintiffs' claims were barred by the release-dismissal agreement.[16]  The district court granted Plaintiffs' motion on the ground that Plaintiffs had not established a favorable termination and their claims were thus *Heck* barred.[17]

On January 22, 2020, the Ninth Circuit reversed the district court and remanded for further proceedings.  The Court of Appeals held that Plaintiffs' claims were not barred by the favorable termination rule under *Heck*, concluding that "where all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983."[18]  The Court of Appeals declined to consider Defendants' argument that Plaintiffs' claims were barred by the release-dismissal agreement, noting that it was "an issued not passed upon below," and "le[ft] that issue for the district court" without further guidance.[19]  Subsequently, Defendants filed the instant motion

---

[15] Docket 1; Case No. 3:17-cv-00035-HRH, Docket 1.  These cases were consolidated on March 19, 2018.  Docket 34.

[16] Docket 41.

[17] Docket 62 (vacated by *Roberts*, 947 F.3d 1191).

[18] *Roberts*, 947 F.3d at 1193.

[19] *Roberts*, 947 F.3d at 1205–06.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 4 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 4 of 25

seeking an order "bifurcating this proceeding and allowing limited, targeted discovery on the issue of enforceability" of the release-dismissal agreement and "staying the remainder of the matter and setting the issue of enforceability of the settlement agreements for a prompt *Rumery* hearing."[20]

## DISCUSSION

### I. Bifurcation and Stay

Federal Rule of Civil Procedure 42(b) provides that:

For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Additionally, pursuant to Rule 21, the Court can sever "any claim against a party." "The decision to bifurcate proceedings is within the sound discretion of the district court."[21] "One favored purpose of bifurcation is to accomplish just what the district court sought to do here—avoiding a difficult question by first dealing with an easier, dispositive issue."[22]

Whether the release-dismissal agreement is enforceable is not currently before the Court. However, whether bifurcation and stay of the § 1983 claims while

---

[20] Docket 81 at 2 (Mem. in Supp. of Mot. to Bifurcate).

[21] *Karpenski v. American Gen. Life Cos., LLC*, 916 F. Supp. 2d 1188, 1190 (W.D. Wash 2012) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)).

[22] *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (citing *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 5 of 25

the enforceability of the agreement is determined would promote convenience, expediency, and economy in this particular case depends on the nature of the parties' dispute over the enforceability of the release-dismissal agreement. Thus, the Court will address the parties' competing arguments regarding the scope of the enforceability inquiry. That inquiry is governed by the framework established by the Supreme Court in *Rumery v. Town of Newton*.[23]

## II.   The *Rumery* Factors

Under *Rumery*, a release-dismissal agreement "is enforceable only if (1) it was entered into voluntarily; and (2) its enforcement is in the public interest."[24] The enforceability of a release-dismissal agreement is a question of federal law.[25] The *Rumery* plurality first upheld the trial court's determination that the plaintiff had voluntarily entered into the agreement. The Court further concluded that the district court's decision to enforce the agreement was correct. It focused on the following facts: (1) the plaintiff was a "sophisticated businessman"; (2) he was not incarcerated at the time of the agreement; (3) he was represented by experienced counsel, who drafted the agreement; and (4) he considered the agreement before signing it.[26] In her concurrence, Justice O'Connor added that "[m]any factors may

---

[23] 480 U.S. 386 (1987).

[24] *Lynch v. City of Alhambra*, 880 F.2d 1122, 1126 (9th Cir. 1989).

[25] *Id.* at 1125.

[26] *Rumery*, 480 U.S. at 394.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 6 of 25

bear on whether a release was voluntary and not the product of overreaching" including "[t]he knowledge and experience of the criminal defendant," "[t]he nature of the criminal charges that are pending," and "[t]he existence of a legitimate criminal justice objective for obtaining the release."[27] She added that "the possibility of abuse is clearly mitigated if the release-dismissal agreement is executed under judicial supervision."[28]

On the public interest prong, the plurality rejected the view that release-dismissal agreements offend public policy *per se*, and explained that "a *per se* rule of invalidity fails to credit other relevant public interests and improperly assumes prosecutorial misconduct."[29] Instead, the plurality held that because some § 1983 plaintiffs bring frivolous claims, "[t]o the extent release-dismissal agreements protect public officials from the burdens of defending such unjust claims, they further this important public interest."[30] Moreover, release-dismissal agreements may further legitimate prosecutorial interests by allocating the proper deference to the role of prosecutors in "assessing the strength and importance of a case," weighing factors like "government enforcement priorities," and deciding "how best to allocate the scarce resources of a criminal justice system that simply cannot

---

[27] *Id.* at 401–02 (O'Connor, J., concurring).

