# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

MARVIN ROBERTS,

                Plaintiff,

       v.

CITY OF FAIRBANKS, *et al.*,

                Defendants.

**Case No. 4:17-cv-00034-SLG**

CONSOLIDATED

EUGENE VENT, *et al.*,

                Plaintiffs,

v.

CITY OF FAIRBANKS, *et al.*,

                Defendants.

Case No. 4:17-cv-00035-SLG

## ORDER RE PLAINTIFFS' DISCOVERY MOTION

Before the Court at Docket 130 is Plaintiffs' Motion to Determine Privilege Waiver and Compel Production of Documents.[1] Defendants responded at Docket 134, to which Plaintiffs replied at Docket 136.[2] The State of Alaska ("the State") responded to Plaintiffs' motion at Docket 137, to which Plaintiffs replied at Docket

---

[1] Plaintiffs are Marvin Roberts, Eugene Vent, Kevin Pease, and George Frese.

[2] Defendants are the City of Fairbanks, James Geier, Clifford Aaron Ring, Chris Nolan, Dave Kendrick, Doe Officers 1–10, and Doe Supervisors 1–10.

139. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

The factual allegations of this case have been set forth in detail in the Court's July 19, 2021 order at Docket 109 and the Court's August 31, 2021 order at Docket 126. The Court assumes familiarity here.

As relevant to this order, the Court issued an order adopting the parties' proposed discovery plan on August 3, 2021.[3] Consistent with that order, on August 17, 2021, Plaintiffs and Defendants served subpoenas duces tecum on non-party the State of Alaska requesting documents relevant to the *Rumery* determination.[4] Counsel for Plaintiffs conferred with counsel for the State of Alaska on August 25, 2021, and agreed to provide a proposed date range and search terms to narrow the scope of Plaintiffs' subpoena.[5] Plaintiffs' counsel provided the search terms the next day, on August 26, 2021.[6] The State served objections to Plaintiffs' and Defendants' subpoenas based in part on attorney-client privilege, work product protection, and the deliberative process privilege on August 31, 2021.[7] The State

---

[3] Docket 118 (Order).

[4] Docket 131-1 (Pls.' Subpoena); Docket 131-2 (Defs.' Subpoena).

[5] Docket 131 at 2, ¶ 3 (Cartwright Decl.).

[6] Docket 131 at 2, ¶ 3.

[7] Docket 131-3 (State's Objs. to Pls.' Subpoena); Docket 131-4 (State's Objs. to Def.'s Subpoena).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 2 of 24

produced a combined initial response to the two subpoenas and provided an accompanying privilege log on September 20, 2021.[8]  In this production, the State withheld or redacted multiple documents, asserting attorney-client, work product, deliberative process, and executive process privileges or protections.[9]  In response, Plaintiffs sent a letter to the State on October 6, 2021 requesting that the State voluntarily waive its asserted privileges and protections over the documents and subsequent testimony relating to the release-dismissal agreement.[10]  The State declined this request on November 3, 2021.[11]  Counsel for Plaintiffs and the State met and conferred on November 17, 2021, and the litigants agreed that in response to the State's asserted privileges, Plaintiffs would file a motion to compel documents and testimony relating to the negotiation of the release-dismissal agreement.[12]

On December 1, 2021, the State produced a supplemental document production and accompanying privilege log.[13] On this same date, the parties exchanged preliminary lists of deponents related to the *Rumery* determination,

---

[8] Docket 131 at 2, ¶ 5; Docket 131-5 (State's Initial Privilege Log).

[9] Docket 131 at 2, ¶ 5.

[10] Docket 131-6 (Pls.' Letter to State).

[11] Docket 131-7 (State's Reply to Pls.' Letter).

[12] Docket 131 at 3, ¶ 8.

[13] Docket 131 at 3, ¶ 9; Docket 131-8 (State's Suppl. Privilege Log).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 3 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 3 of 24

including nine former and/or current employees of the State of Alaska.  Mutually

identified parties include former Assistant Attorney General Adrienne Bachman;

former Commissioner of the Department of Administration Sheldon Fisher;

Assistant Attorney General Ali Rahoi; former Attorney General Craig Richards; and

Assistant Attorney General John Skidmore.  Plaintiffs additionally identified former

Alaska State Troopers James Gallen and Randy McPherron and former Governor

Bill Walker, and Defendants additionally identified former Assistant Attorney

General Leonard Linton.[14]

