# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MARVIN ROBERTS,

            Plaintiff,

        v.

CITY OF FAIRBANKS, *et al.*,

            Defendants.

Case No. 4:17-cv-00034-SLG

## ORDER RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 167 is Plaintiffs' Motion for Partial Summary Judgment. Defendants responded in opposition at Docket 177, and Plaintiffs replied at Docket 181. Also before the Court is Defendants' Motion for Summary Judgment at Docket 168.[1] Plaintiffs responded in opposition at Docket 180, and Defendants replied at Docket 186. The Court heard oral argument on both motions on September 25, 2023. Prior to oral argument, three of the four Plaintiffs—George Frese, Kevin Pease, and Eugene Vent—came to a settlement agreement with Defendants; only Marvin Roberts remains as a Plaintiff in this case, and oral argument focused solely on his claim against Defendants.[2]

---

[1] Defendants' memorandum in support of its motion for summary judgment is found at Docket 168-1.

[2] *See* Docket 201; Docket 202; Docket 204; Docket 205.

## BACKGROUND

The factual allegations in this case have been set forth in detail by the Ninth Circuit[3] and are included here only as necessary. Mr. Roberts and the three prior plaintiffs (collectively, "Plaintiffs") were convicted of the October 11, 1997, murder of fifteen-year-old John Hartman.[4] In September 2013, Plaintiffs filed post-conviction relief petitions in Alaska Superior Court, in part on the basis of a confession by William Holmes naming himself and four other men as the actual perpetrators of Mr. Hartman's murder.[5] In October and November 2015, after two years of discovery, the state court held a five-week evidentiary hearing on the petitions at which William Holmes testified that he and several other men had killed John Hartman.[6] Eleven other witnesses corroborated Holmes's account, and a witness from the original trial testified that his testimony had been coerced by Fairbanks Police Department ("FPD") officers.[7] The judge informed the parties at the close of the evidentiary hearing that he would not render a decision for six to

---

[3] *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1193-96 (9th Cir. 2020).

[4] *Id.* at 1193-94. This case was previously consolidated with Case No. 4:17-cv-00035-SLG; that case has been terminated. For convenience and due to usage in the parties' briefing, the Court refers to all four men as Plaintiffs, though Mr. Roberts is the only remaining Plaintiff in this case.

[5] *Id.* at 1194.

[6] *Id.*

[7] *Id.*

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 2 of 22

Case 4:17-cv-00034-SLG   Document 208   Filed 01/04/24   Page 2 of 22

eight months.[8]  Plaintiffs allege that "[m]embers of the prosecution also stated publicly" that if the convictions were vacated, "the State would appeal that decision through to the Alaska Supreme Court."[9]

With the judge's decision pending, "the prosecutors offered Plaintiffs a deal: the prosecution would consent to vacating the convictions and dismissing the charges, but only if all four plaintiffs agreed to release the State of Alaska and the City of Fairbanks (and their employees) from any liability related to the convictions."[10]  On December 9, 2015, Plaintiffs, the State of Alaska ("State"), and the City of Fairbanks entered into a Settlement Agreement and Mutual Release of All Claims.[11]  However, the approval of the release-dismissal agreement was held in abeyance by Alaska Superior Court Judge Paul Lyle, who issued an order questioning the legal basis for his authority to order the immediate release of the Plaintiffs absent a finding in favor of Plaintiffs "on the substance of their [post-conviction] claims . . . or that the State is no longer contesting the validity" of those claims.[12]  Thus, on December 17, 2015, the parties attended a judicially-supervised mediation with another judge and entered into a stipulation that

---

[8] *Id*. at 1195.

[9] Docket 40 at ¶ 121 (Second Am. Compl.).

[10] *Roberts*, 947 F.3d at 1195 (footnote omitted).

[11] *See* Docket 171-55.