[28] *Id.* at 402 (O'Connor, J., concurring).

[29] *Id.* at 395.

[30] *Id.* at 396.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 7 of 25

accommodate the litigation of every serious criminal charge."[31]  In her concurrence, Justice O'Connor "emphasize[d] that it is the burden of those relying upon such covenants to establish that the agreement is neither involuntary nor the product of an abuse of the criminal process."[32]  In *Lynch v. City of Alhambra*, the Ninth Circuit referenced the Supreme Court's holding in *Rumery* to instruct that a "release-dismissal agreement signed by [a plaintiff] is enforceable only if (1) it was entered into voluntarily; and (2) its enforcement is in the public interest."  The Ninth Circuit further recognized that whether there was prosecutorial misconduct is a component of the public interest prong.[33]  The Court will thus consider whether each factor supports for bifurcation.

## A. Voluntariness

Defendants argue broadly that bifurcation in this case will promote economy because "[e]ach of [Plaintiffs'] causes of action fail if the settlement agreement . . . is enforceable under *Rumery*."[34]  Defendants contend that the severability of the issues supports bifurcation because the factors that control the release-dismissal agreement's enforceability under *Rumery* "are distinct from the issues raised by

---

[31] *Id.* (footnote omitted).

[32] *Id.* at 399 (O'Connor, J., concurring).

[33] *Lynch*, 880 F.2d at 1126, 1128–29.

[34] Docket 81 at 7 (Supp.).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 8 of 25

the nine causes of action asserted in Plaintiffs' complaint."[35]  Defendants assert that the following five factors govern the voluntariness inquiry: "(1) the knowledge and experience of the criminal defendant, (2) whether the individual was in custody at the time of execution of the agreement, (3) whether the individual was represented by counsel, (4) whether the individual's counsel drafted the agreement, and (5) whether the individual had time to consider the agreement."[36]

Plaintiffs respond that the voluntariness inquiry is not limited to an "exclusive list or a formal five-factor test," and courts should instead "consider the wide variety of factual situations that can result in release-dismissal agreements."[37]  Plaintiffs additionally maintain that an early *Rumery* hearing could not resolve potentially dispositive issues because "the issue of whether a release-dismissal agreement was entered into voluntarily presents a triable issue of fact to be decided by the jury."[38]

Defendants reply that the voluntariness inquiry only concerns "factors surrounding the actual execution" of the release-dismissal agreement, "not

---

[35] Docket 81 at 9 (Supp.).

[36] Docket 81 at 6 (Supp.) (citing *Lynch*, 880 F.2d at 1127; *Rumery*, 480 U.S. at 393).

[37] Docket 85 at 6–7 (Opp.) (citing *Lynch*, 880 F.2d at 1126–27, and quoting *Rumery*, 480 U.S. at 392).

[38] Docket 85 at 9 (Opp.) (citing *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983)).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 9 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 9 of 25

circumstances that existed eighteen years prior."[39]  Defendants contend that Plaintiffs have not identified any authority "that support[s] Plaintiffs' contention that the circumstances and facts surrounding Plaintiffs' arrests and prosecutions eighteen years *prior* to the execution of a release-dismissal agreement would bear upon the voluntariness of its execution."[40]

Plaintiffs' assertion that Defendants "mischaracterize the scope of facts that may be considered" on the question of voluntariness does not persuade the Court that bifurcation will be inappropriate.[41]  For one, it appears to contradict Plaintiffs' position at oral argument that "the same facts that were relevant to the Court's decision at the motion to dismiss stage are all facts we will be able to substantiate easily in discovery."[42]  More importantly, case law does not support the contention that the voluntariness factors will require broad discovery that would undermine the efficiency of bifurcation.  The Court is mindful that *Rumery* requires a "case-by-case approach."[43]  Nonetheless, the additional factors that Plaintiffs list include the "circumstances of the execution of the release" and the "nature of the criminal

---

[39] Docket 87 at 3 (Reply) (footnote omitted).