Plaintiffs now seek information redacted or withheld by the State in its initial

and supplemental responses to Plaintiffs' subpoena.  Specifically, Plaintiffs identify

six categories of information withheld or redacted by the State, each of which

Plaintiffs maintain is central to the underlying *Rumery* inquiry.  These categories

include:

> (1) discussion of settlement negotiations during the post-conviction
> proceeding and the State's decision to pursue settlement
> negotiations, including the State's decision to seek an *Alford* plea from
> plaintiffs;
>
> (2) discussion of the strength of plaintiffs' post-conviction claims and
> their likelihood of prevailing;
>
> (3) discussion of plaintiffs' potential civil claims and the State's
> decision to seek a release of those claims;
>
> (4) discussion of allegations of prosecutorial misconduct and the

---

[14] Docket 131 at 3, ¶ 10.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No.
4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 4 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 4 of 24

ethical obligations of the prosecutors in the post-conviction proceeding;

(5) discussion of the State's decision to offer immunity to Jason Wallace (whom plaintiffs alleged was one of the true killers of John Hartman, the person whom plaintiffs had been convicted of killing) for his testimony in the post-conviction proceeding; and

(6) discussion of how the State should characterize the settlement to the public and the press.[15]

Plaintiffs also seek an order overruling any potential future objections based on privilege to questions regarding the aforementioned topics at the depositions of the current or former state officers or employees.[16]

## DISCUSSION

### I. Applicability of Privileges

Plaintiffs maintain that the State has waived any privileges with respect to the documents and testimony that Plaintiffs seek. Plaintiffs foremost argue for an implied waiver on the basis of *Rumery* and *Lynch*.[17] In the alternative, Plaintiffs argue for disclosure on the basis of an implied waiver of attorney-client privilege, the inapplicability of the work product doctrine, and the inapplicability of the deliberative process privilege.[18] Each is discussed in turn.

---

[15] Docket 130 at 4–5 (Pls.' Mot.).

[16] Docket 130 at 2–3.

[17] Docket 130 at 11–13; *Town of Newton v. Rumery*, 480 U.S. 386 (1987) (plurality opinion); *Lynch v. City of Alhambra*, 880 F.2d 1122 (9th Cir. 1989).

[18] Docket 130 at 14–18.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 5 of 24

## Implied Waiver of Privilege on the Basis of *Rumery* and *Lynch*

Plaintiffs maintain "that in the unique and infrequent context of enforceability of a release-dismissal agreement, *Rumery* and *Lynch* themselves require discovery of the redacted and withheld materials at issue here (as well as the ability to question State officers and employees about these topics at depositions), and the Court's analysis need go no further."[19]  The State contends that in both *Rumery* and *Lynch,* "waiving a privilege was warranted by a party's own efforts in those cases to use a privilege as both a sword and a shield," and distinguishes these cases on the basis that the State here "is not a party and is not seeking to use a privilege as a sword."[20]  Accordingly, the State argues that neither *Rumery* nor *Lynch* "found that the privileges of a non-party should be pierced, or addressed when or the extent to which a privilege should be deemed waived."[21]

This Court does not interpret the Supreme Court's holding in *Rumery* or the Ninth Circuit's subsequent decision in *Lynch* to provide an independent basis for

---

[19] Docket 130 at 13.

[20] Docket 137 at 2 (State's Opp'n).  The State's contention that the holding in *Rumery* does not apply to non-parties is without merit.  Indeed, *Rumery* itself concerned the validity of a release-dismissal agreement negotiated and signed by a non-party to the subsequent civil lawsuit.  In *Rumery*, the release-dismissal agreement was negotiated by "Brian Graf, the Deputy County Attorney for Rockingham County," New Hampshire. *Rumery*, 480 U.S. at 390.  In the subsequent civil litigation, neither Mr. Graff nor Rockingham County was a defendant.  Rather, defendants included the Town of Newton, its Chief of Police, and several Town selectmen. *Id.* at 391 (explaining suit was against "the town and its officers"); *see also Rumery v. Town of Newton*, 778 F.2d 66, 67 (1st Cir. 1985) (noting that appellees were "the Town of Newton, its Chief of Police, David T. Barrett, and its Selectmen").