[12] Docket 171-59 at 2-4.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 3 of 22

Case 4:17-cv-00034-SLG   Document 208   Filed 01/04/24   Page 3 of 22

incorporated the original release-dismissal agreement (collectively, the "Settlement Agreement").[13] In the stipulation, the parties agreed that the original jury verdicts and judgments were properly and validly entered based on proof beyond a reasonable doubt.[14] They further "stipulate[d] and agree[d] that there is sufficient new evidence of material facts that a new trial could be ordered under [Alaska Statute ("AS")] 12.72.010(4)," without Plaintiffs having to prove their actual innocence by clear and convincing evidence.[15] Based on the parties' stipulation, and without addressing the merits of the petitions, on December 17, 2015, the state court vacated Plaintiffs' convictions, the prosecutors dismissed the indictments, and Mr. Frese, Mr. Pease, and Mr. Vent were released from prison.[16]

The Settlement Agreement notwithstanding, Plaintiffs filed this suit in federal court in December 2017, alleging claims under 42 U.S.C. § 1983 and § 1985 against the City of Fairbanks and FPD officers James Geier, Clifford Aaron Ring,

---

[13] *See* Docket 171-72 at ¶ 7; Docket 171-126 (transcript of settlement hearing with Judge Lyle after settlement conference).

[14] Docket 171-72 at ¶ 2.

[15] *See* Docket 171-72 at ¶¶ 3-4 ("The parties stipulate and agree that this Court need not make findings of innocence under AS 12.72.020."). AS 12.72.020(b)(2)(D) requires a criminal defendant to establish his innocence by "clear and convincing evidence."

[16] Docket 171-126 at 4 ("[T]his is a lawful settlement conducted under lawful procedure, under the inherent authority of the attorney general, over which this Court has no authority to -- to review or to criticize. . . . The Petitioners will be . . . released forthwith after this hearing."); Docket 171-72 at ¶ 7 (providing that upon vacatur of Plaintiffs' convictions, "the State will not seek retrial in any of the underlying criminal cases and will file dismissals . . . of the indictments in the above-referenced cases").

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 4 of 22

Case 4:17-cv-00034-SLG    Document 208    Filed 01/04/24    Page 4 of 22

Chris Nolan, and Dave Kendrick (collectively, "Defendants").[17]  The district court, "in specific reliance on the parties' stipulation that 'the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt,'" dismissed the case on the ground that Plaintiffs had not established a favorable termination of the criminal case and that their claims were thus barred by *Heck v. Humphrey*.[18]  On appeal, however, the Ninth Circuit held that Plaintiffs' claims were not barred by *Heck*, concluding that "where all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983."[19]  The Court of Appeals declined to consider Defendants' argument that Plaintiffs' claims were barred by their release of all claims in the Settlement Agreement, noting that it was "an issue not passed upon below," and "le[ft] that issue for the district court."[20]  The Ninth Circuit vacated the district court's dismissal order and remanded the case for further proceedings.[21]

---

[17] Docket 1; Docket 40 at ¶¶ 17-21 (Am. Compl.); Case No. 4:17-cv-00035-SLG, Docket 1. These cases were consolidated on March 19, 2018.  Docket 34.

[18] *Roberts*, 947 F.3d at 1196 (citation omitted); *see also Heck v. Humphrey*, 512 U.S. 477 (1994); Docket 62 (vacated by *Roberts*, 947 F.3d 1191).

[19] *Roberts*, 947 F.3d at 1193.

[20] *Id.* at 1205-06.

[21] *Id.* at 1206.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 5 of 22

On remand, Defendants moved to bifurcate the proceeding and requested that the Court first rule on the Settlement Agreement's enforceability pursuant to *Town of Newton v. Rumery*[22] before addressing Plaintiffs' § 1983 and § 1985 claims on the merits, if then necessary.[23]  The Court granted the motion and stayed the case on the merits.[24]  The issue of the Settlement Agreement's enforceability is now before the Court.  Plaintiffs filed a motion for partial summary judgment, asserting that the enforcement of the Settlement Agreement is contrary to public policy and that the releases were involuntary under the *Rumery* factors.[25]  Defendants filed a cross-motion for summary judgment, asserting that there is no genuine dispute that Plaintiffs "voluntarily released the claims they are asserting in this lawsuit" and that enforcing the Settlement Agreement "will not adversely affect the relevant public interest."[26]  As noted above, three of the four Plaintiffs settled the case shortly before oral argument, and only Mr. Roberts remains in this action.

---

[22] 480 U.S. 386 (1987) (plurality opinion).

[23] Docket 81 at 2.

[24] Docket 109 at 24-25.