[40] Docket 87 at 5 (Reply) (emphasis in original).

[41] Docket 85 at 6 (Opp.).

[42] Docket 108 (Partial Tr. of Oral Arg.).

[43] *Rumery*, 480 U.S. at 399 (O'Connor, J., concurring).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 10 of 25

charges."[44]  These are not factors that would entail the expansive or overlapping discovery implied by Plaintiffs; nor do Plaintiffs provide authority that would support that assertion.

Likewise, Plaintiffs' assertion that "the issue of whether a release-dismissal agreement was entered into voluntarily presents a triable issue of fact to be decided by the jury" is unavailing.[45]  In *Rumery* itself, the issue of voluntariness was never submitted to a jury.  Instead, the district court found that the plaintiff had entered into the release-dismissal agreement voluntarily.[46]  The Supreme Court agreed that "it [was] clear that Rumery voluntarily entered the agreement" and remanded with instructions to dismiss the suit on the basis of that agreement.[47] Likewise, the Ninth Circuit in *Lynch v. City of Alhambra* affirmed *de novo* the district court's finding "that [the plaintiff] voluntarily entered into the release-dismissal."[48] Numerous other courts have also found release-dismissal agreements enforceable without submitting the question of voluntariness to a jury.[49]  While it is

---

[44] Docket 85 at 7 (Opp.) (quoting *Rumery*, 480 U.S. at 401 (O'Connor, J., concurring)).

[45] Docket 85 at 9 (citing *Salmeron*, 724 F.2d at 1361).

[46] *Rumery*, 480 U.S. at 391.

[47] *Id.* at 397–98.

[48] 880 F.2d at 1226–27.

[49] *See, e.g.*, *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 353–54 (4th Cir. 2003) (affirming grant of summary judgment to defendants after holding release-dismissal enforceable because it was voluntarily entered into by plaintiffs); *MacBoyle v. City of Parma*, 383 F.3d 456,

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 11 of 25

possible that a disputed question of fact as to voluntariness could require resolution by a jury, that possibility does not necessarily render severance inefficient in this case.[50]

In support of this proposition, Plaintiffs rely heavily on *Salmeron v. United States*.[51] But *Salmeron* was decided before the Supreme Court had provided its guidance in *Rumery* on determining the issue of voluntariness. And *Salmeron* is factually distinct: It concerned an agreement signed by the plaintiff that allegedly released his § 1983 claims in exchange for the return of his children, even though "the government was aware that Salmeron had a valid state court order awarding him legal custody of the children."[52] *Salmeron* did not concern a release-dismissal agreement, and the Ninth Circuit did not engage in an analysis of the factors later

---

459–60 (6th 2004) (affirming district court's conclusion that plaintiffs voluntarily entered release-dismissal agreement).

[50] *See, e.g.*, *Jimenez v. Brunner*, 328 F. Supp. 2d 1208, 1223 (D. Utah 2004) (determining that pre-trial evidentiary hearing did not violate plaintiff's Seventh Amendment right to a jury trial but finding a question of fact for a jury on issue of voluntariness after hearing because plaintiff verbally entered the agreement without the advice of counsel). Plaintiffs also assert that "the Court could not hold this suit is barred by the release-dismissal agreement before trial" because it "has already ruled the facts plaintiffs pled (which they will be able to support with record evidence) are sufficient to create a dispute of fact on voluntariness." Docket 85 at 12 (Opp.) (citing Docket 74 at 16). But the Court retains inherent power to revisit earlier rulings before entry of final judgment. *Cf. Peralta v. Dillard*, 520 F. App'x 494, 495 (9th Cir. 2013) (citing *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027–28 (9th Cir. 2001) ("Peralta also asserts that because the district court had earlier denied summary judgment to Dr. Dillard and Dr. Fitter, it was bound by the law of the case doctrine to deny the motion for judgment as a matter of law. We disagree. A district judge whose interlocutory determination has not been appealed has discretion to decline to follow that earlier decision at a later point in the case.")).