[21] Docket 137 at 4.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 6 of 24

the waiver of privileges in the context of pre-trial discovery. While the Supreme Court's analysis in *Rumery* does implicate information that could be subject to various privileges, such materials are discussed exclusively in the context of assessing the validity of a release-dismissal agreement.[22] Neither *Rumery* nor *Lynch* expressly provides a basis for, nor "requires" as Plaintiffs here argue, the waiver of any applicable privileges or protections.[23] For these reasons, the Court does not find that the privileges asserted by the State of Alaska are waived on the basis of *Rumery* and *Lynch*.

## Implied Waiver of Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."[24] In the Ninth Circuit, courts employ an eight-part test to determine whether the attorney-client privilege extends to a particular communication.[25] A subsequent

---

[22] *Rumery*, 480 U.S. at 398 (plurality opinion) (citing mental impressions of prosecutor in evaluating whether prosecutor had independent, legitimate reason to enter into release-dismissal agreement).

[23] *See id*. at 395–98 (holding that per se rule invalidating release-dismissal agreements is invalid and that agreement in question was enforceable); *see Lynch*, 880 F.2d 1122 (holding that release-dismissal agreements do not constitute per se violations of public policy in police crime cases, that agreement in question was entered into voluntarily, and that arrestee's allegations were sufficient to raise question as to whether agreement was in the public interest).

[24] *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

[25] *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("Typically, an eight-part test determines whether information is covered by the attorney-client privilege: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 7 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 7 of 24

three-part test dictates whether a waiver of the privilege has been effected.[26] Pursuant to *United States v. Amlani*, an implied waiver of the attorney-client privilege occurs when (1) "the party is asserting the 'privilege as the result of some affirmative act, such as filing suit'"; (2) "'through this affirmative act, the asserting party puts the privileged information at issue'"; and (3) "'allowing the privilege would deny the opposing party access to information vital to its defense.'"[27]

As a threshold issue, Plaintiffs question whether the attorney-client privilege can be invoked by the State with respect to the documents under consideration. Specifically, Plaintiffs contend that the State has failed to indicate "who the 'client' is on [the relevant] communications," thus rendering the State's invocation of the attorney-client privilege improper.[28] The State responds that the attorney-client privilege applies because "[f]ederal courts have held in civil litigation that the attorney-client privilege pertains to governmental clients" and the "State of Alaska is the client."[29] Plaintiffs reply that the State "does not identify any communication

instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992))).

[26] *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).

[27] *Id.* (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

[28] Docket 130 at 13 n.3.

[29] Docket 137 at 3 n.4.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 8 of 24

from an attorney to a client (or vice versa) that could qualify for [attorney-client privilege]."[30]

Plaintiffs further maintain that even if the attorney-client privilege has been properly invoked, it was impliedly waived by the State. In asserting that the *Amlani* test is satisfied, Plaintiffs contend that the State impliedly waived the attorney-client privilege when it affirmatively acted to "seek[] a release of plaintiffs' civil claims as a condition of vacating their convictions and releasing them from prison."[31] In doing so against the backdrop of *Rumery* and *Lynch*, Plaintiffs reason, the State "put otherwise privileged information about its attorney's knowledge and thought process at issue."[32] Plaintiffs further assert that permitting the privilege to apply here would deny them information vital to their defense.[33]

The State replies that the first *Amlani* factor is not met because "the State did not initiate a lawsuit or act in a similar affirmative manner to waive its privileges."[34] The State further asserts that Plaintiffs' interpretation of *Amlani*'s "affirmative act" requirement would find a waiver of attorney-client privilege in any instance in which a criminal settlement agreement is challenged, resulting in "wide-

---

[30] Docket 139 at 8 n.1 (Pls.' Reply to State's Opp'n).

[31] Docket 130 at 14.

[32] Docket 130 at 14.

[33] Docket 130 at 15.

[34] Docket 137 at 5.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 9 of 24

reaching ramifications that will chill the frank discussion of cases by prosecutors."[35] In their reply, Plaintiffs reject the State's policy concerns and assert that the application of *Amlani* is confined to a "narrow subset of settlement agreements: [those cases] where the prosecutor seeks a waiver from the defendant of his federal right to bring a civil action for violations of his constitutional rights."[36]

The Court finds that the State impliedly waived its attorney-client privilege with respect to the negotiation and execution of the release-dismissal agreement. Regarding the first *Amlani* factor, the Court is persuaded by Plaintiffs' argument that the State's decision to seek a release-dismissal agreement constitutes an "affirmative act" from which the State's assertion of attorney-client privilege arises. This narrow finding is cabined to the limited context of release-dismissal agreements and therefore does not implicate the State's policy concern of abrogating the attorney-client privilege with regard to all criminal settlement agreements. The second *Amlani* factor is likewise satisfied. Through the affirmative action of seeking the release-dismissal agreement, and against the backdrop of *Rumery* and *Lynch*, the State put its otherwise privileged information at issue. Specifically, both *Rumery* and *Lynch* inquire into the legitimacy of the prosecutor's decision to seek the release-dismissal agreement, and therefore contemporaneous information regarding the State's decision becomes central to

---

[35] Docket 137 at 5.