[25] Docket 167 at 21-39.

[26] Docket 168-1 at 8-9.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 6 of 22

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law: 42 U.S.C. § 1983 and § 1985.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[27] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[28]  When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[29]  In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[30]

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[28] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[29] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[30] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 7 of 22

## DISCUSSION

In *Rumery*, the Supreme Court held in a plurality opinion that a release-dismissal agreement "in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges" is not *per se* invalid.[31]  Rather, after analysis of the relevant facts, the Supreme Court concluded that the plaintiff's release-dismissal agreement in that case was enforceable because (1) the "agreement was voluntary"; (2) "there [was] no evidence of prosecutorial misconduct"; and (3) "enforcement of this agreement would not adversely affect the relevant public interests."[32]

In *Rumery*, the plaintiff, Bernard Rumery, was arrested and accused of tampering with a witness who was a victim of an aggravated sexual assault.[33] Rumery promptly retained "an experienced criminal defense attorney," after which he and the prosecutor reached a release-dismissal agreement, "under which [the prosecutor] would dismiss the charges against Rumery if Rumery would agree not to sue the town, its officials, or [the victim] for any harm caused by the arrest."[34] The parties all "agreed that one factor in [the prosecutor's] decision not to prosecute Rumery was [the prosecutor's] desire to protect [the victim] from the

---

[31] 480 U.S. at 389, 397.

[32] *Id.* at 398.

[33] *Id.* at 389-90.

[34] *Id.* at 390.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 8 of 22

trauma she would suffer if she were forced to testify."[35]  A plurality of the Supreme Court determined that Rumery's decision to enter into the release-dismissal agreement was voluntary because "(1) Rumery was a sophisticated businessman; (2) he was not in custody when he agreed to the release; (3) he was represented by an experienced criminal defense attorney, who drafted the agreement; and (4) he considered the agreement for three days before signing it."[36]  And while the plurality declined to adopt a *per se* rule against such agreements, it did acknowledge that the "availability of such agreements may threaten important public interests"; "[t]hey may tempt prosecutors to bring frivolous charges, or to dismiss meritorious charges, to protect the interests of other officials."[37]  In Rumery's case, however, the plurality concluded that "the prosecutor had an independent, legitimate reason to make this agreement directly related to his prosecutorial responsibilities."[38]

Justice O'Connor concurred with the opinion of the Court, stating that it should be the defendants to a potential § 1983 suit who should bear the burden of proving the validity of such release-dismissal agreements.[39]  Justice O'Connor

---

[35] *Id.*

[36] *Lynch v. Alhambra*, 880 F.2d 1122, 1125 (9th Cir. 1989) (citing *Rumery*, 480 U.S. at 394).

[37] *Rumery*, 480 U.S. at 395.

[38] *Id.* at 398.

[39] *Id.* at 401 (O'Connor, J., concurring).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 9 of 22

identified five factors for consideration when determining whether a release-dismissal agreement "was voluntarily made, not the product of prosecutorial overreaching, and in the public interest":

> (1) the knowledge and experience of the criminal defendant; (2) the circumstances of the execution of the release, including whether the defendant had the benefit of counsel; (3) the nature of the criminal charges pending; (4) the existence of a legitimate criminal justice objective for obtaining the release; and (5) whether the agreement was executed under judicial supervision.[40]

In *Lynch v. City of Alhambra*, the Ninth Circuit discussed *Rumery* and articulated a two-part test for whether a release-dismissal agreement is enforceable.[41]  Such an agreement is enforceable only if "(1) it was entered into voluntarily; and (2) its enforcement is in the public interest."[42]  "Both elements are required."[43]  The Ninth Circuit further held that the burden "to plead and prove that the agreement serves the public interest" lies with the civil rights defendants.[44]

---

[40] *Lynch*, 880 F.2d at 1126 (citing *Rumery*, 480 U.S. at 401-02 (O'Connor, J., concurring)).

[41] *Id.* (citing *Rumery*, 480 U.S. 386).

[42] *Id.*  The Ninth Circuit also held that "affirmative prosecutorial misconduct is not an essential element of [a] plaintiff's case," because "the second prong of the *Rumery* test is whether the public interest is served by the agreement, not whether the prosecutor acted with pure motives." *Id.* at 1128.