[51] 724 F.2d 1357 (9th Cir. 1983).

[52] *Id.* at 1361–62.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 12 of 25

Case 4:17-cv-00034-SLG    Document 109    Filed 07/19/21    Page 12 of 25

set forth by the Supreme Court in *Rumery*. Moreover, cases cited by Plaintiffs from other circuits do not establish that voluntariness is a question for the jury. For example, Plaintiffs cite *Livingstone v. North Belle Vernon Borough* for the proposition that "whether release-dismissal agreement is voluntary is a question of fact for the jury and holding it must be proved by defendant by clear and convincing evidence."[53] But *Livingston* concerned an oral release-dismissal agreement, and the Third Circuit clarified that it "need not, and d[id] not, address the appropriate standard of proof for enforcement of a written release-dismissal agreement."[54] Subsequently, the Third Circuit has upheld the voluntariness of written release-dismissal agreements without requiring the submission of the question to a jury.[55] Plaintiffs also cite *Marshall v. City of Farmington Hills* as "reversing [a] district court determination that [a] release-dismissal was voluntary, and holding it was a question of fact for the jury."[56] But the Sixth Circuit in *Marshall* actually "conclude[d] that he did not enter into the agreement voluntarily" and did not direct the district court to submit the *Rumery* analysis to a jury.[57] And in *Vallone*

---

[53] Docket 85 at 11 (Opp.) (citing 91 F.3d 515, 535–36 (3d Cir. 1996)).

[54] 91 F.3d at 536 n.34.

[55] *Franco v. Chester Tp. Police Dept.*, 266 F. App'x 99, 102 (3d Cir. 2008).

[56] Docket 85 at 11 (Opp.) (citing 578 F. App'x 516, 522–23 (6th Cir. 2014)).

[57] *Marshall v. City of Farmington Hills*, 578 F. App'x at 521. The parties disagree on this point. *Compare* Docket 85 at 11 (Opp.) *with* Docket 87 at 5 n.11 (Reply). The disagreement may well stem from the complicated and unclear nature of *Marshall*, which arrived at the Sixth Circuit on three different occasions. In *Marshall*, the "parties [] acknowledged that a release-dismissal

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 13 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 13 of 25

*v. Lee*, while the question of voluntariness was submitted to a jury, that case involved disanalogous facts, as the plaintiff in that case alleged that he was ordered to sign the agreement by the warden without a lawyer present while he was incarcerated despite being "entitled to be released on bail" and does not hold that it is always or usually a question of fact to be decided by a jury.[58]  The district

---

agreement would be entered if the parties agreed 1) to the wording of a press release, and 2) to terms releasing the City from civil liability."  578 F. App'x at 521.  The parties never agreed to the wording of the press release, but the state court judge had nonetheless imposed the agreement.  *Id*.  The Sixth Circuit concluded that because this "agreement" was judicially imposed, it was not voluntary.  *Id*.  The Sixth Circuit found a question of fact as to whether the plaintiff had "failed to negotiate in good faith and thus [] lost his right to challenge the validity of the agreement" based on contract principles, a separate question from the *Rumery* factors governing voluntariness.  *Id*. at 521–23.  ("[W]e find that the City has not met its burden to show that Marshall waived the condition precedent and that the release-dismissal agreement was not entered into voluntarily.").  The Sixth Circuit explained that the "burden of proof in this analysis falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense" and concluded that "[d]efendants have not met their burden with respect to [] voluntariness . . . ."  *Id*. at 520  (quotation omitted).  On remand, the district court stated in its order granting the defendants' renewed motion for summary judgment that "the Sixth Circuit has determined that the release-dismissal entered in the state court action does not bar this action" and proceeded to the merits of the plaintiff's claims.  *Marshall v. City of Farmington Hills*, Case No. 08-cv-13257, 2015 WL 5936305, at *7 (E.D. Mich. Oct. 13, 2015), *aff'd in part*, 693 F. App'x 417 (6th Cir. 2017).  The court dismissed each of the plaintiff's § 1983 claims, *id*., which the Sixth Circuit affirmed, 693 F. App'x 417, 429 (6th Cir. 2017).  In any event, the question of voluntariness was never presented to a jury in *Marshall* and was instead resolved by the Sixth Circuit.