[36] Docket 139 at 4.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 10 of 24

Case 4:17-cv-00034-SLG    Document 140    Filed 03/25/22    Page 10 of 24

the enforceability of the agreement itself.[37]  The third *Amlani* factor is similarly satisfied because allowing the State to invoke the attorney-client privilege in this context would deny Plaintiffs access to information that could be vital to their case. In particular, Plaintiffs' *Rumery* claims necessitate the discovery of the contemporaneous documents memorializing the State's decision-making processes.  For these reasons, this Court finds that the State has waived its attorney-client privilege with respect to the negotiation and execution of the release-dismissal agreement.

## Applicability of Work Product Doctrine

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."[38]  To qualify for this protection, documents must "(1) be prepared in anticipation of litigation or for trial, and (2) be prepared by or for another party or by or for that other party's representative."[39]  The immunity encompasses both ordinary work product, including "documents and tangible things," and opinion work product,

---

[37] *Rumery*, 480 U.S. at 398 (plurality opinion) (inquiring into prosecutor's "independent, legitimate reason to make" release-dismissal agreement as factor weighing in favor of agreement's enforceability); *Lynch*, 880 F.2d at 1129 n.10 (holding that district court must inquire into "legitimacy" of objectives motivating prosecutor to enter into release-dismissal agreement when weighing whether agreement is in the public interest).

[38] *Sanmina Corp.*, 968 F.3d at 1119 (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

[39] *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 488 (9th Cir. 2018) (quoting *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 11 of 24

Case 4:17-cv-00034-SLG    Document 140    Filed 03/25/22    Page 11 of 24

which reflects the "mental impressions, conclusions, opinions, or legal theories of a party's attorney" concerning the litigation.[40]  The Ninth Circuit has precluded non-parties to a lawsuit from invoking the work product doctrine against a party's subpoena for discovery, expressly holding "that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."[41]  As such, "[s]imply being a subpoenaed witness is not enough" for a non-party to invoke the work product doctrine and defeat a subpoena for discovery.[42]

When applicable, the work product doctrine is a qualified protection that can be overcome.  Ordinary work product is discoverable upon a "show[ing] that [the party seeking discovery] has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[43]  Opinion work product is provided greater protection and in the Ninth Circuit is subject to discovery only when "mental impressions are at issue in a case and the need for the material is compelling."[44]

---

[40] Fed. R. Civ. P. 26(b)(3).

[41] *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989).

[42] *Doubleday v. Ruh*, 149 F.R.D. 601, 606 (E.D. Cal. 1993).

[43] Fed. R. Civ. P. 26(b)(3)(A)(ii).

[44] *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis omitted).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 12 of 24

As a threshold issue, Plaintiffs argue that the State, as a non-party to the underlying litigation, cannot invoke the work product doctrine to preclude the discovery of documents.[45] Alternatively, Plaintiffs maintain that although "the documents withheld or redacted by the State would typically qualify as work product, and that at least some of the documents reflect opinion work product," in this instance work product protection should not be accorded.[46] Specifically, Plaintiffs assert that any work product protection is overcome because the *Rumery* inquiry puts the mental impressions of the State's decision to seek the release-dismissal agreement squarely at issue, and the need to access the withheld work product is "compelling," as the *Rumery* inquiry cannot be conducted "without access to the contemporaneous documents memorializing the State's knowledge and reasoning surrounding the settlement negotiations."[47] In response, the State cites *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), for the proposition that "[d]iscovery from opposing litigation counsel is permitted in only limited circumstances."[48] The State adds that because the information that Plaintiffs seek is privileged, such discovery should not be permitted.[49]

---

[45] Docket 139 at 7.

[46] Docket 130 at 15.

[47] Docket 130 at 16.

[48] Docket 137 at 6.