[43] *Id.* at 1126.

[44] *Id.* at 1128 (citing *Rumery*, 480 U.S. at 401 (O'Connor, J., concurring)) (other citations omitted).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 10 of 22

In *Lynch*, the plaintiff, Richard Lynch, sustained multiple injuries inflicted by the arresting officer while Lynch was being arrested for a crime he did not commit.[45] Lynch—an off-duty officer at the time of his arrest—"specifically alleged that he did not resist [the officer], or otherwise impede the officers in the performance of their duties."[46] However, after Lynch made several complaints to the police department regarding his treatment during the arrest, the city's prosecutor told Lynch that there were sufficient grounds to prosecute him for resisting arrest, "and that such prosecution would be initiated unless Lynch released his civil claims against the city."[47] Lynch's attorney then drafted a release-dismissal agreement that the city approved, and after "more than four weeks of consideration, Lynch signed the agreement."[48] The district court held that Lynch had voluntarily signed the release, but that court "did not decide whether the agreement violate[d] public policy."[49]

On appeal, the Ninth Circuit agreed with the district court that Lynch's decision to enter into the release-dismissal agreement was voluntary, pointing out that Lynch, as a long-time peace officer, was familiar with the criminal process; he

---

[45] *Id.* at 1123.

[46] *Id.* at 1123, 1128.

[47] *Id.* at 1123-24.

[48] *Id.* at 1124.

[49] *Id.* The district court did not address the public interest factor because "it interpreted *Rumery* to require an allegation of prosecutorial misconduct, and dismissed Lynch's complaint for failure to make such an allegation." *Id.* at 1127.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 11 of 22

Case 4:17-cv-00034-SLG   Document 208   Filed 01/04/24   Page 11 of 22

was represented by an attorney; his attorney drafted the agreement; Lynch was not in custody while considering the release; and he considered the proposed release-dismissal agreement for four weeks before signing it.[50]  The Ninth Circuit then remanded the case to the district court "to address whether the enforcement of Lynch's agreement would be in the public interest."[51]  On the public interest issue, the Circuit Court observed that in addition to specifically alleging that he did not resist the arrest, Lynch also maintained that the arresting officer "fabricated the allegations contained in the police report to justify the arrest," and that "the defendants conspired to force him to sign the agreement upon the threat of prosecution and that the prosecution was not based on legitimate facts."[52]  The Ninth Circuit held that these allegations were "sufficient to raise the public interest issue," with "the burden [on] the defendants to plead and prove that the agreement serves the public interest."[53]  The Ninth Circuit further emphasized that *Rumery* requires "a case-by-case analysis of the propriety of release agreements," and that the district court must "hear the evidence and evaluate whether the public interest

---

[50] *Id.* at 1126-27.

[51] *Id.* at 1129.

[52] *Id.* at 1128 (citations omitted).

[53] *Id.* (citations omitted).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 12 of 22

is served by enforcement of the release-dismissal agreement," because "each case involves unique facts and policy considerations."[54]

In holding that "affirmative prosecutorial misconduct is not an essential element of plaintiff's case," the Ninth Circuit explained that "[t]he public interest in vindicating constitutional rights and deterring police misconduct is undermined where officials other than the prosecutor fabricate or exaggerate allegations of criminal conduct in order to facilitate the release of civil rights claims through release-dismissal agreements."[55] Thus, "the second prong of the *Rumery* test is whether the public interest is served by the agreement, not whether the prosecutor acted with pure motives."[56]

The Court therefore reviews the unique facts of this case and the parties' cross-motions for summary judgment with respect to the *Rumery* factors, beginning with whether Defendants have met their burden of proving that the Settlement Agreement in this case serves the public interest. The Court focuses on two key points: (1) the parties agreed that there was sufficient new evidence for a new trial; and (2) the Settlement Agreement was conditioned on all four Plaintiffs agreeing to it.

---

[54] *Id.* at 1127-28.

[55] *Id.* at 1128.