[58] *See Vallone v. Lee*, 7 F.3d 196 (11th Cir. 1993) (per curiam) (affirming jury verdict that release-dismissal agreement was not voluntary where plaintiff submitted evidence that he was ordered by the warden to sign the agreement without a lawyer present while incarcerated despite being "entitled to be released on bail").  The Eleventh Circuit has elsewhere upheld release-dismissal agreements without submitting the question of voluntariness to a jury.  *See Libmen v. City of Avondale Estates*, 190 F. App'x 774, 776–77 (11th Cir. 2006) (per curiam) ("The claims against Tweed for violation of Libman's constitutional rights and for malicious prosecution are barred by the release-dismissal agreement. . . . Here, Libman executed an agreement drafted by his own attorney and under the supervision of the trial judge assigned to the case.").

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 14 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 14 of 25

court cases cited by Plaintiffs are similarly unpersuasive.[59] The Court acknowledges that voluntariness may present an underlying question of fact for a jury, but that possibility alone does not render bifurcation inappropriate.

## B. Public Interest

Defendants assert that "[t]he relevant public interest showing can be satisfied where the party seeking enforcement of the agreement 'demonstrates that obtaining the release was motivated by an independent, legitimate criminal justice objective.'"[60] Defendants assert that this issue is distinct from Plaintiffs' causes of actions, and that "[e]ven if there are some intertwined facts, the judicial economy of resolving a dispositive issue promptly can outweigh the separability consideration."[61]

Plaintiffs assert that Defendants erroneously "portray the scope of discovery into the enforceability of a release-dismissal agreement as a relatively simple matter with a low evidentiary burden."[62] Instead, Plaintiffs assert that

---

[59] *See Jimenez*, 328 F. Supp. 2d at 1223 (finding pretrial evidentiary hearing determining voluntariness does not violate Seventh Amendment right to jury trial but finding question for jury on voluntariness because the plaintiff had orally agreed to release-dismissal agreement without counsel); *Spradlin v. City of Owasso*, Case No. 12–CV–497–JED–FHM, 2014 WL 1664974, at *3 (N.D. Okla. April 25, 2014) (finding question of fact as to voluntariness where plaintiff was not advised by counsel, did not draft the release, had less than five minutes to consider the agreement, and received a relatively small sum of money but not immunity from suit in return).

[60] Docket 81 at 6 (Supp.) (quoting *Coughlen v. Coots*, 5 F.3d 970, 975 (6th Cir. 1993)).

[61] Docket 81 at 9 (Supp.) (citing *Dokoozian Constr., LLC v. Exec. Risk Specialty Ins. Co.*, Case No. 3:15-cv-00137-TMB, 2016 WL 7494302 (D. Alaska Sept. 20, 2016)).

[62] Docket 85 at 9 (Opp.).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 15 of 25

Case 4:17-cv-00034-SLG    Document 109    Filed 07/19/21    Page 15 of 25

"enforceability of the agreement necessarily includes consideration of the substantive police misconduct that the agreement seeks to suppress."[63] They also maintain that "many subsidiary facts relevant to the Court's ultimate determination of whether enforcement of the release-dismissal agreement serves the public interest—such as whether the police engaged in substantial misconduct—are the same facts plaintiffs have a Seventh Amendment right to have determined by a jury at trial."[64] Thus, they assert that the Court's determination will "almost certainly" have to be made "at or after the time of a trial on the merits" to avoid constitutional issues.[65] Lastly, Plaintiffs maintain that bifurcation would be inefficient because "there is significant overlap between the factual questions to be addressed at trial on the merits of plaintiffs' § 1983 claims and the issues that must be decided to determine the enforceability of the release-dismissal agreement."[66]

Defendants reply that the circumstances of the original conviction are irrelevant to the public interest inquiry because unlike cases cited by Plaintiffs, the "charges that were to be dismissed pursuant to the settlement agreement were neither unfounded . . . nor brought by the prosecutor in 199[7] for the eventual

---

[63] Docket 85 at 9 (Opp.).

[64] Docket 85 at 12 (Opp.).