[49] Docket 137 at 6.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 13 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 13 of 24

At the outset, it is not clear that the State can properly invoke the work product doctrine to preclude discovery in this case because the doctrine only attaches to documents "prepared by or for another party or by or for that other party's representative."[50]  The State is not a party to this litigation.  Nor has the State asserted that it is a representative to a named defendant in this lawsuit.[51]

This Court further finds that, even assuming that the work product doctrine could apply to the State's documents relating to the negotiation of the release-dismissal agreement, such protections are overcome, as all relevant factors weigh decidedly in favor of production.  With regard to ordinary work product, Plaintiffs have shown a substantial need for documents created by State actors in the negotiation of the release-dismissal agreement, as such documents may illuminate the State's motivations in seeking the agreement.  And because the requested documents remain in the exclusive control of the State, Plaintiffs are unable without undue hardship to obtain the substantial equivalent of such documents by other means.  Likewise, this Court finds that any applicable protection afforded for opinion work product is overcome.  Because the *Rumery* analysis entails analyzing "the propriety of the prosecutor's decisions" in negotiating and agreeing to the

---

[50] *Am. C.L. Union of N. Cal.*, 880 F.3d at 484 (quoting *Richey*, 632 F.3d at 567).

[51] The State argues that for the purpose of attorney-client privilege, "[i]n criminal matters and post-conviction relief proceedings, the State of Alaska is the client."  Docket 137 at 4 n.4.  However, the State advances no parallel argument in its motion to justify its invocation of the work product doctrine.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 14 of 24

release-dismissal agreement, the contemporaneous documents memorializing the State's mental impressions in its decision-making are directly at issue.[52]  Plaintiffs' need for these materials is likewise compelling as this information is otherwise unavailable.

For these reasons, to the extent that the work product doctrine would apply to documents and testimony with respect to the non-party State's negotiation of the release-dismissal agreement, such protections are overcome given Plaintiffs' critical need for this information in the unique circumstances of this case.

## Applicability of the Deliberative Process Privilege[53]

The deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[54]  For the government's deliberative process privilege to apply, the document that the government seeks to withhold must be both "predecisional" and "deliberative in nature."[55]  However, the Supreme Court has held that this qualified privilege can be overcome if "[a litigant's] need for the materials and the need for accurate fact-

---

[52] *See Lynch*, 880 F.2d at 1129 n.10.

[53] The State separately invoked both "Deliberative Process" and "Executive Process" in its initial privilege log.  The Court understands these terms to be synonymous, and to describe the same privilege.

[54] *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

[55] *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

finding override the government's interest in non-disclosure."[56]   In determining whether this exception to the privilege applies, courts consider: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."[57]

Plaintiffs foremost question whether the deliberative process privilege may be invoked by the State in this instance.  Acknowledging that the Ninth Circuit has not decided the issue, Plaintiffs note that "[a] number of courts have held that the privilege does not apply when the government's decision making is central to the plaintiff's case."[58]   Even if the privilege is applicable, Plaintiffs argue that the applicable balancing test weighs in favor of disclosure.[59]   The State does not appear to advance a specific argument in support of its invocation of the deliberative process privilege.

This Court finds that even assuming that the deliberative process privilege could apply to the State's documents relating to the negotiation of the release-dismissal agreement, all four balancing factors weigh in favor of disclosure.  First,

---

[56] *Warner Commc'ns Inc.*, 742 F.2d at 1161; *see also Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019).

[57] *Warner Commc'ns Inc.*, 742 F.2d at 1161.

[58] Docket 130 at 17 (alteration in original) (quoting *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020 (E.D. Cal. 2010)).

[59] Docket 130 at 17–18.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 16 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 16 of 24

the information sought by Plaintiffs is highly relevant to the *Rumery* inquiry, as it sheds light on the State's contemporaneous motivations in seeking the release-dismissal agreement. Second, because the relevant inquiry explores the State's own motivations, alternative sources of evidence are not likely to materialize. Third, although the State is not a party to this litigation, it was a party to the underlying criminal case and a central actor in negotiating the release-dismissal agreement. Fourth, disclosure is unlikely to hinder frank and independent governmental discussion regarding future negotiations of criminal cases outside of the *Rumery* context. Against the backdrop of *Rumery* and *Lynch*, the government was already on notice that its knowledge of and internal motivations for seeking a release-dismissal agreement could be relevant to the enforceability of such an agreement. For these reasons, to the extent that the deliberative process privilege could apply with respect to the State's negotiation of the release-dismissal agreement, the relevant factors to apply an exception all weigh decidedly toward production.