[56] *Id.*

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 13 of 22

Case 4:17-cv-00034-SLG    Document 208    Filed 01/04/24    Page 13 of 22

## I. Sufficient New Evidence for New Trial

As part of the Settlement Agreement, the parties "stipulate[d] and agree[d] that there is sufficient new evidence of material facts that a new trial could be ordered under AS 12.72.010(4)."[57] AS 12.72.010(4) provides that

> [a] person who has been convicted of, or sentenced for, a crime may institute a proceeding for post-conviction relief if the person claims . . . that there exists evidence of material facts, not previously presented and heard by the court, that requires vacation of the conviction or sentence in the interest of justice[.]

In addition, the "parties stipulate[d] and agree[d] that this Court need not make findings of innocence under AS 12.72.020."[58] AS 12.72.020(b)(2)(D) provides that a party seeking post-conviction relief must establish actual innocence by "clear and convincing evidence." This case thus is factually distinct from both the *Rumery* and *Lynch* cases. For the Settlement Agreement in this case was not about a dismissal of potential or pending charges in exchange for releasing the City of Fairbanks and its employees from liability, but rather involved the vacatur of convictions, the continuing validity of which the parties agreed was called into question in light of newly discovered evidence.

Although the parties did not specify what the "new evidence of material facts" consisted of in their stipulation, the Ninth Circuit detailed the following evidence

---

[57] Docket 171-72 at ¶ 3. The parties also stipulated and agreed that "the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt." Docket 171-72 at ¶ 2.

[58] Docket 171-72 at ¶ 4.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 14 of 22

that was adduced at the post-conviction relief ("PCR") hearing shortly before the

parties entered into their Settlement Agreement:

- William Holmes testified that he, Jason Wallace, and three other men had murdered Hartman;

- Eleven witnesses corroborated Holmes' account;

- Four witnesses testified that Wallace had confessed to killing Hartman and provided consistent, interlocking accounts corroborating that fact;

- Arlo Olson, the sole witness who had identified Plaintiffs as assailants in an unrelated attack on Frank Dayton the night of the Hartman murder, testified that [Fairbanks Police Department] officers coerced him into giving a false statement;

- Frank Dayton, the individual who had also been assaulted on the night of the murder, testified that his assailants had not been in Roberts' car, as had been asserted by the prosecution;

- An Alaska State Trooper testified that an investigation corroborated key elements of Holmes' confession and failed to find any evidence of Plaintiffs' guilt;

- Alibi witnesses provided accounts of the activities and whereabouts of Plaintiffs on the night of the murder, establishing that Plaintiffs were never together that night and could not have murdered Hartman or assaulted Dayton; and

- Forensic experts testified that the prosecution improperly advanced "evidence" that Frese's boot print matched the injuries on Hartman's face, stating that there was no scientifically reliable way to make this determination.[59]

---

[59] *Roberts*, 947 F.3d at 1194-95. The State granted immunity to one contrary witness, Jason Wallace, so he could be compelled to testify at the PCR hearing. *See* Docket 180-43 (grant of immunity to Mr. Wallace). After being granted immunity, Mr. Wallace then "testified at the hearing on Friday, October 30 and Monday, November 2, 2015 and denied any involvement in the Hartman murder." Docket 168-1 at 26 n.68.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 15 of 22

In addition, Jason Gazewood, a former Fairbanks prosecutor and then-defense counsel for Jason Wallace, "wrote a letter to the post-conviction prosecutors," expressing that Plaintiffs' "convictions were likely to be vacated and that a retrial would be 'virtually unwinnable.'"[60]

> He noted that the lead investigator of the murder, Detective Clifford Aaron Ring, had "edit[ed] his recordings in such a way as to not record exculpatory information while using coercive techniques to obtain confessions," and that the Fairbanks Police Department . . . was well aware of Detective Ring's "use of deceptive interviewing techniques." For these reasons, among others, Gazewood warned the prosecutors that Plaintiffs were likely to seek—and win—tens of millions of dollars in a civil-rights suit against those involved in procuring their wrongful convictions.[61]

Mr. Roberts and Defendants continue to dispute Mr. Roberts's actual innocence for Mr. Hartman's murder.[62] But the Court need not reach that question. Instead, based on the parties' 2015 agreement that "there is sufficient new evidence of material facts that a new trial could be ordered,"[63] and based on the extensive exculpatory evidence noted above, the Court finds that enforcing the Settlement Agreement so as to preclude Mr. Roberts from seeking compensation would disserve the public interest. Defendants note that *Rumery* does not

---

[60] *Roberts*, 947 F.3d at 1194.