[65] Docket 85 at 13 (Opp.).

[66] Docket 85 at 14 (Opp.).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 16 of 25

Case 4:17-cv-00034-SLG     Document 109     Filed 07/19/21     Page 16 of 25

opportunity to seek a release eighteen years later."[67]  Instead, "only information known to [the prosecutor involved in the settlement agreement] could serve as a potential motive for seeking the settlement agreement."[68]

The Court is not persuaded that the "enforceability of the agreement necessarily includes consideration of the substantive police misconduct that the agreement seeks to suppress" such that a public policy analysis under *Rumery* would require the determination of subsidiary facts related to the misconduct alleged in Plaintiffs' § 1983 claims.[69]  In *Lynch*, the Ninth Circuit stated that "[t]he public interest in vindicating rights and deterring police misconduct is undermined where officials . . . fabricate or exaggerate allegations of criminal conduct in order to facilitate the release of civil rights claims through release-dismissal agreements."[70]  The only discussion of the circumstances of the plaintiff's arrest and prosecution appear in the context of addressing the plaintiff's "argument that the charges against him were brought merely to extract a release of civil claims."[71]  However, Plaintiffs here have not alleged that their original prosecution was brought by the original officers or prosecutors in order to secure the release of their

---

[67] Docket 87 at 8 (Reply).

[68] Docket 87 at 8 (Reply).

[69] Docket 85 at 9 (citing *Lynch*, 880 F.2d at 1129 n.10).

[70] *Lynch*, 880 F.2d at 1128.

[71] *Id.* at 1128–29.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 17 of 25

civil claims eighteen years later.  Instead, their Second Amended Complaint lists circumstances and alleged motives that existed during the process of reaching the release-settlement agreement in 2015.[72]  This situation is unlike *Lynch* where the alleged police misconduct involved a meritless arrest used to cover up police brutality.[73]

Likewise, *Coughlen v. Coots*, a Sixth Circuit case, does not support Plaintiffs' position that a *Rumery* determination will require the Court to hear evidence regarding the original investigations and prosecutions.[74]  Plaintiffs cite *Coughlen* for the proposition that "the existence of substantial evidence of police misconduct in a particular case is by no means irrelevant to a proper *Rumery* inquiry, since it could be probative of the motives of the prosecutor for seeking such an agreement, as well as the degree to which enforcing the agreement would serve the public interest."[75]  However, like *Lynch*, the alleged police misconduct discussed in *Coughlen* was "police officers fil[ing] unfounded criminal charges as

---

[72] *See generally* Docket 40 (Second Am. Compl.).

[73] *See Lynch*, 880 F.2d at 1129.  Notably, in recounting the allegations of police misconduct that affect the public interest analysis, the Ninth Circuit focused on the allegedly improper arrest as opposed to the allegations of excessive force.  *Id.*  The question at issue in *Lynch* was whether a release-dismissal agreement could be rendered invalid by police misconduct that is analogous to the kind of prosecutorial misconduct discussed in *Rumery*; i.e., where police officers "fabricate or exaggerate allegations of criminal conduct in order to facilitate the release of civil rights claims through release-dismissal agreements."  *Id.* at 1128.  *Lynch* does not hold that all facts underlying § 1983 claims must be determined prior to a *Rumery* determination.

[74] 5 F.3d 970 (6th Cir. 1993)

[75] Docket 85 at 8 (Opp.) (quoting *Coughlen*, 5 F.3d at 974).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 18 of 25

Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 18 of 25

bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action; or where a prosecutor, upon discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers."[76]  The closest *Coughlen* gets to supporting Plaintiffs' view is where it states that "in a case where there existed substantial evidence of police misconduct, a court reviewing the release-dismissal agreement could conclude that the public interest in vindicating constitutional rights and deterring police misconduct by permitting a specific civil complaint to go forward, despite a release, outweighs a general prosecutorial interest in helping to manage a heavy case load."[77]  But that statement is accompanied by a citation to the portion of *Lynch* addressing situations where officials "fabricate or exaggerate allegations of criminal conduct in order to facilitate the release of civil rights claims through release-dismissal agreements."[78]  Thus, *Coughlen* does not suggest that the facts underlying Plaintiffs' claims must be adjudicated in order to conduct a *Rumery* analysis.  Indeed, in *Rumery* itself, the Supreme Court ordered the dismissal of the plaintiff's claims without determining whether the "officers had violated his

---

[76] *Coughlen*, 5 F.3d at 974.