## II.    Scope of Discovery to be Produced

As noted above, Plaintiffs have moved to compel the production of six categories of information withheld or redacted by the State in its responses to Plaintiffs' subpoenas.[60] The Court determines whether the categories sought are

---

[60] Docket 130 at 4–5.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 17 of 24

each discoverable. For when a court finds that privileges have been impliedly waived or protection is overcome, it "must be careful to 'impose a waiver no broader than needed to ensure the fairness of the proceedings before it.'"[61] Pursuant to this fairness principle, a court must "closely tailor[] the scope of the waiver to the needs of the opposing party in litigating the claim in question."[62]

The litigants seem to agree that the scope of any privilege waiver should be determined by Plaintiffs' needs for the documents in the *Rumery* analysis.[63] However, they disagree as to the extent of Plaintiffs' needs. Plaintiffs argue that the scope of the waiver to privilege should broadly encompass information related to "the State's reasons for seeking a release of Plaintiffs' civil claims as a condition of the vacatur of their wrongful convictions."[64] Plaintiffs contend that this includes all information withheld or redacted in the State's responses to Plaintiffs' subpoena, as well as any potential "objection based on these privileges in response to deposition questions related to the *Rumery* analysis."[65] The State counters that the relevant inquiry "is not what any State employee believed about

---

[61] *Sanmina Corp.*, 968 F.3d at 1122 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720).

[62] *Bittaker*, 331 F.3d at 720.

[63] Docket 130 at 2 (arguing that requested "materials and related testimony are discoverable in this litigation because the information goes to the heart of the *Rumery* inquiry"); Docket 137 at 8 (arguing that "[i]f the court finds the State's privilege are [sic] waived, it should not impose a broader waiver than is strictly necessary for it to conduct its *Rumery* analysis").

[64] Docket 130 at 2.

[65] Docket 130 at 2–3.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 18 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 18 of 24

an underlying criminal or post-conviction relief matter or even what they believed about a potential settlement"; rather, the State maintains "the inquiry is into the decision-making that led to the settlement."[66]  According to the State, "upon information and belief, Alaska's former Attorney General decided to enter into the release-settlement agreement," and therefore any waiver of privilege imposed by the Court should be limited to "communications to or from the Attorney General."[67] The State maintains that "[t]he mental impressions and work product of staff that were not communicated to the Attorney General could not have influenced his decision-making and are therefore not relevant to the *Rumery* inquiry and should remain protected."[68] In a related argument, the State asserts that compelling discovery from opposing trial counsel is permitted only in limited circumstances.[69] In their reply, Plaintiffs contend that "State attorneys other than the Attorney General" were involved in negotiating the release-dismissal agreement, and

---

[66] Docket 137 at 2.

[67] Docket 137 at 2–3.

[68] Docket 137 at 3.

[69] Docket 137 at 6 (citing *Shelton*, 805 F.2d at 1327).  The State invokes *Shelton* in the context of arguing that "opinion work product and mental impressions" of state attorneys should not be discoverable.  Docket 137 at 5.  Because this argument is related to the scope of discovery, this Court addresses the argument in this section.  However, to the extent that the State raises this objection in the context of either attorney-client privilege or the work product doctrine, the same analysis applies.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 19 of 24

therefore the waiver necessary for the *Rumery* analysis must extend beyond the Attorney General.[70]

The Court agrees that the scope of discovery to be produced must be tailored to the evidentiary needs of the *Rumery* analysis. The Supreme Court and the Ninth Circuit instruct that determining the enforceability of a release-dismissal agreement under the *Rumery* analysis requires consideration of whether "(1) [the release-dismissal agreement] was entered into voluntarily; and (2) [the release-dismissal agreement's] enforcement is in the public interest."[71] With regard to the latter, the court must analyze whether the prosecutor had a "legitimate" reason to make and enter into the release-dismissal agreement.[72] Accordingly, the appropriate scope of the waiver at issue extends to all documents and communications relating to the State's motivation for and decision to enter into the release-dismissal agreement.

The State's argument that the Attorney General is the only relevant decision-maker in assessing the legitimacy of the State's reasons to make and enter into

---

[70] Docket 139 at 10.

[71] *Lynch*, 880 F.2d at 1126; *see Rumery*, 480 U.S. at 398 (plurality opinion) (holding that release-dismissal agreement is enforceable because it was entered into voluntarily, and enforcement would not adversely affect the relevant public interests).