[61] *Id.*

[62] *See* Docket 177 at 10; Docket 167 at 23.

[63] Docket 171-72 at ¶ 3.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 16 of 22

Case 4:17-cv-00034-SLG    Document 208    Filed 01/04/24    Page 16 of 22

In addition, Jason Gazewood, a former Fairbanks prosecutor and then-defense counsel for Jason Wallace, "wrote a letter to the post-conviction prosecutors," expressing that Plaintiffs' "convictions were likely to be vacated and that a retrial would be 'virtually unwinnable.'"[60]

> He noted that the lead investigator of the murder, Detective Clifford Aaron Ring, had "edit[ed] his recordings in such a way as to not record exculpatory information while using coercive techniques to obtain confessions," and that the Fairbanks Police Department . . . was well aware of Detective Ring's "use of deceptive interviewing techniques." For these reasons, among others, Gazewood warned the prosecutors that Plaintiffs were likely to seek—and win—tens of millions of dollars in a civil-rights suit against those involved in procuring their wrongful convictions.[61]

Mr. Roberts and Defendants continue to dispute Mr. Roberts's actual innocence for Mr. Hartman's murder.[62] But the Court need not reach that question. Instead, based on the parties' 2015 agreement that "there is sufficient new evidence of material facts that a new trial could be ordered,"[63] and based on the extensive exculpatory evidence noted above, the Court finds that enforcing the Settlement Agreement so as to preclude Mr. Roberts from seeking compensation would disserve the public interest. Defendants note that *Rumery* does not

---

[60] *Roberts*, 947 F.3d at 1194.

[61] *Id.*

[62] *See* Docket 177 at 10; Docket 167 at 23.

[63] Docket 171-72 at ¶ 3.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 16 of 22

Case 4:17-cv-00034-SLG    Document 208    Filed 01/04/24    Page 16 of 22

foreclose enforcing a release-dismissal agreement against an innocent person, but both *Rumery* and *Lynch* involved defendants who were never convicted, much less incarcerated.[64]  In contrast, Mr. Roberts was convicted and incarcerated for 18 years.[65]  His three co-defendants were still incarcerated when the agreement was reached.[66]  To require Mr. Roberts to release his civil claims in order for his co-defendants to achieve their freedom when Defendants agreed that there was sufficient new evidence for all four men to receive a new trial—regardless of Mr. Roberts's actual innocence—does not serve the public interest.

Defendants also assert that the Settlement Agreement is in the public interest because settling the four cases would "conserv[e] state resources, [promote] community healing, and [bring] finality."[67]  However, the Court does not find these interests to override the interest in permitting an individual to seek redress when that individual may have been wrongfully imprisoned for nearly two decades of his life.  After all, one of the "fundamental value determination[s]" of American society is "that it is far worse to convict an innocent man than to let a

---

[64] Docket 177 at 6.

[65] *See* Docket 40 at ¶ 92 (Am. Compl.) (alleging that Plaintiffs "each served more than 18 years in custody"); Docket 103 at ¶ 92 (Answer to Am. Compl.) (admitting that "Plaintiffs each served approximately 18 years in custody").

[66] *See Roberts*, 947 F.3d at 1195 n.2 ("Roberts had already been released from prison and was on supervised parole, but the prosecution refused to release any of the other three plaintiffs from prison unless Roberts agreed to the same arrangement.").

[67] *See* Docket 168-1 at 127-28; Docket 171-139 at 19, 41, 53.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 17 of 22

guilty man go free."[68]   Given that the parties agreed that there was enough evidence for a new trial, which plainly means that the outcome for Mr. Roberts could be an acquittal rather than a finding of guilty, Defendants have not demonstrated how it is in the public interest to require Mr. Roberts to give up his potentially legitimate § 1983 claims in order for his co-defendants to be immediately released from prison and his own potentially unlawful conviction to be set aside.[69]   In sum, for the State to require a release of all civil claims by Mr.

---

[68] *Schlup v. Delo*, 513 U.S. 298, 325 (1995) (quoting *In re Winship*, 397 U.S. 358, 372 (1970) (Harlan, J., concurring)).