[77] *Id.* at 975 (footnote omitted).

[78] *Lynch*, 880 F.2d at 1128.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 19 of 25

constitutional rights by arresting him, defaming him, and imprisoning him falsely" as the plaintiff alleged.[79]

Plaintiffs also cite *Livingstone v. North Belle Vernon Borough.*[80] The Third Circuit there found a question for the jury as to whether the prosecutor's proffered reasons for entering an oral release-dismissal agreement were his true motives.[81] The Third Circuit employed a two-prong test it had previously developed in *Cain v. Darby Borough*,[82] which contained "objective" and "subjective" elements for analyzing the prosecutor's motivations.[83] The Third Circuit in *Livingstone* found a triable issue of fact as to the subjective motives of the prosecutor by focusing on the prosecutor's *awareness* of police misconduct.[84] The Ninth Circuit has not

---

[79] *Rumery*, 480 U.S at 391, 397–98.

[80] Docket 85 at 12 (Opp.) (citing 91 F.3d at 532–33).

[81] *Livingstone*, 91 F.3d at 533.

[82] 7 F.3d 377 (3d Cir. 1993).

[83] *Livingstone*, 91 F.3d at 527 ("*Cain* found that a party seeking to demonstrate that the enforcement of a release-dismissal agreement is in the public interest must make two distinct showings, which we will call here *Cain*'s 'objective' and 'subjective' elements. *Cain*'s objective element requires both that 'the facts known to the prosecutor when the agreement was reached' must have sufficed to support the prosecutor's proffered public interest reason for concluding the agreement, and that this public-interest reason be a legitimate one. . . . *Cain*'s subjective element is its requirement that[] 'the public interest reason proffered by the prosecutor must be the prosecutor's actual reason for seeking the release.'").

[84] *Id.* at 533 ("As we have noted, on the record before this court it appears not unlikely that the prosecutor was aware of substantial evidence of police misconduct in the present case. This lends credence to the inference that the prosecutor's decision to bring charges against Mrs. Livingstone, the manner in which he conducted the trial, and his decision to propose the conclusion of a release-dismissal agreement to the Livingstones may have been motivated by a desire to protect the relevant police officers and municipalities from liability.").

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 20 of 25

adopted this test. But even if that test did apply, determining the proffered motivations behind the release-dismissal agreement in this case would not involve determining what actually happened during the original criminal prosecution because they involved different prosecutors and different defense counsel.[85]

As discussed above, Plaintiffs have not alleged that their original prosecutions were fabricated in order to facilitate the release of Plaintiffs' civil claims. Instead, Plaintiffs allege various violations of their rights in 1997 unrelated to the release-dismissal agreement that was reached eighteen years later and did not involve any individuals involved in the original prosecution. In short, any prosecutorial or police misconduct that took place during the original prosecutions in 1997 does not appear to be directly relevant to the determination of whether the enforcement of the release-dismissal agreement is in the public interest. The Court will not need to determine the facts underlying the merits of Plaintiffs' claims; nor have Plaintiffs identified any authority that would suggest such a determination would be necessary.[86]

Having already concluded that a preliminary *Rumery* determination will not require the Court to determine facts underlying the merits of Plaintiffs' claims, the

---

[85] *See* Docket 87 at 1–2 (Reply) ("Neither the prosecutors nor the defense counsel involved in the initial convictions were involved in the execution of the settlement agreements.").

[86] At oral argument, Defendants suggested that the Court assume for the purposes of its *Rumery* inquiry that the allegations of misconduct in Plaintiffs' original arrest and prosecution are true. Docket 108 (Partial Tr. of Oral Arg.).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 21 of 25

Case 4:17-cv-00034-SLG    Document 109    Filed 07/19/21    Page 21 of 25

Court also disagrees with Plaintiffs that a preliminary *Rumery* determination would run afoul of the Seventh Amendment right to a jury trial.[87]  As explained above, *Rumery* itself was determined at a preliminary stage.  The Ninth Circuit has explained that "*Rumery* requires the district court to hear the evidence and evaluate whether the public interest is served by enforcement of the release-dismissal agreement."[88]  As such, the Court will hear, at least preliminarily, the evidence relevant to the *Rumery* consideration.