[72] *See Rumery*, 480 U.S. at 398 (plurality opinion) (holding that "the prosecutor had an independent, legitimate reason to make this agreement directly related to his prosecutorial responsibilities"); *see id.* at 401–02 (O'Connor, J., concurring in part and concurring in the judgment) (citing "[t]he existence of a legitimate criminal justice objective for obtaining the release" as a condition for upholding the enforceability of a release-dismissal agreement).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 20 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 20 of 24

the release-dismissal agreement is unpersuasive. To the contrary, evidence in the record seems to indicate that at least one other state attorney in addition to the Attorney General may have been involved in this process.[73] Only additional discovery can reveal the extent to which the knowledge and motivations of the additional attorney(s) influenced the State's decision to negotiate and enter into the release-dismissal agreement, and ultimately the legitimacy of the State's decision. As such, this Court finds that the scope of the State's waiver of privilege is not confined to communications with the Attorney General.

The State's invocation of *Shelton* to preclude discovery from opposing counsel is likewise unavailing. Foremost, the Court in *Shelton* held that a party to a lawsuit can invoke the work product doctrine to preclude discovery of its own mental impressions when subpoenaed by the opposing party to the litigation.[74] Here, however, the State is not a party to the underlying litigation. It is not clear that this holding extends to non-parties such as the State. Furthermore, even application of the *Shelton* test weighs strongly in favor of disclosure. The *Shelton* court found that opposing trial counsel can be deposed when "(1) no other means

---

[73] *See* Docket 131-16 at 2 (Tr. of Telephone Call Between Assistant Attorney General Alice Rahoi and James Geier) (indicating that Assistant Attorney General Alice Rahoi "had insisted on" one provision of release-dismissal agreement).

[74] *Shelton*, 805 F.2d at 1326 ("We hold that where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product.").

exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[75]  Considering the present circumstances, first, no other means exist for Plaintiffs to obtain the information they seek as it remains in the State's exclusive control and second, information regarding the State's knowledge of and motivations for entering into the release-dismissal agreement is relevant to the *Rumery* inquiry, and, as analyzed above, is not protected from disclosure by privilege.  Third, this information is crucial to the preparation of Plaintiffs' *Rumery* argument.

However, Plaintiffs have not demonstrated that their need for documents in the *Rumery* analysis extends to "discussion of how the State should characterize the settlement to the public and the press."[76]  Indeed, the State's ex post facto and external characterization of the settlement would appear to have little relevance to the State's motivation for agreeing to the release-dismissal agreement.  As such, and in accordance with the need to tailor the scope of the waiver pursuant to the fairness principle, this Court finds that waiver of the State's privileges and protections does not extend to its discussion of how to characterize the settlement to the public and the press.

---

[75] *Id.* at 1327 (citation omitted).

[76] Docket 130 at 5.

For these reasons, the Court finds that the scope of the waiver of the State's privileges and protections extends to all documents and communications relating to the State's motivations for making and entering into the release-dismissal agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs' discovery motion at Docket 130 is GRANTED in part and DENIED in part as follows:

- With respect to the negotiation of and execution of the release-dismissal agreement, the State of Alaska has impliedly waived its attorney-client privilege; to the extent that either the work product doctrine or deliberative process privilege are applicable, both protections are overcome. Any further objection on behalf of the State based on these privileges and protections in relation to the negotiation and execution of the release-dismissal agreement will be overruled.

- Plaintiffs' motion to compel the production of documents responsive to its requests for categories one, two, three, four, and five is GRANTED.

- Plaintiffs' motion to compel the production of documents responsive to its request for category six is DENIED.

IT IS ORDERED that the State of Alaska shall produce complete, unredacted copies of all responsive documents and communications, including

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No. 4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 23 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 23 of 24

emails and attachments thereto as required by this order no later than **14 days from the date of this order.** Should Plaintiffs and the State disagree regarding whether any particular documents identified on the State's privilege log are covered by this order, the State may submit those documents to the Court for *in camera* review.

DATED this 25th day of March, 2022 at Anchorage, Alaska.

*/s/ Sharon L Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.* (consolidated); Case No.
4:17-cv-00035-SLG, *Vent, et al. v. City of Fairbanks, et al.*
Order re Plaintiffs' Discovery Motion
Page 24 of 24

Case 4:17-cv-00034-SLG   Document 140   Filed 03/25/22   Page 24 of 24