[69] Defendants contend that prosecutorial decisions are often based on a number of factors, and that courts "normally must defer to prosecutorial decisions as to whom to prosecute" and have been "properly hesitant to examine the decision whether to prosecute." Docket 177 at 25, 27 (quoting *Rumery*, 480 U.S. at 396); Docket 168-1 at 136-37.  However, the plurality in *Rumery* used this language to explain why a "*per se* rule invalidating release-dismissal agreements" is inappropriate, because such a rule improperly "assumes that prosecutors will seize the opportunity for wrongdoing" when "tradition and experience justify [the] belief that the great majority of prosecutors will be faithful to their duty."  *See Rumery*, 480 U.S. at 396-97.  And yet *Rumery* also holds that in the context of release-dismissal agreements, judicial oversight of prosecutorial discretion is warranted.  *See Lynch*, 880 F.2d at 1128 & n.9 (holding that "*Rumery* requires the district court to hear the evidence and evaluate whether the public interest is served by enforcement of the release-dismissal agreement" and noting that "the public interest is disserved when a prosecutor negligently fails adequately to investigate and evaluate the allegations of criminal conduct made by arresting officers as well as when a prosecutor intentionally brings trumped-up charges to extort a release of civil claims").

Defendants also assert that this case "does not implicate the core harm to the public interest that concerned the Court in *Rumery*," because it is not about police officers or prosecutors filing unfounded criminal charges to pressure Plaintiffs into releasing their claims.  Docket 168-1 at 132.  The Court agrees that the context here is different but disagrees that there is no harm to the public interest simply because the fact pattern is not the same.  If anything, when a release-dismissal agreement is involved, prosecutorial decisions in the post-conviction relief context when exculpatory information has come to light may warrant greater judicial scrutiny than initial charging decisions.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 18 of 22

Case 4:17-cv-00034-SLG   Document 208   Filed 01/04/24   Page 18 of 22

Roberts when it had agreed that there was sufficient new evidence to warrant vacating his conviction and according him a new trial is not in the public interest.

## II. Requiring Waivers by All Co-Defendants

There is no dispute that "the prosecution would consent to vacating the convictions and dismissing the charges, but only if all four plaintiffs agreed to release the State of Alaska and the City of Fairbanks (and their employees) from any liability related to the convictions."[70] At the time, Mr. Roberts "had already been released from prison and was on supervised parole, but the prosecution refused to release any of the other three plaintiffs from prison unless Roberts agreed to the same arrangement."[71] While the parties also discuss this fact under the voluntariness factor of the *Rumery* test, the Court considers it here with respect to the public interest factor.

Defendants contend that the "all four" requirement "was reasonable under the circumstances and motivated by legitimate concerns about finality and community healing" and was not "a ploy to 'exploit each man's commitment to the others' freedom.'"[72] However, given that Defendants agreed that sufficient new

---

[70] *Roberts*, 947 F.3d at 1195; *see also* Docket 167-40 at 1 ("The AG just officially extended the Skidmore offer. Exoneration with no $. All four must accept."); Docket 167-41 at 1 (email from former Attorney General ("AG") Craig Richards discussing the potential Settlement Agreement and requiring that "[a]ll four must agree").

[71] *Roberts*, 947 F.3d at 1195 n.2.

[72] Docket 177 at 57 (quoting Docket 167 at 18); Docket 171-139 at 32-33 (testimony of AG Richards that the "all four" requirement was to end the litigation and "begin a process of being done fighting and healing the community").

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 19 of 22

Case 4:17-cv-00034-SLG   Document 208   Filed 01/04/24   Page 19 of 22

evidence existed for all four men to get a new trial, and given the Court's finding above that "finality and community healing" are not sufficient public concerns to outweigh Mr. Roberts's civil rights,[73] the "all four" requirement adversely affects the important public interest in the fair and just administration of criminal prosecutions. Then-Deputy Attorney General John Skidmore testified that he knew Plaintiffs "had problems with all four having to agree."[74] Mr. Roberts stated he initially was "not on board with" the terms of the agreement and asked if he could "separate [himself] from this deal," but he was told that "it was all or nothing."[75] When faced with that scenario, Mr. Roberts testified, "And what am I going to do? I'm going to leave my three brothers in prison . . . ? . . . [S]o I had to sign."[76]

Separate from the relevance of this requirement on the issue of voluntariness, the Court finds that Defendants have not shown how the public interest is served or what "legitimate criminal justice objective" is attained by requiring all four men to agree to a release-dismissal agreement instead of allowing each one to make an individual choice.[77] Requiring all four men agree to Defendants' terms was possible only because Defendants held nearly all the

---

[73] *See* discussion *supra* Section I.