Based on the foregoing, the nature of the *Rumery* inquiry supports a bifurcation and stay of the merits of Plaintiffs' claims in this case.  The *Rumery* inquiry will involve distinct evidence from the resolution of Plaintiffs' claims, and separating those issues would be likely to further judicial economy and convenience.  Moreover, a determination in Defendants' favor would resolve a dispositive issue at the outset, while a determination in Plaintiffs' favor would simplify the issues to be decided at trial and streamline the litigation.  As such, the Court will bifurcate and stay the merits of Plaintiffs' claims pending a *Rumery* determination.

---

[87] *See Jimenez*, 328 F. Supp. at 1223 (finding that pretrial evidentiary hearing determining voluntariness does not violate plaintiff's Seventh Amendment right to a jury trial).

[88] *Roberts*, 947 F.3d at 1205 (quoting *Lynch*, 880 F.2d at 1228) (footnote omitted).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 22 of 25

## III. Additional Considerations

Defendants assert that "Plaintiffs have only sought monetary damages and are not at risk of an irreparable loss."[89] They add that "given the length of time that has passed since the events alleged in Plaintiffs' complaint, there is no substantial risk of loss of remaining evidence if the matter is stayed to allow for limited discovery and a prompt determination on the issue of enforceability of the settlement agreement."[90] According to Defendants, a "stay would also aid to simplify the claims and defenses by either resolving the claims outright or simplifying the defenses to be considered by the jury."[91]

Plaintiffs contend that bifurcating discovery will lead to the "same parties being deposed a second time during the second phase of discovery" if the release-dismissal agreement is not enforceable.[92]

Based on the discussion of the *Rumery* factors above, the Court finds that bifurcation and a preliminary hearing regarding the *Rumery* determination and a stay of the remaining claims may well be efficient, will potentially resolve a dispositive issue, and may simplify the issues presented to the jury. However,

---

[89] Docket 81 at 12 (Supp.).

[90] Docket 81 at 12 (Supp.).

[91] Docket 81 at 12 (Supp.).

[92] Docket 85 at 14 (Opp.).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 23 of 25

Plaintiffs are correct that bifurcation could lead to some parties being deposed twice, which would not serve economy or efficiency. But apart from the Plaintiffs themselves, the individuals involved in the original prosecution are not the individuals who negotiated the release-dismissal agreement.[93] As such, this problem can be addressed by bifurcating and staying the merits of Plaintiffs' § 1983 claims except that Plaintiffs may be deposed on both the merits of those claims and the *Rumery* issue. This will minimize the risk of multiple depositions while also narrowing discovery to the questions presented in the preliminary *Rumery* determination.

## CONCLUSION

Based on the foregoing, Defendants' *Motion to Bifurcate Issue of Enforceability of Settlement Agreements, Permit Limited Discovery, Stay Remainder of the Proceeding, and Set Enforceability Issue for Rumery Hearing* at Docket 80 is GRANTED as set forth herein.

IT IS FURTHER ORDERED that within **14 days of this order**, the parties shall submit, separately or jointly, a proposed discovery plan consistent with this order for a preliminary *Rumery* hearing. If necessary, a status/scheduling conference will be set upon the filing of the proposed discovery plan(s). Discovery shall proceed promptly as to the *Rumery* determination after the Court enters an

---

[93] *See* Docket 87 at 1–2 (Reply) ("Neither the prosecutors nor the defense counsel involved in the initial convictions were involved in the execution of the settlement agreements.").

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 24 of 25

order on the discovery plan. Absent the consent of all parties, depositions shall not proceed until after the entry of the discovery order. This action is otherwise stayed as to the merits, except that either side may propose in their discovery plan that Defendants may depose Plaintiffs on all topics at this time.

DATED this 19th day of July, 2021 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Motion to Bifurcate and Stay
Page 25 of 25
Case 4:17-cv-00034-SLG   Document 109   Filed 07/19/21   Page 25 of 25