[74] Docket 167-57 at 23.

[75] Docket 167-42 at 1; Docket 167-62 at 3.

[76] Docket 167-62 at 3.

[77] *See Rumery*, 480 U.S. at 399 (O'Connor, J., concurring).

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 20 of 22

power in this context.[78]  As the *Lynch* court noted, release-dismissal agreements are "particularly troublesome" when police misconduct may have occurred, because the police officer, "facing potential civil liability, has every incentive to arrest on a marginal or nonexistent violation, and push for a charge and release."[79] Mr. Roberts in this case alleges both police and prosecutorial misconduct, and while an initial charging decision is not at issue here, the Settlement Agreement in this case is similarly "troublesome" because Defendants, who were "facing potential civil liability," had "every incentive" to condition the other three Plaintiffs' release from prison on Mr. Roberts's release of Defendants from all damages and liability.[80]  In sum, Defendants have not demonstrated a legitimate public interest in requiring Mr. Roberts to give up any claim for damages for the 18 years he

---

[78] *See* Docket 167-59 at 6-7 (George Frese testifying that he "never felt like [he] had the power to demand" Defendants remove the "all four" requirement); Docket 167-62 at 3 (Mr. Roberts testifying that he felt "forced to sign" because otherwise he would have to "leave [his] three brothers in prison"); Docket 167-61 at 4 (Kevin Pease testifying that he "had no choice but to sign it to get out," because he could not see himself "going back to jail and waiting for [the PCR judge to make a decision], and then if [he lost], wait for more appeals").

[79] *Lynch*, 880 F.2d at 1127.

[80] *See id.*  While Defendants analogize the "all four" requirement to the use of package plea deals by prosecutors in their discussion on the voluntariness factor, the Court notes that the situation here is distinct.  *See* Docket 177 at 61-62; Docket 186 at 17-23.  The cases Defendants identify are ones in which prosecutors used a package plea deal to, for example, offer more lenient sentences if all co-defendants pleaded guilty, but not to secure a release from civil damages liability for alleged wrongful incarceration.  Further, whereas a judge must advise a defendant of his rights and the consequences of a plea of guilty, release-dismissal agreements may be executed outside the presence of a judge and without judicial oversight. *See* Fed. R. Crim. P. 11.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al*.
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 21 of 22

claims he was wrongfully incarcerated for the murder of John Hartman in order to obtain the immediate release of his co-defendants.[81]

Based upon the undisputed facts set forth above, the Court finds that Defendants have not met their burden in showing that enforcing the Settlement Agreement is in the public interest.[82]

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment at Docket 167 is GRANTED as to Marvin Roberts and that Defendants' Motion for Summary Judgment at Docket 168 is DENIED. The stay on the merits of this case is LIFTED. The parties shall promptly meet and confer and, within 14 days of the date of this order, jointly or separately set forth a proposed scheduling order for the resolution of Mr. Roberts's claims on the merits.

DATED this 4th day of January, 2024, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[81] *See* Docket 180 at 111-12 ("Enforcing the release in this case would undermine the important deterrence purpose of § 1983: it does not deter misconduct if officers can fabricate evidence, cause decades of wrongful incarceration, have a State investigation suggest the gravity of errors, and yet suffer no consequence whatsoever. Nor does it serve the public interest to deprive innocent Plaintiffs of any compensation for 18 years each of wrongful incarceration.").

[82] Because the public interest factor has not been met, the Court need not reach the voluntariness factor since both factors must be met. *See Lynch*, 880 F.2d at 1126. And while many facts in this case are disputed, this ruling is based on the undisputed facts discussed herein, which the Court finds dispositive of the public interest requirement for this release-dismissal agreement.

Case No. 4:17-cv-00034-SLG, *Roberts v. City of Fairbanks, et al.*
Order re Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment
Page 22 of 22